## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| STRUCTURLAM MASS TIMBER U.S., INC., *et al.*,[1] | ) Case No. 23-10497 (CTG) |
| | ) |
| | ) (Joint Administration Requested) |
| Debtors. | ) |
| | ) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS, SHIPPERS, AND 503(B)(9) CLAIMANTS AND GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state as follows in support of this motion (this "<u>Motion</u>"):

### Relief Requested

1.     The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **<u>Exhibit A</u>** and **<u>Exhibit B</u>** (respectively, the "<u>Interim Order</u>" and "<u>Final Order</u>"), (a) authorizing, but not directing, the Debtors to (i) pay certain prepetition amounts owing to Critical Vendors, Shippers, and 503(b)(9) Claimants (each as defined below) (collectively, the "<u>Critical Vendor Claims</u>") in an amount not to exceed $500,000 (CAD) pursuant to the Interim Order (the "<u>Interim Order Cap</u>"), and, in the aggregate, inclusive of amounts paid pursuant to the Interim Order, an amount not to exceed $750,000 (CAD) pursuant to the Final Order (the "<u>Final Order Cap</u>"); and (b) granting related relief.  In addition, the Debtors request that the Court (as

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or Canadian business number, as applicable, include: Structurlam Mass Timber U.S., Inc. (6287); Natural Outcomes, LLC (n/a); Structurlam Mass Timber Corporation (5050); and SLP Holdings Ltd. (3114).  The location of the Debtors' headquarters is:  2176 Government Street, Penticton, British Columbia, Canada V2A 8B5.  The address of the registered agent for Structurlam Mass Timber U.S., Inc. is:  8 The Green, Suite A, Dover, Delaware 19901.

defined herein) schedule a final hearing within approximately 30 days of the commencement of these chapter 11 cases to consider approval of this motion on a final basis.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure, and Local Rule 9013-1(m).

## Background

6.      The Debtors are a leading manufacturer of mass timber solutions and ground protection solutions used in construction and industrial markets, with U.S. facilities in Conway, Arkansas and Canadian facilities in Penticton, Okanagan Falls, and Oliver, British Columbia.  The Debtors have completed or assisted in supplying mass timber for numerous projects throughout North America including, among others: the University of British Columbia Brock Commons in Vancouver, British Columbia in 2016 and 2017, at the time the tallest wood

structure building in the world; the Microsoft Silicon Valley Campus in Mountain View, California in 2019, at the time the largest mass timber structure built in the United States; and the Google Mountain View California campus in 2020.

7.      On April 21, 2023 (the "Petition Date"), the Debtors commenced with the Court voluntary cases (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

8.      Contemporaneously with the filing of this Motion, the Debtors have filed with the Court a motion requesting joint administration of the Chapter 11 Cases for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

9.      The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the circumstances leading to the commencement of the Chapter 11 Cases, is set forth in greater detail in the *Declaration of Matthew Karmel, Interim Chief Executive Officer of the Debtors in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed contemporaneously herewith, and incorporated herein by reference.[3]

## Preliminary Statement

10.      The Debtors interact with numerous different vendors.  A number of these vendors provide services to the Debtors, including certain transport and shipping services, that are essential

---

[2]      Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declaration.

[3]      The First Day Declaration and other relevant case information are available on the following website maintained by the Debtors' proposed claims and noticing agent Kurtzman Carson Consultants LLC ("KCC"): https://www.kccllc.net/Structurlam.

to the Debtors' operations and cannot be replaced without significant lead time. Any disruption of these services could prevent the Debtors from timely delivering products that have been committed to customer projects. If the Debtors are not able to fulfill their contractual customer obligations, then, among other harms, the anticipated revenues that are essential for the funding of these Chapter 11 Cases may not be realized, which could irreparably harm the Debtors' restructuring prospects. In addition, certain vendors may claims that are entitled to priority under section 503(b)(9) of the Bankruptcy Code or may be entitled to possessory liens for a statutory trust or goods in transit to the Debtors. Furthermore, due to the nature of the Debtors' business which requires frequent deliveries and quick turnover of finished products, creditors affected by this Motion may likely fall into more than one of the foregoing categories.

11.    As is commonplace throughout the mass timber manufacturing industry, the Debtors' business functions under a time-sensitive supply chain structure whereby the Debtors manufacture finished products that are in turn utilized and incorporated by customers into their jobsites and projects. The Debtors have limited storage capacity at their facilities. As a result, any delays in the delivery of the Debtors goods to customers could cause significant logistical difficulties and additional storage costs that would negatively impact the Debtors' estates. In addition, the Debtors operate in a highly-regulated business environment and are required to maintain their products at standards necessary to meet safety and other regulations. Accordingly, the Debtors' customers demand highly specific and customized products. The Debtors' extensive experience in the mass timber industry, combined with their vast array of equipment and production capabilities, allows them to respond to a such customer needs, but such responsiveness requires uninterrupted goods and services from their Critical Vendors (defined below).

12.     The Debtors have and will continue to perform a stringent analysis with their advisors, to determine which vendors fall into these categories and the extent to which each vendor is critical to the ongoing operations of the Debtors' businesses.  The Debtors propose to undertake a reconciliation of such claims, and in their discretion and in accordance with their business judgement, determine which of these claims, if any, should be currently satisfied and whether or not the payment of such claims should be contingent on the extension of favorable business terms.

## I.     Critical Vendors.

13.     In narrowing the Debtors' list of vendors to only those that are critical, the Debtors and their advisors have engaged in a comprehensive process of reviewing and analyzing the Debtors' books and records, consulting with the Debtors' management and personnel responsible for operations, reviewing contracts and supply agreements, and analyzing applicable laws, regulations, and past practices to (a) identify those vendors, suppliers, and service providers that may be "critical" to the Debtors' operations (which, if lost, would materially impair the going-concern viability of the Debtors' operations) and (b) quantify the relief necessary to avoid immediate and irreparable harm to the Debtors at the outset of these Chapter 11 Cases.  The Debtors and their advisors assessed a variety of factors, including:

   a.     the goods or services provided by a vendor or supplier;

   b.     whether goods or services are provided pursuant to a contract or on a purchase order basis;

   c.     whether failure to pay all or part of a particular vendor's claim could cause the vendor to refuse to ship inventory or provide services on a postpetition basis;

   d.     whether the vendor is bound by an agreement pursuant to which the Debtors could compel such vendor to continue performing on prepetition terms;

   e.     whether the failure to pay a particular vendor could result in the negotiated trade terms being altered as a matter of applicable non-bankruptcy commercial law or regulations;

f.  whether the vendor is a sole- or limited-source or high-volume supplier for goods and services;

g.  whether alternative vendors are available that could provide the requisite volume of similar goods or services on equal or better terms, and, if so, whether the Debtors would be able to continue operating without significant disruption to their postpetition operations while transitioning business thereto;

h.  whether certain specifications or contract requirements and conditions prevent, directly or indirectly, the Debtors from obtaining the goods and services from alternative sources; and

i.  whether the failure to pay a particular vendor could jeopardize the Debtors' valuable interest in goods or materials.

14.    As a result of this analysis, the Debtors identified certain limited providers for critical services, inventories, and other materials and supplies the Debtors depend upon to fulfill their customers' needs whose support remains essential to the Debtors' own ability to preserve and enhance their value as they proceed with a seamless transition into chapter 11 (collectively,  and together with the Shippers, the "Critical Vendors").

15.    Some of the Debtors' suppliers are sole source suppliers of certain goods and services where the cost of replacing a supplier would likely outweigh the payments required to such supplier.  Others may not be sole source suppliers, but due to inventory shortages in the supply chain may be de facto sole source suppliers by nature of their having access to inventory when other suppliers do not.  Similarly, though there may be alternative suppliers in some cases, it is unlikely that any of the alternative suppliers would be able to meet the technical or operational requirements or the tight schedules which certain of the Debtors' customer contracts require or have the specialized equipment required for delivery of customer orders.  Additionally, some of the Debtors' suppliers may be experiencing financial hardship themselves and may not be able to acquire goods to ship to the Debtors or offer their continued services to the Debtors without satisfaction of certain of the outstanding claims.

16.     As of the Petition Date, the Debtors also have collected funds from their customers to pay for the delivery of goods which have not yet been remitted to the third-party delivery services.  The Debtors require this network of delivery services to ensure that their customers' orders are fulfilled.  These service providers are essential to the continuation of the Debtors' business as alternative delivery methods for the last mile to the customer are very limited due to the size and nature of the Debtors' products and finding another provider within the short timeframes required under the Debtors' customer contracts would be nearly impossible.

17.     Despite the Debtors communications regarding their financial situation and attempts to negotiate with their goods and service providers, certain vendors have refused to provide on-going goods and service, including orders already scheduled and paid for by customers prior to the Petition Date, if outstanding amounts are not paid.  If these Critical Vendors do not continue to provide on-going as-scheduled service it could jeopardize a number of the Debtors' existing customer deliveries.  As discussed above, any delay in the shipment or delivery of the Debtors' products to customers could bring the Debtors' operations to a halt.  While it is difficult to estimate the total amount due and owing under outstanding customer orders that are not scheduled to be delivered or provided until after the Petition Date, the Debtors submit that the total amount to be paid in connection therewith, if the relief requested herein is granted, is *de minimis* compared to the importance and necessity of fulfilling the underlying customer contracts on schedule.

18.     Therefore, the  potential harm would likely far outweigh the cost of payment of certain of the prepetition claims held by certain Critical Vendors and accrued in the ordinary course of business.  Furthermore,  such payment is anticipated to provide the Debtors with continued access to those Critical Vendors for continued use on existing and future projects, the value of

which is significantly more valuable to the Debtors' estates than the cost of such payments. Accordingly, paying certain limited prepetition claims of Critical Vendors on the terms discussed herein will allow the Debtors to maximize stakeholder value.

## II.    Shippers

19.    The Debtors conduct their business through a complex logistical network.  The Debtors typically obtain their materials from domestic and international sources.  The raw material inputs are delivered to the Debtors' manufacturing operation in their facilities.  Furthermore, the Debtors rely on certain logistics entities to move their products (collectively, the "Shippers"), either domestically from the Facilities to customers or jobsites, or in certain instances from vendors, via ocean freight and through customs.

20.    Many of the parties along the logistics chain may have incidental possessory liens on the Debtors' products.  Under the laws of most states and various foreign laws and regulations, carriers and warehousemen will, in certain circumstances, have a lien on the goods in their possession that secures the charges or expenses incurred in connection with the transportation or storage of goods.  If these liens are not satisfied, these parties may refuse to release the Debtors' property, thereby preventing the Debtors from being able to deliver products to their customers. Furthermore, in certain circumstances, these parties may be entitled to sell the Debtors' goods to third parties in order to satisfy the possessory liens.

21.    If the Debtors are unable to timely pay third-party shipping and storage charges (collectively, the "Shipper Charges") outstanding as of the Petition Date, the Debtors risk being unable to fully operate their business, which would prevent them from maximizing recoveries for all stakeholders in these Chapter 11 Cases.

22.    Accordingly, the Debtors seek authority to pay and discharge, on a case-by-case basis, the Shipper Charges.  For the avoidance of doubt, the Debtors seek authority to pay only

those amounts that they determine are necessary or appropriate to (a) induce the Shippers to continue to carry goods and make timely, critical delivery, (b) obtain release of critical or valuable goods being held by the Shippers, and (c) maintain a reliable, efficient, and smooth distribution system.  The Debtors intend to pay prepetition Shipper Charges only where they believe, in their business judgment, that the benefits to their estates from making such payments will exceed the costs that their estates would incur as a result of delaying shipments in order to obtain replacement transportation services (if such a replacement is even available) or by bringing an action to compel the turnover of such goods and the delay associated with such actions.

### III.    The 503(b)(9) Claims.

23.    In addition, the Debtors may have received certain goods or materials from various vendors within the 20 days before the Petition Date (the "503(b)(9) Claimants").  Under section 503(b)(9) of the Bankruptcy Code, the value of such goods or materials would be accorded administrative priority (the "503(b)(9) Claims").  Accordingly, the Debtors seek authority, but not the direction, to pay and discharge, on a case-by-case basis, the 503(b)(9) Claims.

24.    As noted above, it is likely that creditors that fall into one of the above categories may fall into other categories in this Motion.  This will allow the Debtors to eliminate unnecessary determinations as to classification if a creditor arguably fails into more than one category.  Accordingly, the Debtors seek the authority to pay up to $750,000 (CAD) in Critical Vendor Claims on a final basis, and $500,000 (CAD) of such amount on an interim basis.

### Basis for Relief

### I.    The Court Should Grant the Relief Requested in This Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.

25.    Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate.  *See, e.g., In re Just for Feet,*

*Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a bankruptcy court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983).  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

26.     Pursuant to section 363(b) of the Bankruptcy Code, payment of prepetition obligations may be authorized where a sound business purpose exists for doing so.  *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification).  Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

27.     In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Under section 105(a), courts may authorize payments of prepetition obligations when essential to the continued operation of a debtor's businesses.  *See Just for Feet*, 242 B.R. at 825.  Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *Ionosphere Clubs*, 98 B.R. at 176.

28.    Indeed, the United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981).  The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor.  *Id.*  (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *See also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *Just for Feet*, 242 B.R. at 824–25 (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

29.    Allowing the Debtors to pay Critical Vendor Claims pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code: preserving going-concern value and maximizing the value of property available to satisfy creditors.  *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999).

**II.    Failure to Make Timely Payment of Critical Vendor Claims Would Threaten the Debtors' Ability to Operate.**

30.    Paying the Critical Vendor Claims is unlikely to impair unsecured creditor recoveries in these Chapter 11 Cases.  In some instances—for example, if a Shipper is permitted a lien—where the amounts owed to Shippers are less than the value of the goods that could be held as collateral to secure a Shipper Charge, such parties may be fully secured creditors of the Debtors' estates.  In such instances, payment now only provides such parties with what they might be

entitled to receive, only without any interest costs that might otherwise accrue during these Chapter 11 Cases. Conversely, all creditors will benefit from the seamless transition of the Debtors' operations into bankruptcy and the continued production and delivery of the Debtors' products.

31.     Where debtors have shown that the payment of prepetition claims is critical to maximize the value of their estates, courts in this district have routinely authorized payments to shippers under similar circumstances. *See, e.g.*, *In re Avadim Health, Inc.*, No. 21-10883 (CTG) (Bankr. D. Del. June 2, 2021) (authorizing payment of critical vendor claims); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Feb. 25, 2021) (same); *In re BL Restaurants Holding, LLC*, No. 20-10156 (Bankr. D. Del. Feb. 26, 2020) (MFW) (same); *In re ATD Corp.*, No. 18-12221 (KJC) (Bankr. D. Del. Oct. 24, 2018) (same); *In re GST AutoLeather, Inc.*, No. 17-12100 (LSS) (Bankr. D. Del. Nov. 13, 2017) (same); *In re TK Holdings Inc.*, No. 17-11375 (BLS) (Bankr. D. Del. Aug. 9, 2017) (same).

**III.     Ample Authority Exists to Support the Payment of Critical Vendor Claims.**

32.     The Debtors depend on the supply of goods and the provision of services by the Critical Vendors to sustain their operations. Ensuring these Critical Vendors continue to supply and serve is therefore vital to the success of these Chapter 11 Cases and the ability of the Debtors to remain a going-concern.

33.     The relief requested herein is well within the range of customary relief approved in this district. Courts routinely authorize payment of prepetition claims for critical vendors in similar or greater amounts to those requested here. *See, e.g.*, *In re ATD Corp.*, No. 18-12221 (KJC) (Bankr. D. Del. Oct. 24, 2018) (authorizing payment of critical vendor claims); *In re GST AutoLeather, Inc.*, No. 17-12100 (LSS) (Bankr. D. Del. Nov. 13, 2017) (authorizing payment of $6.0 million in

critical vendor claims); *In re TK Holdings Inc.*, No. 17-11375 (BLS) (Bankr. D. Del. Aug. 9, 2017) (authorizing payment critical of vendors).

## IV.    The Court Should Authorize the Payment of Claims Entitled to Priority Pursuant to Section 503(b)(9) of the Bankruptcy Code.

34.    Section 503(b)(9) of the Bankruptcy Code provides administrative priority for the "value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business."  Consequently, payment of such claims now only provides such parties with what they will be entitled to ultimately receive in these cases.  The timing of such payments lies squarely within the Court's discretion.  *See In re Glob. Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) ("The timing of the payment of that administrative expense claim is left to the discretion of the Court.").  The payment of certain 503(b)(9) Claims, in the Debtors' discretion, may allow the Debtors to maximize the value of the estates by allowing the Debtors to satisfy such claims where doing so would have a net benefit to the estate in terms of increased inventory, favorable credit terms, or other benefits to the estates.

35.    Moreover, the Bankruptcy Code does not prohibit a debtor from paying such claims sooner rather than later in Chapter 11 Cases.  The Debtors believe they may pay such 503(b)(9) Claims as administrative claims incurred in the ordinary course of business in accordance with their business judgment pursuant to section 363(c)(1) of the Bankruptcy Code.  *See, e.g.*, *In re Dura Auto. Sys. Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. Oct. 31, 2006) Hr'g Tr. 49:21–23 ("I think arguably the debtor could pay its 503(b)(9) claimants without court approval.").  Again, the timing of such payments lies squarely within the Court's discretion. *See Glob. Home*, 2006 WL 3791955, at *3.

36.     For these reasons, courts in this district have regularly authorized the payment of claims arising under section 503(b)(9) of the Bankruptcy Code in the ordinary course of business. *See, e.g.*, *In re Alamo Drafthouse Cinemas Holdings, LLC*, No. 21-10474 (MFW) (Bankr. D. Del. Mar. 29, 2021) (authorizing debtors to pay claims arising under section 503(b)(9) of the Bankruptcy Code); *RTI Holding Company, LLC*, No. 20-12456 (JTD) (Bankr. D. Del. Nov. 18, 2020) (same); *In re BL Restaurants Holding, LLC*, No. 20-10156 (Bankr. D. Del. Feb. 26, 2020) (MFW) (same); *In re Z Gallerie, LLC*, Case No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same); *In re GST AutoLeather, Inc.*, No. 17-12100 (LSS) (Bankr. D. Del. Nov. 13, 2017) (same); *In re Emerald Oil, Inc.*, No. 16-10704 (KG) (Bankr. D. Del. Apr. 19, 2016) (same); *In re Horsehead Holding Corp.*, No. 16-10287 (CSS) (Bankr. D. Del. Feb. 3, 2016) (same); *In re Magnum Hunter Res. Corp.*, No. 15-12533 (KG) (Bankr. D. Del. Jan. 11, 2016) (same).

## Processing of Checks and Electronic Fund Transfers Should Be Authorized

37.     The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, the proposed debtor-in-possession financing, and anticipated access to cash collateral.  Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests relating to the relief requested in this Motion. Accordingly, the Debtors believe that checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## **The Requirements of Bankruptcy Rule 6003 Are Satisfied**

38.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, the relief requested in this Motion is integral to the Debtors' ability to transition their operations into these Chapter 11 Cases smoothly.  Failure to receive such authorization and other relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture.  For the reasons discussed herein, the relief requested is necessary for the Debtors to maintain the going-concern value of their business for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## **Reservation of Rights**

39.     Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party in interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid and the Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If

the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

40.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

41.    The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the District of Delaware; (b) the United States Attorney's Office for the District of Delaware; (c) the state attorneys general for all states in which the Debtors conduct business; (d) the Internal Revenue Service; (e) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (f) counsel to the Prepetition Lender and the DIP Lender; (g) the Debtors' Banks; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. Additionally, notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request entry of the Interim and Final Orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (a) granting the relief requested herein, and (b) granting such other relief as is just and proper.

Dated: April 24, 2023               **CHIPMAN BROWN CICERO & COLE, LLP**
       Wilmington, Delaware

                       */s/ Mark D. Olivere*
                       William E. Chipman, Jr. (No. 3818)
                       Robert A. Weber (No. 4013)
                       Mark L. Desgrosseilliers (No. 4083)
                       Mark D. Olivere (No. 4291)
                       Hercules Plaza
                       1313 North Market Street, Suite 5400
                       Wilmington, Delaware 19801
                       Telephone:   (302) 295-0191
                       Email:       chipman@chipmanbrown.com
                                     weber@chipmanbrown.com
                                     desgross@chipmanbrown.com
                                     olivere@chipmanbrown.com

                       *Proposed Conflicts Counsel to Debtors and Debtors in Possession*

**Exhibit A**

**Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| STRUCTURLAM MASS TIMBER U.S., INC., *et al.*,[1] | ) Case No. 23-10497 (CTG) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Re: Docket No. __** |

**INTERIM ORDER AUTHORIZING,
BUT NOT DIRECTING, THE DEBTORS TO PAY
CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS,
SHIPPERS, AND 503(B)(9) CLAIMANTS AND GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"):  (a) authorizing, but not directing, the Debtors to pay certain prepetition amounts owing to Critical Vendors, Shippers, and 503(b)(9) Claimants (collectively, the "Critical Vendor Claims") in an amount not to exceed the Interim Order Cap absent further order of the Court; (b) scheduling a final hearing to consider approval of the Motion on a final basis, and (c) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or Canadian business number, as applicable, include: Structurlam Mass Timber U.S., Inc. (6287); Natural Outcomes, LLC (n/a); Structurlam Mass Timber Corporation (5050); and SLP Holdings Ltd. (3114).  The location of the Debtors' headquarters is:  2176 Government Street, Penticton, British Columbia, Canada V2A 8B5.  The address of the registered agent for Structurlam Mass Timber U.S., Inc. is: 8 The Green, Suite A, Dover, Delaware 19901.

[2]    Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard any statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2023, at __:__ _.m. (prevailing Eastern Time).  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____, 2023, and shall be served on:  (a) the Debtors, 2176 Government Street, Penticton, British Columbia, Canada V2A 8B5, Attn:  Matthew Karmel (mkarmel@structurlam.com); (b) British Columbia, Canada V2A 8B5, Attn:  Matthew Karmel (mkarmel@structurlam.com); (b proposed counsel to the Debtors, Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801, Attn: William E. Chipman, Jr. (chipman@chipmanbrown.com);  Robert  A.  Weber  (weber@chipmanbrown.com);  Mark  L. Desgrosseilliers     (desgross@chipmanbrown.com);     and     Mark     Olivere (olivere@chipmanbrown.com);  (c)  the  Office  of  the  United  States  Trustee,  844  King  Street, Suite  2207,  Lockbox  35,  Wilmington,  Delaware  19801,  Attn:   Benjamin  A.  Hackman (bejamin.a.hackman@usdoj.gov); (d) counsel to the Prepetition Lender and DIP Lender, (i) Blake,

Cassels & Graydon LLP, 855 - 2nd Street S.W., Suite 3500, Bankers Hall East Tower, Calgary, Alberta, T2P 4J8, Attn:   Kelly  Bourassa  (kelly.bourassa@blakes.com),  Christopher  Keliher (christopher.keliher@blakes.com),  Erik  Fleming  (erik.fleming@blakes.com),  and  Austin  Beck (Austin.Beck@blakes.com)  (ii)  Chapman  and  Cutler  LLP,  320  South  Canal  Street,  Chicago, Illinois 60606 (Attn: Stephen R. Tetro II and James P. Sullivan), email: stetro@chapman.com and jsulliva@chapman.com, and (iii) Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Matthew P. Ward), email: matthew-ward@wbd-us.com; and (e) counsel to any statutory committee appointed in the Chapter 11 Cases.

3.      The Debtors are authorized, but not directed, in their sole discretion, to pay all or part of, and discharge, on a case-by-case basis, Critical Vendor Claims in an aggregate amount not to exceed $500,000 (CAD) on an interim basis, absent further order of the Court.

4.      Nothing herein shall impair or prejudice the Debtors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts of any claims held by any Shipper, Critical Vendor, or 503(b)(9) Claimant.  The Debtors do not concede that any claims satisfied pursuant to this Interim Order are valid, and the Debtors expressly reserve all rights to contest the extent, validity, or perfection or to seek the avoidance of all such liens or the priority of such claims.

5.      Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request

or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party in interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Interim Order are valid and the Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens.  Any payment made pursuant to this Interim Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.  The relief granted by this Interim Order is not intended to and does not grant the Debtors any authority to use cash collateral of Bank of Montreal or to use proceeds of any postpetition financing provided by Bank of Montreal in any way inconsistent with the provisions of any interim or final order of this Court approving Court approving the Debtors' use of cash collateral or authorizing the Debtors to obtain debtor-in-possession financing (a "<u>DIP Order</u>"). For the avoidance of doubt, in case of a conflict between the provisions of this Interim Order and a DIP Order, the provisions of such DIP Order shall control.

6.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry.

4

7.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with any Critical Vendor Claim or 503(b)(9) Claim.

8.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

9.      Notice of the Motion was provided in accordance with Local Rule 9013-1(m)(iii) and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

12.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**<u>Exhibit B</u>**

**Final Order**

00047990.1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| | ) |
| STRUCTURLAM MASS TIMBER U.S., INC., *et al.*,[1] | ) Case No. 23-10497 (CTG) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Re: Docket No. __** |

**FINAL ORDER AUTHORIZING,**
**BUT NOT DIRECTING, THE DEBTORS TO**
**PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS,**
**SHIPPERS, AND 503(B)(9) CLAIMANTS AND GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"): (a) authorizing, but not directing, the Debtors to pay certain prepetition amounts owing to Critical Vendors, Shippers, and 503(b)(9) Claimants (collectively, the "Critical Vendor Claims") in an amount not to exceed the Final Order Cap, absent further order of the Court; and (b) granting related relief; all as more fully set forth in the Motion and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or Canadian business number, as applicable, include: Structurlam Mass Timber U.S., Inc. (6287); Natural Outcomes, LLC (n/a); Structurlam Mass Timber Corporation (5050); and SLP Holdings Ltd. (3114). The location of the Debtors' headquarters is: 2176 Government Street, Penticton, British Columbia, Canada V2A 8B5. The address of the registered agent for Structurlam Mass Timber U.S., Inc. is: 8 The Green, Suite A, Dover, Delaware 19901.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Motion.

pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on a final basis as set forth herein.

2. The Debtors are authorized, but not directed, in their sole discretion, to pay all or part of, and discharge, on a case-by-case basis, the Critical Vendor Claims in an aggregate amount not to exceed $750,000 (CAD) on a final basis, absent further order of the Court.

3. Nothing herein shall impair or prejudice the Debtors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts of any claims held by any Shipper, Critical Vendor, or 503(b)(9) Claimant. The Debtors do not concede that any claims satisfied pursuant to this Final Order are valid, and the Debtors expressly reserve all rights to contest the extent, validity, or perfection or to seek the avoidance of all such liens or the priority of such claims.

4. Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any particular claim on any grounds; (c) a

promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party in interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Final Order are valid and the Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens.  Any payment made pursuant to this Final Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.  The relief granted by this Final Order is not intended to and does not grant the Debtors any authority to use cash collateral of Bank of Montreal or to use proceeds of any postpetition financing provided by Bank of Montreal in any way inconsistent with the provisions of any interim or final order of this Court approving the Debtors' use of cash collateral or authorizing the Debtors to obtain debtor-in-possession financing (a "DIP Order"). For the avoidance of doubt, in case of a conflict between the provisions of this Final Order and a DIP Order, the provisions of such DIP Order shall control.

5.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order without any duty of further inquiry and without liability for following the Debtors' instructions.

6.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with any Shipper Charge, Critical Vendor Claim, or 503(b)(9) Claim.

7.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

9.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.