## **EXHIBIT I**

BIDDING PROCEDURES ORDER

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| STRUCTURLAM MASS TIMBER U.S., INC., *et al*.,[1] | ) Case No. 23-10497 (CTG) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Re: Docket No. 16** |

ORDER (I) APPROVING BIDDING PROCEDURES, (II) APPROVING STALKING
HORSE PROTECTIONS AND DEBTORS' ENTRY INTO STALKING HORSE
PURCHASE AGREEMENT, (III) SCHEDULING THE BID DEADLINES AND THE
AUCTION, (IV) SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH
RESPECT TO THE SALE, (V) APPROVING THE FORM AND MANNER OF
THE NOTICE THEREOF, (VI) APPROVING CONTRACT ASSUMPTION
AND ASSIGNMENT PROCEDURES, AND (VII) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of (a) an order (this "Bidding Procedures Order"):

(i) authorizing and approving the proposed bidding procedures (the "Bidding Procedures")

attached hereto as **Exhibit 1**, in connection with the sale (the "Sale") of all, or substantially all, or

any combination of the Debtors' assets (collectively, the "Assets"), free and clear of all liens,

claims, interests, and encumbrances; (ii) approving the Stalking Horse Protections and the

Debtors' entry into that certain Asset Purchase Agreement dated April 21, 2023, by and between

the Debtors and Mercer International Inc. (the "Stalking Horse Purchaser"), attached hereto as

**Exhibit 2** (the "Stalking Horse Purchase Agreement"), subject to higher or better offers in

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number or Canadian business number, as applicable, include: Structurlam Mass Timber U.S., Inc. (6287); Natural
Outcomes, LLC (n/a); Structurlam Mass Timber Corporation (5050); and SLP Holdings Ltd. (3114). The location
of the Debtors' headquarters is: 2176 Government Street, Penticton, British Columbia, Canada V2A 8B5. The
address of the registered agent for Structurlam Mass Timber U.S., Inc. is: 8 The Green, Suite A, Dover,
Delaware 19901.

[2]   Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Motion or
the Bidding Procedures (defined herein), as applicable.

accordance with the terms of the Stalking Horse Purchase Agreement; (iii) scheduling an auction in connection with the Sale (the "Auction"), a hearing date for the approval of the Sale subject to the Court's availability (the "Sale Hearing"), and the objection deadlines for the Sale Hearing (collectively, the "Sale Schedule"); (iv) approving the form and manner of notice of the Auction and Sale, attached hereto as **Exhibit 3** (the "Auction and Sale Notice"); (v) approving procedures (the "Assumption and Assignment Procedures") for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale (collectively, the "Assigned Contracts"), and approving the form and manner of the Cure Notice; and (vi) granting related relief, and (b) an order (the "Sale Order"), substantially in the form attached to the Motion as Exhibit B, (i) authorizing the Sale to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not selected as the Winning Bidder in accordance with the Bidding Procedures, to the Winning Bidder free and clear of all liens, claims, interests, and encumbrances; (ii) authorizing the assumption and assignment of the Assigned Contracts; and (iii) granting related relief all as more fully set forth in the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed

the Motion and having heard any statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      In the Motion and at the Hearing on the relief set forth herein, the Debtors demonstrated that good and sufficient notice of the relief granted by this Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order (including, without limitation, with respect to the Bidding Procedures and the Stalking Horse Protections) has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

B.      The Auction and Sale Notice (as defined herein), in substantially the form attached hereto as **Exhibit 3**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Bidding Procedures, the auction for the Assets (the "Auction"), the Sale, and the Sale Hearing, and any and all objection deadlines related thereto, and no other or further notice is required of the foregoing.

C.      The Debtors have articulated good and sufficient business reasons for this Court to approve the Bidding Procedures, and the Bidding Procedures are: (i) fair, reasonable, and appropriate; and (ii) designed to maximize recovery with respect to the Sale.

D.      The Assumption and Assignment Procedures provided for herein and the Cure Notice (as defined herein), in substantially the form attached hereto as **Exhibit 4**, are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.  The Assumption and Assignment Procedures and the Cure Notice have

been tailored to provide an adequate opportunity for all Counterparties (as defined herein) to assert any Contract Objections (as defined herein).

E.      The Debtors have articulated good and sufficient reasons and business justification for the Court to grant the relief requested in the Motion regarding the Stalking Horse Protections, consisting of the Expense Reimbursement and the Break-Up Fee. The Stalking Horse Protections, as approved by this Order, are fair and reasonable and provide a benefit to the Debtors' estates and stakeholders.

F.      If triggered in accordance with the terms of the Stalking Horse Purchase Agreement, the payment of the Stalking Horse Protections under this Order and upon the conditions set forth in the Stalking Horse Purchase Agreement and the Bidding Procedures, is (i) an actual and necessary cost of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code, (ii) reasonably tailored to encourage, rather than hamper, bidding for the Assets, by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other bidders in the Sale process, thereby increasing the likelihood that the Debtors will receive the best possible price and terms for the Assets, (iii) of substantial benefit to the Debtors' estates and stakeholders and all parties in interest herein because it encouraged the Stalking Horse Purchaser to submit the Stalking Horse Purchase Agreement and is a condition of the Stalking Horse Purchase Agreement, (iv) reasonable and appropriate, (v) a material inducement for, and conditions necessary to, ensure that the Stalking Horse Purchaser will continue to pursue its proposed agreement to purchase the Assets, and (vi) reasonable in relation to the Stalking Horse Purchaser's efforts and to the magnitude of the Sale and the Stalking Horse Purchaser's lost opportunities resulting from the time spent pursuing such transaction

G.      Entry of this Order is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.      Those portions of the Motion seeking approval of (a) the Bidding Procedures, attached hereto as **Exhibit 1**, (b) the Debtors' entry into the Stalking Horse Purchase Agreement attached hereto as **Exhibit 2** and all of its terms (subject to higher or otherwise better offers in accordance with the Stalking Horse Purchase Agreement and this Order), (b) the Assumption and Assignment Procedures, (c) the Stalking Horse Protections, (d) the date and time of the Sale Hearing, and (e) the noticing and objection procedures related to each of the foregoing, including, without limitation, the notice of the Sale and the entry of this Order, substantially in the form attached hereto as **Exhibit 3** (the "Auction and Sale Notice"), and the notice of the Debtors' potential assumption and assignment of executory contracts and unexpired leases (the "Executory Contracts") that may be Assigned Contracts, substantially in the form attached hereto as **Exhibit 4** (the "Cure Notice") (subclauses (a) – (e) above, collectively, the "Bidding and Auction Process"), are hereby GRANTED to the extent set forth herein.

2.      Any objections filed in response to the Motion as it pertains to the Bidding and Auction Process or the relief granted herein, to the extent not withdrawn, waived, or resolved as set forth herein or on the record at the Hearing, are hereby overruled and denied on the merits with prejudice.

**I.       Important Dates and Deadlines**

3.      The following dates and deadlines are hereby approved as set forth below and subject to modification in accordance with the Bidding Procedures.

> (a)     Sale Objection Deadline.  May 18, 2023, at 4:00 p.m. (prevailing Eastern Time) is the deadline (the "Sale Objection Deadline") by which all objections to the Sale, other than (i) an objection to the Sale filed by the

Committee or (ii) a Contract Objection or Winning Bidder Adequate Assurance Objection, must be filed with the Court. Replies to any such objections shall be filed with the Court by May 29, 2023, at 12:00 p.m. (prevailing Eastern Time).

(b)     <u>Bid Deadline</u>.  May 23, 2023, at 4:00 p.m. (prevailing Eastern Time), is the deadline by which Bids for the Assets (as well as the deposit and all other documentation required under the Bidding Procedures for Qualified Bidders) must be submitted.

(c)     <u>Contract Objection Deadline</u>.  May 23, 2023, at 4:00 p.m. (prevailing Eastern Time) is the deadline (the "<u>Contract Objection Deadline</u>") by which Counterparties to Executory Contracts must file with the Court and serve on the Objection Notice Parties an objection with respect to (i) the assumption and assignment of the Counterparty's Executory Contract (including, without limitation, on the basis that the Stalking Horse Purchaser cannot provide adequate assurance of future performance) or (ii) the Cure Amount for any of its Executory Contracts.

(d)     <u>Committee Sale Objection Deadline</u>.  May 23, 2023, at 4:00 p.m. (prevailing Eastern Time) is the deadline by which the Committee must file an objection, if any, to the Sale.

(e)     <u>Auction</u>.  May 24, 2023, at 10:00 a.m. (prevailing Eastern Time) is the date and time that the Auction, if any, will be held via videoconference, or such later date, time, and location, as selected by the Debtors.

(f)     <u>Winning Bidder Adequate Assurance Objection Deadline</u>.  May 26, 2023, at 4:00 p.m. (prevailing Eastern Time) is the deadline (the "<u>Winning Bidder Adequate Assurance Objection Deadline</u>") by which, in the event that the Stalking Horse Purchaser is not the Winning Bidder, Counterparties to Executory Contracts must file with the Court and serve on the Objection Notice Parties an objection with respect to the provision of adequate assurance of future performance by a Winning Bidder or Back-Up Bidder that is not the Stalking Horse Purchaser.

(g)     <u>Sale Hearing</u>.  The hearing approving the Sale to the Winning Bidder shall take place before the Court on May 30, 2023, at 2:00 p.m. (prevailing Eastern Time).

## II.     The Bidding Procedures

4.     The Bidding Procedures, substantially in the form attached hereto as **<u>Exhibit 1</u>**, are

hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt,

and analysis of all bids relating to the proposed Sale of the Assets.  Any party desiring to bid on

one or more individual Assets or all or substantially all of the Assets shall comply with the Bidding Procedures and this Bidding Procedures Order.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

## III.    The Auction

5.      If no timely Qualifying Bids other than the Stalking Horse Purchase Agreement are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall request at the Sale Hearing that this Court approve the Stalking Horse Purchase Agreement and the transactions contemplated thereunder.  If the Debtors timely receive one or more Qualifying Bids other than the Stalking Horse Purchase Agreement, then the Debtors shall conduct the Auction, in accordance with the Bidding Procedures, on May 24, 2023 at 10:00 a.m. (prevailing Eastern Time), subject to any adjournment in accordance with the Bidding Procedures.

6.      Only Qualified Bidders that have submitted Qualified Bids by the Bid Deadline are eligible to participate in the Auction, *provided* that the Stalking Horse Purchaser shall be considered a Qualified Bidder and the Stalking Horse Purchase Agreement shall be considered a Qualified Bid.  If the Debtors receive two or more Qualified Bids with respect to the Assets or any combination thereof, as applicable, then the Debtors will conduct the Auction to determine the Winning Bidder (as defined below) with respect to such Assets.  The Debtors and their professionals shall direct and preside over the Auction.

7.      At the Auction, Qualified Bidders that have submitted Qualified Bids by the Bid Deadline will be entitled, but will not be obligated, to submit Overbids, and will be entitled in any such Overbids to credit bid all or a portion of the value of the secured portion of its claims within the meaning of section 363(k) of the Bankruptcy Code, subject to the limits on credit bidding set forth in the Bidding Procedures.

8.     Any initial Overbid to the Stalking Horse Bid, which shall serve as the Baseline Bid, shall be no less than $62,900,000, consisting of $60,000,000 as the amount of the Stalking Horse Bid, *plus* $2,400,000 as the amount of the Stalking Horse Protections, *plus* $500,000.

9.     Any subsequent Overbids shall be in increments of $500,000.

10.    The Auction shall continue until the Debtors select, in their reasonable business judgment, pursuant to the Bidding Procedures and in consultation with the Consultation Parties, the highest or otherwise best Qualified Bid(s) for the Assets or any combination thereof, as applicable.  Such Qualified Bid shall be declared the Winning Bid, and such Qualified Bidder shall be declared the Winning Bidder, and upon such declaration of the Winning Bid and the Winning Bidder, the Auction will be closed.

11.    The Debtors may reject any Bid (regardless of whether such Bid is a Qualified Bid) that, in the Debtors' business judgment, is (a) inadequate, insufficient, or not the highest or best Bid, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or the Bidding Procedures, or (c) contrary to, or otherwise not in the best interests of the Debtors' estates, affected stakeholders, or other parties in interest.

## IV.    Notice Procedures

12.    The Auction and Sale Notice substantially in the form attached hereto as **Exhibit 3** is approved.

13.    Within three (3) business days of the entry of this Bidding Procedures Order, the Debtors shall serve the Auction and Sale Notice upon:  (a) the U.S. Trustee; (b) counsel to the official committee of unsecured creditors appointed in these Chapter 11 Cases (the "Committee"); (c) counsel to the Prepetition Lender; (d) counsel to the DIP Lender; (e) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002; (f) the Securities and Exchange Commission; (g) the Internal Revenue Service; (h) all

other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules; (i); all parties who have asserted a lien or security interest against any of the Assets; and (j) all state attorneys general in states where the Assets are located.

14.     The Debtors shall post the Auction and Sale Notice, the Cure Notice, and the Bidding Procedures Order on the website of the Debtors' claims and noticing agent.

15.     Notice of the Motion coupled with service of the Auction and Sale Notice (together the "Notice"), constitutes good and adequate notice of the Auction and Sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.

16.     No other or further notice of the Auction and Sale shall be required.

17.     Any objections to the Sale or the relief requested in connection with the Sale (a "Sale Objection"), other than a Contract Objection or Winning Bidder Adequate Assurance Objection, which shall each be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801 (i) with respect to all parties other than the Committee, **on or before 4:00 p.m. (ET) on May 18, 2023** (the "Sale Objection Deadline") and (ii) with respect to the Committee, **on or before 4:00 p.m. (ET) on May 23, 2023**, and proof of service of such Sale Objection upon the Objection Notice Parties shall be filed with the Court as and when required by the Local Rules; and (e) be served upon the Objection Notice Parties.  If a Sale Objection is not filed and served on or before the Sale Objection Deadline in accordance with the foregoing requirements, the objecting party may be barred from objecting to the Sale and being

heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

18.     The Debtors and any other entity shall have until **one (1) calendar day prior to the Sale Hearing at 12:00 p.m. (prevailing Eastern Time)** to file and serve a reply to any objection filed in connection with the Sale, including, without limitation, any Sale Objection, Contract Objection, or Winning Bidder Adequate Assurance Objection.

## V.     The Assumption and Assignment Procedures

19.     The following "Assumption and Assignment Procedures" are hereby approved:

a.      On or before the date that is three (3) business day after the entry of this Bidding Procedures Order, the Debtors shall file the Cure Notice with the Court and serve the Cure Notice on each Counterparty to an Executory Contract, including counsel to each Counterparty, if known, via email.

b.      The Cure Notice shall include, without limitation, the cure amount, if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Executory Contracts in the event such Executory Contracts are assumed and assigned by the Debtors (the "Cure Amount"). If a Counterparty objects to (i) the assumption and assignment of the Counterparty's Executory Contract (including, without limitation, on the basis that the Stalking Horse Purchaser cannot provide adequate assurance of future performance) or (ii) the Cure Amount for any of its Executory Contracts, the Counterparty must file with the Court and serve on the Objection Notice Parties (as defined herein) a written objection (a "Contract Objection") on or before the applicable objection deadline set forth in these Assumption and Assignment Procedures.

c.      Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801 **on or before 4:00 p.m. (prevailing Eastern Time) on May 23, 2023** (the "Contract Objection Deadline"), and proof of service of such Contract Objection upon the Objection Notice Parties shall be filed with the Court as and when required by the Local Rules; (iv) be served upon the Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated Cure Amount and the legal and factual bases for any unliquidated Cure Amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) & (B) of the Bankruptcy Code for the Assigned Contract, along with the

specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto and any objection to the provision of adequate assurance of future performance by the Stalking Horse Purchaser.

d.      In the event that the Stalking Horse Purchaser is not the Winning Bidder, the deadline to object to the provision of adequate assurance of future performance by a Winning Bidder or Back-Up Bidder that is not the Stalking Horse Purchaser (a "<u>Winning Bidder Adequate Assurance Objection</u>") shall be **4:00 p.m. (prevailing Eastern Time) on May 26, 2023**, and any Winning Bidder Adequate Assurance Objections must be filed and served in the same manner as Contract Objections.

e.      The "<u>Objection Notice Parties</u>" are as follows:  (i) proposed counsel to the Debtors, Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801, Attn: William E. Chipman, Jr. (chipman@chipmanbrown.com); Robert A. Weber (weber@chipmanbrown.com); Mark L. Desgrosseilliers (desgross@chipmanbrown.com); and Mark Olivere (olivere@chipmanbrown.com); (ii) proposed counsel to the Committee (a) Morris Nichols Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899-1347, Attn:  Matthew B. Harvey (mharvey@morrisnichols.com) and (b) Buchalter, P.C., 1000 Wilshire Blvd., Suite 1500, Los Angeles, CA 90017 Attn:  Julian I. Gurule (jgurule@buchalter.com) and Khaled Tarazi (ktarazi@buchalter.com); (iii) counsel to the Prepetition Lender and the DIP Lender, (a) Blake, Cassels & Graydon LLP, 855 - 2nd Street S.W., Suite 3500, Bankers Hall East Tower, Calgary, Alberta, T2P 4J8, Attn:  Kelly Bourassa (kelly.bourassa@blakes.com), Christopher Keliher (christopher.keliher@blakes.com), Erik Fleming (erik.fleming@blakes.com), and Austin Beck (Austin.Beck@blakes.com) (b) Chapman and Cutler LLP, 320 South Canal Street, Chicago, Illinois 60606 (Attn: Stephen R. Tetro II and James P. Sullivan), email: stetro@chapman.com and jsulliva@chapman.com, and (c) Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Matthew P. Ward), email: matthew-ward@wbd-us.com; and (iv) the Office of the United States Trustee for the District of Delaware, 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn:  Benjamin.A.Hackman (Benjamin.a.hackman@usdoj.gov).

f.      Within one (1) day after the cancellation or completion of the Auction, the Debtors shall file with the Court a notice identifying the Winning Bidder (a "<u>Notice of Winning Bidder</u>"), which shall set forth, among other things, (i) the Winning Bidder and Back-Up Bidder (if any) and the amount of each of the Winning Bid and the Back-Up Bid (if any), (ii) the Assigned Contracts (as defined herein), as determined at such time and subject to the

provisions of subsection (j) of these Assumption and Assignment Procedures, and (iii) the proposed assignee(s) of such Assigned Contracts, and serve the Notice of Winning Bidder by overnight mail and, if available, electronic mail, upon each affected Counterparty and its counsel (if known).

g. At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to the Winning Bidder of only those Executory Contracts, that have been selected by the Winning Bidder to be assumed and assigned (each, an "<u>Assigned Contract</u>," and collectively, the "<u>Assigned Contracts</u>").

h. If no Contract Objection or Winning Bidder Adequate Assurance Objection, as applicable, is timely received with respect to an Assigned Contract: (i) the Counterparty to such Assigned Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Winning Bidder of the Assigned Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Winning Bidder); (ii) any and all defaults under the Assigned Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount for such Selected Purchased Contract shall be controlling, notwithstanding anything to the contrary in such Assigned Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Assigned Contract against the Debtors and their estates or the Winning Bidder, or the property of any of them, that existed prior to the entry of the Sale Order.

i. To the extent that the Debtors and a Counterparty are unable to consensually resolve any such Contract Objection or Winning Bidder Adequate Assurance Objection, as applicable, prior to the commencement of the Sale Hearing, such Contract Objection Winning Bidder Adequate Assurance Objection, as applicable, will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors, in consultation with the Winning Bidder, or otherwise fixed by the Court. To the extent that (i) the Debtors settle a Contract Objection or Winning Bidder Adequate Assurance Objection or (ii) the Court enters an order resolving the Contract Objection or Winning Bidder Adequate Assurance Objection, and such settlement or order is not acceptable to the Winning Bidder, the Winning Bidder shall have the option to designate the relevant Executory Contract as no longer an Assigned Contract, in which case such Contract shall not be assumed by the Debtors or assigned to the Winning Bidder, and neither the Debtors nor the Winning Bidder shall be responsible for any Cure Amounts related to such Contract.

j.      Notwithstanding anything to the contrary herein, if, after the Sale Hearing or the entry of the Sale Order, additional executory contracts or unexpired leases of the Debtors are determined to be Assigned Contracts, as soon as practicable thereafter, the Debtors shall file with the Court and serve, by overnight mail (and email, if known), on the Counterparties a Cure Notice, and such Counterparties shall file any Contract Objections (including, without limitation, with respect to adequate assurance of future performance of the Winning Bidder and the Cure Amount) not later than seven (7) days thereafter.  If no Contract Objection is timely received, the Debtors shall be authorized to assume and assign such Assigned Contracts to the Winning Bidder, without further notice to creditors or other parties in interest and without the need for further order of the Court, and such assumption and assignment shall be subject to the terms of the Sale Order.

20.     The Debtors' decision to assume and assign the Assigned Contracts to the Winning Bidder is subject to this Court's approval and the closing of the Sale.  Accordingly, absent this Court's approval and the closing of the Sale, the Assigned Contracts shall not be deemed assumed or assumed and assigned and shall in all respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with these Chapter 11 Cases.

21.     The notice to be provided under the Assumption and Assignment Procedures shall constitute adequate and sufficient notice and no additional notice need be provided.

22.     Within three (3) business days of the entry of this Order, the Debtors shall file with the Court, and serve on the Counterparties, the Cure Notice, substantially in the form attached hereto as **Exhibit 3**.

23.     Service of a Cure Notice or inclusion of an Executory Contract on a Cure Notice does not constitute any admission or agreement of the Debtors that such Executory Contract is an executory contract or unexpired lease or that such Executory Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Winning Bid.

24.     The Auction and Sale Notice, the Cure Notice, the Bidding Procedures, the Auction, the Sale Hearing, and the Assumption and Assignment Procedures and the objection periods associated with each of the foregoing are reasonably calculated to provide notice to any

affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bidding Procedures, the Auction, the Sale, the Sale Hearing, and the assumption and assignment the Winning Bidder of the Assigned Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and such notice and objection periods are hereby approved.

25.     The Assumption and Assignment Procedures are appropriate and fair to all Counterparties and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  The Cure Notice is: (a) reasonably calculated to (i) provide sufficient, effective notice to all Counterparties and any other affected parties of the Debtors' intent to assume and assign to the Winning Bidder some or all of the Assigned Contracts and (ii) afford the Counterparties the opportunity to exercise any rights affected by the Motion and the relief granted by this Order pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006; and (b) hereby approved.

## VI.     Miscellaneous

26.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

27.     Prior to mailing the Auction and Sale Notice or the Cure Notice, as applicable, the Debtors may fill in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deem necessary or appropriate.

28.     The failure to include or reference a particular provision of the Bidding Procedures specifically in this Bidding Procedures Order shall not diminish or impair the effectiveness or enforceability of such provision.

29.     In the event of any inconsistency between this Order, on the one hand, and the Motion or the Bidding Procedures, on the other hand, this Order shall govern in all respects.

00048603.2                                      14

30.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Bidding Procedures Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Debtors, a waiver of the Debtors' rights to subsequently dispute such claim or lien, or the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

31.     The requirements of Bankruptcy Rules 6004(h) and 6006(d) are hereby waived.

32.     The requirements of Local Rules 9006-1(c)(ii) are hereby waived.

33.     The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Bidding Procedures Order.

**Dated: May 8th, 2023**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**

00048603.2                                          15

**EXHIBITS TO THE BIDDING PROCEDURES ORDER ARE AVAILABLE ONLINE FROM THE DEBTORS' CLAIMS AND NOTICING AGENT, KURTZMAN CARSON CONSULTANTS LLC AT THE BELOW WEBSITE:**

https://www.kccllc.net/structurlam

**EXHIBIT II**

BIDDING PROCEDURES

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| STRUCTURLAM MASS TIMBER U.S., INC., *et al.*,[1] | ) Case No. 23-10497 (CTG) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

## BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS

On April 21, 2023 (the "<u>Petition Date</u>"), the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>"). On April 24, 2023, the Debtors filed the *Debtors' Motion Seeking Entry of an Order (A)(I) Approving the Debtors' Entry Into and Performance Under an Asset Purchase Agreement (II) Approving Bidding Procedures, (III) Scheduling the Bid Deadlines and the Auction, (IV) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (V) Approving the Form and Manner of the Notice Thereof, (VI) Approving Contract Assumption and Assignment Procedures, and (VII) Granting Related Relief and (B)(I) Approving the Sale of the Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (III) Granting Related Relief* [Docket No. 16] (the "<u>Motion</u>") seeking approval of, among other things, the procedures by which the Debtors are authorized to conduct an auction (the "<u>Auction</u>"), if any, for the sale (the "<u>Sale</u>") of all, substantially all, or any combination of the Debtors' assets (the "<u>Assets</u>") to the Winning Bidder. On May 8, 2023, the Court entered an order with respect to the Motion [Docket No. 87] (the "<u>Bidding Procedures Order</u>")[2] approving the procedures contemplated herein, (the "<u>Bidding Procedures</u>") and granting certain related relief.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or Canadian business number, as applicable, include: Structurlam Mass Timber U.S., Inc. (6287); Natural Outcomes, LLC (n/a); Structurlam Mass Timber Corporation (5050); and SLP Holdings Ltd. (3114). The location of the Debtors' headquarters is: 2176 Government Street, Penticton, British Columbia, Canada V2A 8B5. The address of the registered agent for Structurlam Mass Timber U.S., Inc. is: 8 The Green, Suite A, Dover, Delaware 19901.

[2]    Capitalized terms used but not defined herein have the meaning given to such terms in the Bidding Procedures Order.

**Submissions to the Debtors.**

All submissions to the Debtors required to be made under these Bidding Procedures must be directed to each of the following persons unless otherwise provided (collectively, the "Notice Parties"):

1. **Debtors.** Structurlam Mass Timber U.S., Inc., 2176 Government Street, Penticton, British Columbia, Canada V2A 8B5, Attn: Matthew Karmel (mkarmel@structurlam.com).

2. **Debtor's Counsel.** Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801, Attn: William E. Chipman, Jr. (chipman@chipmanbrown.com); Robert A. Weber (weber@chipmanbrown.com); Mark L. Desgrosseilliers (desgross@chipmanbrown.com); and Mark Olivere (olivere@chipmanbrown.com).

3. **Debtors' Investment Banker.** Stifel, Nicolaus & Company, Incorporated and Miller Buckfire & Co., LLC, Attn: Kevin Haggard (kevin.haggard@millerbuckfire.com); and Michael Sicari (michael.sicari@millerbuckfire.com).

4. **Bank of Montreal.** Bank of Montreal, Attn: Sandy Hayer (sandy.hayer@bmo.com).

5. **Counsel to Bank of Montreal.** (a) Blake, Cassels & Graydon LLP, 855 - 2nd Street S.W., Suite 3500, Bankers Hall East Tower, Calgary, Alberta, T2P 4J8, Attn: Kelly Bourassa (kelly.bourassa@blakes.com), Christopher Keliher (christopher.keliher@blakes.com), Erik Fleming (erik.fleming@blakes.com), and Austin Beck (Austin.Beck@blakes.com) (b) Chapman and Cutler LLP, 320 South Canal Street, Chicago, Illinois 60606 (Attn: Stephen R. Tetro II and James P. Sullivan), email: stetro@chapman.com and jsulliva@chapman.com, and (c) Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Matthew P. Ward), email: matthew-ward@wbd-us.com.

6. **Counsel for the Committee**. (a) Morris Nichols Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899-1347, Attn: Matthew B. Harvey (mharvey@morrisnichols.com) and (b) Buchalter, P.C., 1000 Wilshire Blvd., Suite 1500, Los Angeles, CA 90017 Attn: Julian I. Gurule (jgurule@buchalter.com) and Khaled Tarazi (ktarazi@buchalter.com).

**Potential Bidders.**

To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a Sale (a "Potential Bidder") must deliver or have previously delivered, if determined to be necessary by the Debtor in its sole discretion after consultation with Bank of Montreal and the Committee (together,

00048035.2                                            2

the "Consultation Parties," *provided* that, to the extent Bank of Montreal or any member of the Committee elects to submit a bid for any of the Debtors' Assets, Bank of Montreal or such Committee member, as applicable, shall not be a Consultation Party), the following documents:

1.      an executed confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement"), to the extent not already executed;

2.      identification of the Potential Bidder and any of the principals, corporate officers, or other representatives that are authorized to appear for and act on behalf of the Potential Bidder with respect to the contemplated transaction; and

3.      unless publicly available in a filing under applicable securities laws or regulations, the most current audited and latest unaudited financial statements (the "Financials") of the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors and its advisors, and (y) a written commitment acceptable to the Debtors and its advisors of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the Sale).

**Electronic Data Room and Due Diligence.**

After a party delivers the executed Confidentiality Agreement in accordance with these Bidding Procedures, the Debtors shall provide such party with access to an electronic data room and due diligence information, as reasonably requested by such party, and the Debtors shall post substantially all written due diligence provided to any such party to the Debtors' electronic data room.  To the extent necessary and reasonably practicable, the Debtors will facilitate meetings between any such party and the Debtors' advisors and management team.  The Debtors and their advisors will coordinate all reasonable requests from such parties for additional information and due diligence access; *provided* that the Debtors may decline to provide such information to any party who, at such time and in the Debtors' reasonable business judgment, has not established that it intends in good faith to, or has the capacity to, consummate a Sale.  Parties which enter into a Confidentiality Agreement with the Debtors will not, directly or indirectly, contact or initiate, or engage in discussions with respect to matters relating to the Debtors or a potential transaction with any customer, supplier, or contractual counterparty of the Debtors without the prior written consent of the Debtors.  The due diligence period will end on the Bid Deadline (as defined below), and, after the Bid Deadline, the Debtors will have no obligation to furnish or update any due diligence information.

For any party that the Debtors determine to be a competitor of the Debtors or affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold or modify, or to delay providing, any due diligence information that the Debtors determine is business-sensitive or otherwise inappropriate for disclosure to such party at such time.

## Bidding and Auction Process

## I.  Bid Deadline.

Any party (each, a "Bidder") that desires to make a binding proposal, solicitation, or offer (each, a "Bid") shall transmit the Bid to the Notice Parties so as to be **actually received** on or before May 23, 2023, at 4:00 p.m. (prevailing Eastern Time) (the "Bid Deadline").

## II.  Bid Requirements.

All Bids must be submitted in writing and satisfy the following requirements (collectively, the "Bid Requirements"):

*Purchase Price.*

Each Bid must clearly set forth the purchase price to be paid, specifying (a) any cash and (b) any non-cash components, in sufficient detail satisfactory to the Debtors (the "Purchase Price").  Each Bid for a combination of Assets, other than for all or substantially all of the Assets, must:  (x) provide a breakdown of the share of the Purchase Price allocable to each of the Assets included in the Bid; (y) state whether the Bid is conditioned upon the Bid being the Winning Bid (as defined below) for any of the other Assets included in the Bid (and, if so, which Assets); and (z) state whether the Bidder is willing to purchase any of the Assets included in the Bid individually, and if so, the price such Bidder would pay for each such Asset.

*Marked Agreement.*

Each Bid must be accompanied by clean and duly executed transaction documents including, at a minimum, a draft purchase agreement, the form of which shall be in a form substantially similar to the Stalking Horse Purchase Agreement, pursuant to which the Bidder proposes to effectuate the Sale, along with redlines of such agreement marked to reflect any amendments and modifications from the form purchase agreement provided, which amendments and modifications may not be materially more burdensome than the Stalking Horse Purchase Agreement or otherwise inconsistent with these Bidding Procedures.  The Debtors, in their reasonable business judgment after consultation with the Consultation Parties, will determine whether any such amendments and modifications are materially more burdensome.

*Deposit.*

Each Bid, other than a credit bid, must be accompanied by a cash deposit in an amount equal to ten percent (10%) of the aggregate value of the cash and non-cash consideration of such Bid (the "Deposit"), to be submitted by wire transfer to the escrow account established by the Debtors.  Please contact the Debtors ahead of the Bid Deadline to receive wire information.  The Deposit shall not bear interest and shall be conclusively deemed subject to the exclusive jurisdiction of the Bankruptcy Court upon receipt.

*Committed Financing*.

Each Bid must contain evidence of the Bidder's ability to consummate a Sale by June 5, 2023. To the extent that a Bid is not accompanied by evidence of such party's capacity to consummate the Sale set forth in its Bid with cash on hand, each Bid must include committed financing, documented to the Debtors' satisfaction after consultation with the Consultation Parties, that demonstrates that such party has received sufficient debt and/or equity funding commitments to satisfy the Bid's Purchase Price and other obligations thereunder. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors after consultation with the Consultation Parties.

*No Financing or Diligence Outs*.

A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions.

*Identity*.

Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Bidder if such Bidder is an entity formed for the purpose of consummating the proposed Sale contemplated by such Bid), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific person(s) and counsel whom the Debtors' advisors should contact regarding such Bid.

*Authorization*.

Each Bid must contain evidence that the Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid and the consummation of the Sale contemplated in such Bid.

*Adequate Assurance of Future Performance*.

Each Bid must (a) identify any executory contracts and unexpired leases to be assumed and assigned in connection with such Bid, (b) provide for the payment by the Bidder of all cure costs related to such executory contracts and unexpired leases, and (c) demonstrate, in the Debtors' reasonable business judgment that the Bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases.

*Government Approvals*.

Each Bid must include a description of all governmental, licensing, regulatory, or other approvals or consents that are required to consummate the proposed Sale, together with evidence satisfactory to the Debtors of the ability to obtain such consents or approvals in a timely manner,

as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, obtaining any such consents or approvals.

*Government Approvals Timeframe.*

Each Bid must set forth an estimated timeframe for obtaining any required governmental, licensing, regulatory, or other approvals or consents for consummating any proposed Sale.

*As-Is, Where-Is.*

Each Bid must include a written acknowledgement and representation that the Bidder (a) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, (b) has relied solely upon its own independent review, investigation, or inspection of any documents or the Assets in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction.

*Honoring the Bid Procedures.*

Each Bid must affirmatively state the Bidder's agreement, and by submitting its Bid, each Bidder is so agreeing, to abide by and honor the terms of these Bidding Procedures (including if such Bid is declared the Winning Bidder or Backup Bidder (as defined below)) and to refrain from submitting a Bid or seeking to reopen the Auction after conclusion of the Auction. The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Assets reflected in such Bid.

*Additional Diligence.*

Each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors and the Consultation Parties regarding the Bid.

*Expenses.*

Except as otherwise approved by the Bidding Procedure Order, each Bid shall not contemplate or request (and no Bidder shall receive) any break-up fee, transaction fee, termination fee, expense reimbursement, or any similar type of payment or reimbursement, and by submitting its Bid, each Bidder is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

## III.    **Designation of Qualified Bidders.**

*Qualified Bidder.*

A Bid will be considered a "Qualified Bid," and each Bidder that submits a Qualified Bid will be considered a "Qualified Bidder," if the Debtors determine in their reasonable business judgment after consultation with the Consultation Parties that such Bid (a) satisfies the Bid Requirements, and (b) is reasonably likely (based on availability of financing, regulatory issues, experience, and other considerations) to be consummated, if selected as a Winning Bid, within a

time frame reasonably acceptable to the Debtors after consultation with the Consultation Parties. In making the determination as to whether a Bid will be considered a Qualified Bid and a Bidder will be considered a Qualified Bidder, the Debtors may request that such Bidder provide supporting documentation or other information sufficient to demonstrate, in the Debtors' reasonable business judgment after consultation with the Consultation Parties, such Bidder's financial capacity and ability to close the proposed transaction.

Notwithstanding anything to the contrary herein, (i) the Stalking Horse Bid shall be considered a Qualified Bid, and the Stalking Horse Bidder shall be considered a Qualified Bidder and (ii) a credit bid submitted by Bank of Montreal on account of (a) the prepetition secured financing and/or (b) the debtor in possession financing provided by Bank of Montreal to the Debtors shall be considered a Qualified Bid, and Bank of Montreal shall be considered a Qualified Bidder.

*Notification.*

Prior to the commencement of the Auction, the Debtors will notify each Bidder whether such party is a Qualified Bidder.

*Bid Modifications.*

Between the date that the Debtors notify a Bidder that it is a Qualified Bidder and the Auction, (a) the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder, and (b) a Qualified Bidder may not, without the prior written consent of the Debtors, modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase their Purchase Price, or otherwise improve the terms of the Qualified Bid (from the perspective of the Debtors' estates); *provided* that any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

*Combination of Bids; Overlapping Bids.*

Notwithstanding anything herein to the contrary, the Debtors reserve the right, in consultation with the Consultation Parties, to work with (a) Bidders and Qualified Bidders to aggregate two or more Bids into a single consolidated Bid prior to the Bid Deadline, (b) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction, and (c) any Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.  The Debtors, in consultation with the Consultation Parties, may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Assets such that, if taken together in the aggregate, the Bids would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction).

## IV.    Bid Selection and Criterion.

*Baseline Bid.*

The Stalking Horse Bid shall serve as the baseline bid (the "Baseline Bid").

*Bid Assessment Criteria.*

The determination of which Qualified Bid constitutes the Winning Bid shall take into account any factors the Debtors, in consultation with the Consultation Parties, reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (a) the type and amount of Assets sought to be purchased; (b) the amount and nature of the Purchase Price; (c) the Qualified Bidder's ability to consummate a Sale and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the Qualified Bid; and (e) the tax consequences of such Qualified Bid.

*Credit Bids.*

Any Qualified Bidder who has a valid and perfected lien on any assets of the Debtors' estates and the right under applicable non-bankruptcy law to credit bid claims secured by such liens shall have the right to credit bid any portion and up to the entire amount of their outstanding secured claims pursuant to section 363(k) of the Bankruptcy Code, *provided* that any credit bid for a material portion of the Assets by or on behalf of any party, other than Bank of Montreal under the Debtors' prepetition and debtor-in-possession credit facilities, shall contain a cash component sufficient to pay the aggregate amount of the Debtor's accrued, unpaid administrative expenses and any other claims requiring payment in full in cash; *provided*, *further*, that any credit bid shall contain a cash component or make other provision sufficient to pay or otherwise satisfy any applicable cure costs for any executory contracts or unexpired leases to be assumed and assigned to the credit bidding party under the credit bid; *provided*, *further*, that any credit bid submitted by a party shall include a cash component sufficient to (a) pay the amount of the Stalking Horse Protections and (b) pay for any Assets that are unencumbered by first priority perfected liens in favor of the credit bidder.  For the avoidance of doubt, a credit bid submitted by Bank of Montreal consistent with the foregoing clauses (a) and (b) shall be deemed a Qualified Bid.

For purposes of evaluating competing bids, every dollar of a credit bid shall be treated the same as a dollar from a cash bid, and a credit bid shall not be considered inferior to a comparable cash bid because it is a credit bid. The fact that a Bid is composed of a credit bid (whether in whole or in part) shall not be a factor considered by the Debtors in their determination of the highest or otherwise best Bid for such asset.

## V.    **Auction Procedure.**

*Time and Place.*

If the Debtors receive two or more Qualified Bids with respect to all of the Assets or any specific Asset, as applicable, then the Debtors will conduct the Auction to determine the Winning Bidder(s) (as defined below) with respect to such Assets.  The Auction shall take place at 10:00 a.m. (prevailing Eastern Time) on May 24, 2023, via videoconference (with instructions for participating in such videoconference to be provided by the Debtors in advance of the Auction), or such later date, time, and location, as selected by the Debtors after consultation with the Consultation Parties.  If the Debtors do not receive any Qualified Bids that are greater than the Stalking Horse Bid, then the Debtors may select such Stalking Horse Bid as the Winning Bid.

*Conducting the Auction.*

The Debtors and their advisors shall direct and preside over the Auction.  At the start of the Auction, the Debtors shall describe the terms of the Stalking Horse Bid as the Baseline Bid.  Any Bids made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid shall be "Overbids" and must comply with the conditions set forth below and shall be made and received on an open basis, with all material terms of each Overbid fully disclosed to all other Qualified Bidders.  The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Winning Bid(s).  The Debtors may (a) select, in their reasonable business judgment after consultation with the Consultation Parties, pursuant to these Bidding Procedures, the highest or otherwise best Bid and the Winning Bidder(s) or Backup Bidder(s), and (b) reject any Bid (regardless of whether such Bid is a Qualified Bid) that, in the Debtors' reasonable business judgment after consultation with the Consultation Parties, is (x) inadequate, insufficient, or not the highest or best Bid, (y) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or these Bidding Procedures, or (z) contrary to, or otherwise not in the best interests of the Debtors' estates, affected stakeholders, or other parties in interest.

The Auction may include individual negotiations with any of the Qualified Bidders, including in separate video conference rooms that the Debtors may establish to facilitate such discussions between the Debtors and individual Qualified Bidders, but all Bids shall be made on the record and in the presence of all of the Qualified Bidders attending the Auction.

*Terms of Overbids.*

1.  <u>Minimum Initial Overbid</u>:  Any initial Overbid to the Stalking Horse Bid shall be no less than $62,900,000, consisting of $60,000,000 as the amount of the Stalking Horse Bid, *plus* $2,400,000 as the amount of the Stalking Horse Protections, *plus* $500,000.

2.  <u>Minimum Overbid Increments</u>:  Any subsequent Overbids shall be in increments of $500,000.

3.  <u>Announcing Highest Bid</u>:  After each Overbid, the Debtors shall announce the material terms of the Overbid, including value attributed to the Overbid.

The Stalking Horse Protections shall be taken into account in connection with each round of bidding and in each phase of the Auction by adding $2,400,000 (*i.e.*, the amount of the Stalking Horse Protections) to the amount of each Overbid made by the Stalking Horse Bidder and, once triggered, the Stalking Horse Protections shall act as a credit toward any Closing by the Stalking Horse Bidder as the Winning Bidder or as the Backup Bidder.

*Eligibility.*

Only Qualified Bidders that have submitted Qualified Bids by the Bid Deadline are eligible to participate in the Auction, subject to other limitations as may be reasonably imposed by the Debtors in accordance with these Bidding Procedures; *provided* that such other limitations are (a) not inconsistent with the Bidding Procedures Order, any other order of the Court, or the

Bankruptcy Code, (b) disclosed orally or in writing to all Qualified Bidders, and (c) determined by the Debtors to further the goals of these Bidding Procedures.

*Required Attendance.*

Qualified Bidders participating in the Auction must appear at the Auction, or through a duly authorized representative.

*Permitted Attendance.*

The Auction will be conducted openly and all creditors and counsel or other professional advisors may be permitted to attend, provided that the Debtors may, in their sole and exclusive discretion, establish a reasonable limit to the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder or creditor at the Auction.

*No Collusion; Good-Faith Bona Fide Offer.*

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (a) it has not engaged in any collusion with respect to the bidding, and (b) its Qualified Bid is a good-faith bona fide offer and it intends to consummate the proposed Sale if selected as a Winning Bidder.

*Adjourning the Auction.*

Notwithstanding anything else herein to the contrary, the Debtors reserve the right, in their reasonable business judgment after consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things, (a) facilitate discussions between the Debtors and Qualified Bidders; (b) allow Qualified Bidders to consider how they wish to proceed; (c) alter or combine Asset groups; and (d) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Sale at the prevailing Overbid amount.

*Closing the Auction.*

The Auction shall continue until the Debtors select, in their reasonable business judgment after consultation with the Consultation Parties, pursuant to these Bidding Procedures, the highest or otherwise best Qualified Bid for the Assets or any subset thereof, as applicable. Such Qualified Bid shall be declared the "Winning Bid," and such Qualified Bidder shall be declared the "Winning Bidder," and upon the declaration of the Winning Bid and the Winning Bidder the Auction will be closed. The Debtors may also select, in their reasonable business judgment after consultation with the Consultation Parties, pursuant to these Bidding Procedures, the next-highest or otherwise second-best Qualified Bid for the Assets or any subset thereof, as applicable, to be the "Backup Bidder." As soon as reasonably practicable after closing the Auction, the Debtors shall finalize definitive documentation to implement the terms of the Winning Bid, and, as applicable, cause

such definitive documentation to be filed with the Court.  The acceptance by the Debtors of the Winning Bid is conditioned upon approval by the Court of the Winning Bid.

*Backup Bidder*.

1.    Designation of Backup Bidder:  The Qualified Bidder with the next-highest or otherwise second-best Qualified Bid for the Assets or any subset thereof, as applicable, as determined by the Debtors in the exercise of their reasonable business judgment after consultation with the Consultation Parties, shall be required to serve as a Backup Bidder until such time as the applicable Sale is consummated, and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

2.    Identity of Backup Bidder:  The identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Winning Bidder.  The Backup Bidder shall be required to keep its Qualified Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until such time as the Sale is consummated.

3.    Consummating a Sale with Backup Bidder:  If a Winning Bidder fails to consummate the Sale contemplated by its Winning Bid, then the Debtors may select the Backup Bidder as the Winning Bidder, and such Backup Bidder shall be deemed a Winning Bidder for all purposes.  The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party.

*Return of Deposit*.

The Deposits for each Qualified Bidder shall be held in one or more non-interest-bearing escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Winning Bidder and the Backup Bidder) within three business days after the Auction is closed, or as soon as is reasonably practicable thereafter.

The Deposit of the Winning Bidder shall be applied to the purchase price of such Sale at closing.  If a Winning Bidder (including a Backup Bidder which becomes a Winning Bidder) fails to consummate a proposed transaction because of a breach by such Winning Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Winning Bidder, which may be retained by the Debtors as liquidated damages, in addition to any rights, remedies, or causes of action that may be available to the Debtors.  If a Winning Bidder consummates a proposed transaction or fails to consummate a proposed transaction but the Debtors elect to not consummate the proposed transaction with the Backup Bidder, then the Backup Bidder's Deposit shall be returned within three business days thereof, or as soon as is reasonably practicable thereafter.

*Modification of Bidding Procedures.*

The Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment after consultation with the Consultation Parties, in a manner consistent with their fiduciary duties and applicable law, without further order from the Court, in any manner that will best promote the goals of these Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions on a Sale, including, without limitation: (a) extending or modifying any of the dates and deadlines set forth in these Bidding Procedures; (b) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (c) adjusting the applicable minimum Overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis; (d) adjourning or cancelling the Auction; and (e) rejecting any or all Bids or Qualified Bids.

*Fiduciary Out.*

Notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor, to take any action or to refrain from taking any action to the extent taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under applicable law.

*Consent to Jurisdiction.*

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction or the construction and enforcement of these Bidding Procedures.

[*Remainder of Page Intentionally Left Blank*]

Dated: May 9, 2023
      Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
Robert A. Weber (No. 4013)
Mark L. Desgrosseilliers (No. 4083)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Email:       chipman@chipmanbrown.com
               weber@chipmanbrown.com
               desgross@chipmanbrown.com
               olivere@chipmanbrown.com

*Proposed Conflicts Counsel to Debtors and Debtors in Possession*

# EXHIBIT III

EXECUTORY CONTRACTS

| Counterparty | Contact | Address1 | Contract Description | Cure Amount |
|---|---|---|---|---|
| ADVANCED CONSTRUCTION SOUTHWEST | PHIL STULTS | 1580 N. BATAVIA ST., STE. 1, ORANGE, CA 92867 | LAGUNA CLARA | $0.00 |
| BC PASSIVE HOUSE | TONY FUEZ | 1928 ARTISAN ROAD, PEMBERTON, BC V0N 2K0 CANADA | BC PASSIVE HOUSE | $0.00 |
| BERT BAZLEY | | ADDRESS ON FILE | EMPLOYMENT AGREEMENT | $0.00 |
| BMW CANADA INC. | | 50 ULTIMATE DRIVE RICHMOND HILL, ON L4S OC8 CANADA | BLACK SAPPHIRE BMW X3 M40I - 2021 | $0.00 |
| BROOKSTONE MANAGEMENT, LLC | JERAMY MOFFITT | 3715 DACOMA ST, HOUSTON, TX 77092 | OSCAR JOHNSON JR. COMM CTR | $0.00 |
| BROWARD BUILDERS | SHAWN APPLETON | 1200 EAST KENTUCKY AVE, WOODLAND, CA 95776 | WILLITS RESIDENTIAL CTR | $0.00 |
| BUHLER COMMERCIAL CONSTRUCTION | JIN TANG/STEVE BUHLER | 400 BRANNAN STREET, SUITE 204 SAN FANCISCO, CA, 94107 | UC BERKLEY RESTROOMS | $0.00 |
| BULKLEY VALLEY ENGINEERING SERVICES LTD. | EERIK LILLES | 3763 1 AVE SMITHERS, BC V0J 2N0 CANADA | BVES OFFICE | $0.00 |
| CANADIAN FOREST PRODUCTS LTD. | | 1700 W 75TH AVE #100, VANCOUVER, BC V6P 6G2 CANADA | PURCHASE ORDER FOR TOTAL AMOUNT OF $13,795,897.50 | $0.00 |
| CISCO SYSTEMS CAPITAL CANADA CO | JEFF RODRIGUEZ | 181 BAY ST, SUITE 3400 BAY TOWER TORONTO, ON, M5J 2T3 CANADA | CISCO HYPERFLEX SERVER CLUSTER | $8,452.58 (CAD) |
| CITY OF CONWAY, ARKANSAS | BART CASTLEBERRY/MAYOR | 1201 OAK STREET CONWAY, AR 72032 | AGREEMENT FOR PAYMENTS IN LIEU OF TAXES | $0.00 |
| CITY OF CONWAY, ARKANSAS | BART CASTLEBERRY/MAYOR | 1201 OAK STREET CONWAY, AR 72032 | CONWAY LEASE | $0.00 |
| DAVE BROUGHAM | | ADDRESS ON FILE | EMPLOYMENT AGREEMENT | $0.00 |
| DENARK CONSTRUCTION | MOHAMED ABBAS | 1635 WESTERN AVE, KNOXVILLE, TN 37921 | KNOXVILLE MULTI-USE STADIUM | $0.00 |
| DPR CONSTRUCTION | DANIEL BERSON | 1450 VETERANS BLVD. REDWOOD, CA 94063 | SONOMA PERF ARTS CTR | $0.00 |
| DURWEST CONSTRUCTION MANAGEMENT INC. | TOM HOWE | 401 - 655 TYEE ROAD VICTORIA, BC, V9A 6X5 | RRU WEST SHORE CAMPUS | $0.00 |
| EAGLE HOMES SALES LTD. | JODI BLAND | 120 HARBOURFRONT DRIVE NE SALMON ARM, BC V1E 2T3 CANADA | OK FALLS-WALLIS RD. LEASE | $0.00 |
| FFD DEVITO INVESTMENTS LTD. | FRANK DEVITO | 7789 MUNROE CRESCENT VANCOUVER, BC V5S 3J9 CANADA | OLIVER FACILITY LEASE | $0.00 |
| FORD CREDIT CANADA LEASING | | 198 PARKWAY PLACE PENTICTON, BC V2A8G8 CANADA | FORD F150 - 2019 | $0.00 |
| FRED SHEARER & SONS, INC, | JEFF GOEMMEL | 8015 SW HUNZIKER ROAD TIGARD, OR 97223 | WLLLAMETE WTP | $0.00 |

| Counterparty | Contact | Address1 | Contract Description | Cure Amount |
|---|---|---|---|---|
| GLASSTEP CONSULTING INC. | | 5796 RICHARDS CRESCENT VERNON, BC V1B 3R1 CANADA | PROPOSAL | $0.00 |
| HENSEL PHELPS CONSTRUCTION CO. | JORDAN KENNEDY | 420 SIXTH AVENUE GREELEY, CO 80631 | RBOC CANOPY | $0.00 |
| JC LEWIS CONSTRUCTION, LLC | JERET FLEMING | 155 FOREST SERVICE LOOP LUFKIN, TX 75904 | HUDSON OFFICE BUILDING | $0.00 |
| JE DUNN CONSTRUCTION | RYAN CHRISTENSON | 766 ELKS DRIVE, SUITE B DICKINSON, ND 5B601 | THEODORE ROOSEVELT PRESIDENTIAL LIBRARY | $0.00 |
| JIM PATTISON INDUSTRIES LTD. DBA JIM PATTISON LEASE | LANA PROKOPUIK | 4937 REGENT ST. BURNABY, BC, V5C 4H4 CANADA | 2020 TOYOTA TACOMA - GREY | $0.00 |
| JIM PATTISON INDUSTRIES LTD. DBA JIM PATTISON LEASE | LANA PROKOPUIK | 4937 REGENT ST. BURNABY, BC, V5C 4H4 CANADA | 2021 NISSAN MURANO AWD | $0.00 |
| JIM PATTISON INDUSTRIES LTD. DBA JIM PATTISON LEASE | LANA PROKOPUIK | 4937 REGENT ST. BURNABY, BC, V5C 4H4 CANADA | GMC SIERRA 1500 - 2020 | $0.00 |
| JIM PATTISON INDUSTRIES LTD. DBA JIM PATTISON LEASE | LANA PROKOPUIK | 4937 REGENT ST. BURNABY, BC, V5C 4H4 CANADA | HYUNDAI KONA - 2019 | $0.00 |
| JIM PATTISON INDUSTRIES LTD. DBA JIM PATTISON LEASE | LANA PROKOPUIK | 4937 REGENT ST. BURNABY, BC, V5C 4H4 CANADA | TOYOTA TUNDRA - 2022 | $0.00 |
| JIM PATTISON INDUSTRIES LTD. DBA JIM PATTISON LEASE | LANA PROKOPUIK | 4937 REGENT ST. BURNABY, BC, V5C 4H4 CANADA | WHITE TOYOTA TUNDRA - 2017 | $0.00 |
| JOHN PTOLEMY | | ADDRESS ON FILE | CONSULTING AGREEMENT | $0.00 |
| JOURNEY GROUP COMPANIES | JOE NIEWOHNER | 4500 WEST 58TH STREET SIOUX FALLS, SD 57108 US | CHERAPA IV | $0.00 |
| KERLIN DRAKE CONSULTING | KERLIN DRAKE | 103 SUMMIT PLACE EL DORADO, AR 71730 | CONSULTING SERVICES ENGAGEMENT LETTER | $0.00 |
| KERR PROPERTIES LTD. | | 2300 - 550 BURRARD STREET VANCOUVER, BC  V6C 2B5 CANADA | OK FALLS-1675 MAPLE ST. LEASE | $0.00 |
| LEAVITT MACHINERY | DARIN BODNAR | 110-801 WADDINGTON DR VERNON, BC, V1T 8T5 CANADA | TAYLOR FORKLIFT S/N GT100L | $0.00 |
| LEAVITT MACHINERY GENERAL PARTNERSHIP DBA LEAVITT MACHINERY | JOHN MUTIS | 24389 FRASER HIGHWAY, LANGLEY, BC, V2Z 2L3 CANADA | C2200 COMBILIFT S/N 43302 | $24,553.20 (CAD) |
| LEAVITT MACHINERY GENERAL PARTNERSHIP DBA LEAVITT MACHINERY | JOHN MUTIS | #201 – 19433 96TH AVENUE, SURREY, BC, CANADA V4N 4C4 CANADA | C2200 COMBILIFT S/N 48077 | $0.00 |
| LEAVITT MACHINERY GENERAL PARTNERSHIP DBA LEAVITT MACHINERY | JOHN MUTIS | #201 – 19433 96TH AVENUE, SURREY, BC, V4N 4C4 CANADA | CAT GP55N1 FORKLIFT S/N AT33CO90319 | $14,689.50 (CAD) |
| LEAVITT MACHINERY GENERAL PARTNERSHIP DBA LEAVITT MACHINERY | DARIN BODNAR | 24389 FRASER HIGHWAY, LANGLEY, BC, V2Z 2L3 CANADA | CATERPILLAR FORKLIFT S/N GP50CN1 | $7,886.56 (CAD) |
| LEAVITT MACHINERY GENERAL PARTNERSHIP DBA LEAVITT MACHINERY | JOHN MUTIS | 24389 FRASER HIGHWAY, LANGLEY, BC, V2Z 2L3 CANADA | HYUNDAI FORKLIFT S/N 80D-9 | $0.00 |

| Counterparty | Contact | Address1 | Contract Description | Cure Amount |
|---|---|---|---|---|
| LEVEL 10 CONSTRUCTION LP | SHIRLEY SAN DIEGO/ DOUG COLLINS | 1050 ENTERPRISE WAY, SUITE 250 SUNNYVALE, CA 94089 | GOOGLE YOUTUBE SBO PHASE 1 | $0.00 |
| MATTHEW KARMEL | | ADDRESS ON FILE | CONSULTING AGREEMENT | $0.00 |
| MDM CONSTRUCTION CO LTD | STEVE REMPEL | 2-6285 205TH STREET LANGLEY, BC V2Y 1N7 CANADA | PARK VISTA | $0.00 |
| MERIDIAN ONECAP CREDIT CORP. | | 4710 KINGSWAY, SUITE 1500 BURNABY, BC V5H 4M2 CANADA | PHOTOCOPIERS (10) | $0.00 |
| MERIDIAN ONECAP CREDIT CORP. | | 4710 KINGSWAY, SUITE 1500 BURNABY, BC V5H 4M2 CANADA | PHOTOCOPIERS (2) | $0.00 |
| METROPOLITAN WALTERS LLC | DAVID PSACRITA | 214 W 29TH STREET NEW YORK, NY 10001 | HIGH LINE CONNECTOR | $0.00 |
| MINGLIAN GROUP | ALEX ZHANG | 760 W GEORGIA, VANCOUVER, BC, V6E 4E6 CANADA | TERRALEX WINERY | $0.00 |
| RICHARD HANCOCK, INC. | ISAAC LAMAR | 1029 THIRD STREET, SANTA ROSA, CA 95404 | VA YOUNTVILLE | $0.00 |
| RICHARD HANCOCK, INC. | ISAAC LAMAR | 1029 THIRD STREET, SANTA ROSA, CA 95404 | VA YOUNTVILLE | $0.00 |
| RITCHIE CONTRACTING & DESIGN LTD. | JESSICA ROBINSON | #104, 198 WINNIPEG ST PENTICTON, BC V2A 5M1 | FALLING ROCK RESIDENCE | $0.00 |
| SWAYBACK HOLDINGS1983 LTD. | MATTHEW GEORGE KENYON, PRESIDENT | 402 WARREN AVENUE EAST PENTICTON, BC V2A 3M2 CANADA | PENTICTON FACILITY LEASE | $60,826.72 (CAD) |
| TIMBERLYNE GROUP | BEN DUCKWORTH | 613 HWY 46 E BOERNE, TX 78006 | CELINA POLICE | $0.00 |
| TREATY CONSTRUCTION | BARRY DOHERTY | 2278 44TH AVENUE SAN FRANCISCO, CA 94116 | GOLDEN GATE PARK GOLF CLUBHOUSE | $0.00 |
| UNITED STEELWORKERS (USW) | DAVID R. JURY, ESQUIRE | 60 BOULEVARD OF THE ALLIES, ROOM 807 PITTSBURGH, PA 15222 | COLLECTIVE BARGAINING AGREEMENT | $0.00 |
| UNITED STEELWORKERS (USW) | SUSAN E. KAUFMAN, ESQUIRE | 919 N. MARKET STREET, SUITE 460 WILMINGTON, DE 19801 | COLLECTIVE BARGAINING AGREEMENT | $0.00 |
| URBAN ONE SPECIAL PROJECTS INC. | WENDY CHAN | 50 WEST 7TH AVENUE VANCOUVER, BC, V5Y 1L6 CANADA | COWICHAN SECONDARY | $0.00 |
| WESTERN PARTITIONS INC. | JAMES COE | 4745 PACIFIC AVE, EUGENE, OR 97402 | ASANTE CANOPY | $0.00 |
| WILLIAMS SCOTSMAN, INC. (WILLSCOT) | PAUL MAMMARELLI | 7424 BICENTENNIAL LITTLE ROCK, AR 72205 | ACC-30760 (40X8 CONTAINER) | $1,291.39 (USD) |
| WILLIAMS SCOTSMAN, INC. (WILLSCOT) | PAUL MAMMARELLI | 7424 BICENTENNIAL LITTLE ROCK, AR 72205 | CL6824 (68X24 CLASSROOM) | $16,581.75 (USD) |
| WILLIAMS SCOTSMAN, INC. (WILLSCOT) | PAUL MAMMARELLI | 7424 BICENTENNIAL LITTLE ROCK, AR 72205 | MO6412 (64X12 MOBILE OFFICE) | $2,438.72 (USD) |

In re Structurlam Mass Timber U.S., Inc., et al.
Case No. 23-10497 (CTG)

Page 3 of 4

**Cure Exhibit**

| Counterparty | Contact | Address1 | Contract Description | Cure Amount |
|---|---|---|---|---|
| WILLIAMS SCOTSMAN, INC. (WILLSCOT) | PAUL MAMMARELLI | 7424 BICENTENNIAL LITTLE ROCK, AR 72205 | SM6448 (64X48 MODULAR) | $14,408.12 (USD) |
| WILLIAMS SCOTSMAN, INC. (WILLSCOT) | PAUL MAMMARELLI | 7424 BICENTENNIAL LITTLE ROCK, AR 72205 | TT6012 (60X20 TOILET UNIT) | $6,165.14 (USD) |
| ZENTERRA DEVELOPMENTS | CHRIS MUNRO | 216-2630 CROYDON DR SURREY, BC V3Z 6T3 CANADA | ZENTERRA APARTMENTS | $0.00 |