# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| STRUCTURLAM MASS TIMBER U.S., INC., *et al.*,[1] | ) Case No. 23-10497 (CTG) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Re: Docket Nos. 16 and 87** |

## ORDER (I) AUTHORIZING (A) SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND (B) THE DEBTORS' ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (II) GRANTING RELATED RELIEF

Upon the *Debtors' Motion Seeking Entry of an Order (A)(I) Approving Bidding Procedures, (II) Approving Stalking Horse Protections and Debtors' Entry into Stalking Horse Purchase Agreement, (III) Scheduling the Bid Deadlines and the Auction, (IV) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (V) Approving the Form and Manner of Notice Thereof, (VI) Approving Contract Assumption and Assignment Procedures, and (VII) Granting Related Relief and (B)(I) Approving the Sale of the Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (III) Granting Related Relief* [Docket No. 16] (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number or Canadian business number, as applicable, include: Structurlam Mass Timber U.S., Inc. (6287); Natural Outcomes, LLC (n/a); Structurlam Mass Timber Corporation (5050); and SLP Holdings Ltd. (3114); The location of the Debtors' headquarters is: 2176 Government Street, Penticton, British Columbia, Canada V2A 8B5. The address of the registered agent for Structurlam Mass Timber U.S., Inc. is: 8 The Green, Suite A, Dover, Delaware 19901.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Purchase Agreement (as defined herein), as applicable; *provided* that in the event of any conflict with respect to the meaning of a capitalized term between the Motion and the Purchase Agreement, the meaning ascribed to such term in the Purchase Agreement shall control.

the "Debtors")[3] for entry of an order (this "Order"), among other things, (a) authorizing the sale (the "Sale") of the Transferred Assets (as defined in the Purchase Agreement (as defined below)) to Mercer International Inc. (or any permitted assignee pursuant to the terms of the Purchase Agreement, the "Buyer"), pursuant to the Asset Purchase Agreement dated April 21, 2023 (as amended), attached hereto as **Exhibit 1** and incorporated herein by reference as if set forth herein (together with all other documents contemplated thereby, as such agreement has been or may be amended, restated or supplemented, the "Purchase Agreement"), free and clear of all Liens, Claims, and Interests (each as defined below) with the exceptions of the Assumed Liabilities and Permitted Encumbrances (each as defined in the Purchase Agreement); (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases to the Buyer; (c) authorizing the Debtors to pay the net proceeds from the Sale, up to the amount of the DIP Obligations and the Prepetition Obligations (each as defined below), to Bank of Montreal as lender under (i) the Debtors' debtor-in-possession financing facility (in such capacity, the "DIP Lender," such facility, the "DIP Facility," and the obligations under such facility, the "DIP Obligations") and (ii) the Debtors' prepetition secured lending facility (in such capacity, the "Prepetition Lender," such facility, the "Prepetition Facility," and the obligations under such facility, the "Prepetition Obligations"); and (d) granting related relief, all as more fully set forth in the Motion; and the Court having entered the *Order (I) Approving Bidding Procedures, (II) Approving Stalking Horse Protections and Debtors' Entry into Stalking Horse Purchase Agreement, (III) Scheduling the Bid Deadlines and the Auction, (IV) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (V) Approving the Form and Manner of Notice Thereof, (VI) Approving*

---

[3]    All references to the "Debtors" shall include the debtors and their estates.

*Contract Assumption and Assignment Procedures, and (VII) Granting Related Relief* [Docket No. 87] (the "Bidding Procedures Order"); and the auction (the "Auction") for the Transferred Assets, if any, having been held on May 24, 2023; and the Buyer's bid having been declared the Winning Bid; and the Debtors having filed the *Notice of Winning Bidder* [Docket No. 178] identifying the Buyer as the Winning Bidder for the Transferred Assets in accordance with the Bidding Procedures Order; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest; and the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motions and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O); and due and proper notice of the Motion and the hearing to consider the Motion having been given, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the *Supplemental Declaration of Kevin Haggard in Support of the Debtors' Sale Motion* [Docket No. 183] (the "Haggard Declaration"); and the Court having held a hearing to consider the Motion on May 30, 2023 (the "Sale Hearing") at which time all interested parties were offered an opportunity to be heard regarding the Motion, the Purchase Agreement and the transactions contemplated by the Purchase Agreement (the "Transactions"); and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and the Court having reviewed and considered the objections, if any, to the Motion (collectively, the "Objections"); and based upon and as demonstrated by the Haggard Declaration, the evidence proffered or adduced at the Sale Hearing, and the arguments of counsel

made on the record at the Sale Hearing; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY FOUND AND DETERMINED THAT**:

### Findings of Fact and Conclusions of Law

A.      The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

### Jurisdiction and Venue

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Without limiting the generality of the foregoing, this Court has exclusive *in rem* jurisdiction over the Transferred Assets pursuant to 28 U.S.C. § 1334(e), as such Transferred Assets are property of the Debtors' chapter 11 estates, and, as a result of such jurisdiction, this Court has all necessary power and authority to grant the relief contained herein.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

### Statutory Predicates

C.      The statutory and other legal bases for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014.   The consummation of the Transactions contemplated by the Purchase Agreement and this Order is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local

Rules, and the Debtors and the Buyer and their affiliates have complied with all of the applicable requirements of such sections and rules in respect of the Transactions.

**Notice**

D.      As evidenced by the affidavits and/or certificates of service filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, the Bidding Procedures, the Auction, the Sale (and the Transactions contemplated in connection therewith), the assumption and assignment to the Buyer of the executory contracts and unexpired leases specified as of the date hereof pursuant to the Purchase Agreement or as may be subsequently designated to be an "Additional Assumed Contract" (as defined in the Purchase Agreement) in accordance with Section 1.6(b) of the Purchase Agreement (collectively, the "Assigned Contracts"), the Cure Costs (as defined below), the Sale Hearing, and all deadlines related thereto, has been provided, as relevant, in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and in compliance with the Bidding Procedures Order, to all interested persons and entities.

E.      The Debtors served notices substantially in the form included in the Notice of (I) Potential Assumption and Assignment of Contracts and (II) Cure Amounts and Adequate Assurance in Connection Therewith [Docket No. 92] (each a "Notice of Assumption and Assignment"), in accordance with the Bidding Procedures Order, identifying, among other things, the Cure Costs (as defined below).  The Debtors served (or, with respect to any Additional Assumed Contracts (as defined in the Purchase Agreement), will serve) the Notice of Assumption and Assignment on each of the non-Debtor counterparties to the Assigned Contracts.  The service of the Notice of Assumption and Assignment was sufficient under the circumstances and in full compliance with the Bidding Procedures Order, and no further notice need be provided in respect of the Debtors' assumption and assignment to the Buyer of the Assigned Contracts or the Cure

Costs. All non-Debtor counterparties to the Assigned Contracts have had an adequate opportunity to object to the assumption and assignment of the Assigned Contracts and the Cure Costs.

F.      The notice described in the foregoing paragraphs is good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures, the Auction, the Sale (and the Transactions contemplated in connection therewith), the assumption and assignment to the Buyer of the Assigned Contracts, the Cure Costs, the Sale Hearing, and all deadlines related thereto is or shall be required.

### Marketing and Sale Process

G.      The Sale of the Transferred Assets to the Buyer pursuant to the Bidding Procedures is duly authorized pursuant to sections 363(b)(1) and 363(f) of the Bankruptcy Code and Bankruptcy Rule 6004(f). As demonstrated by (i) evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors and their professionals, agents, and other representatives have marketed the Transferred Assets and conducted all aspects of the sale process, including the solicitation of bids for an Auction, in good faith and in compliance with the Bidding Procedures and the Bidding Procedures Order. The marketing process undertaken by the Debtors and their professionals, agents, and other representatives with respect to the Transferred Assets has been adequate and appropriate and reasonably calculated to maximize value for the benefit of all stakeholders. The Bidding Procedures and the Auction were duly noticed, were substantively and procedurally fair to all parties, including all Potential Bidders and including with respect to all provisions governing credit bidding, and were conducted in a diligent, non-collusive, fair, and good-faith manner.

H.      The auction contemplated in the Bidding Procedures Order was conducted in good faith, without collusion, and in accordance with the Bidding Procedures Order on May 24, 2023. At the conclusion of the Auction, the Debtors (in consultation with the Consultation Parties)

selected the Buyer as the Winning Bidder for the Transferred Assets in accordance with the Bidding Procedures Order.

I.      The Debtors' determinations that the offer reflected in the Purchase Agreement constitutes the highest or otherwise best offer for the Transferred Assets and that the Sale Transaction and the Purchase Agreement maximize value for the benefit of the Debtors' estates are valid and sound exercises of the Debtors' business judgment (exercised in consultation with Bank of Montreal).

J.      The Winning Bid (as defined in the Bidding Procedures Order and which is memorialized in the Purchase Agreement) is in accordance and compliance with the Bidding Procedures Order and constitutes the highest or otherwise best offer for the Transferred Assets.

K.      The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for consummation of the Sale and Transactions contemplated by the Purchase Agreement in accordance with the requirements of section 363(b) of the Bankruptcy Code.

L.      The Purchase Agreement provides fair and reasonable terms for the purchase and sale of the Transferred Assets, and reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Transferred Assets.

M.      The Buyer has complied in all respects with the Bidding Procedures Order and all other applicable orders of the Court in negotiating and entering into the Purchase Agreement.

N.      After completion of the Auction and the Debtors' selection of the Buyer as the Winning Bidder, the Debtors and the Buyer negotiated and finalized in good faith and at arm's length the Purchase Agreement and all related documents necessary to consummate the Sale Transaction.

O.      Approval of the Purchase Agreement pursuant to sections 105(a) and 363 of the Bankruptcy Code is necessary to maximize the value of the Debtors' assets.

P.      Neither the Purchase Agreement nor the Transactions contemplated thereunder constitute a *sub rosa* chapter 11 plan.  The Purchase Agreement does not specify the terms of, or any distributions under, any subsequent chapter 11 plan by the Debtors (other than provisions that are consistent with the sale of the Transferred Assets under the Purchase Agreement and the relief granted hereunder).

Q.      Approval of the Motion and the Purchase Agreement, and the prompt consummation of the Transactions contemplated thereby, will maximize the value of the Debtors' estates and are in the best interests of the Debtors, their chapter 11 estates, their creditors, and other parties in interest.

R.      The Debtors conducted a robust, sufficient marketing process, and (i) the Purchase Agreement and total consideration to be provided by the Buyer thereunder constitutes the highest or otherwise best offer received by the Debtors for the Transferred Assets, (ii) the bidding procedures utilized were designed to yield the highest or otherwise best bids for the Debtors' assets; (iii) the Purchase Agreement and the completion of the Transactions will present the best opportunity to realize the value of the Transferred Assets and avoid further decline and devaluation of the Transferred Assets; (iv) there is risk of deterioration of the value of the Transferred Assets if the Sale is not consummated promptly; and (v) the Purchase Agreement and the consummation of the Transactions will provide greater value to the Debtors' estates than would be provided by any other presently available alternative.

S.      The total consideration to be provided by the Buyer under the Purchase Agreement constitutes (i) fair value, (ii) fair, full, and adequate consideration, (iii) reasonably equivalent

value, and (iv) reasonable market value for the Transferred Assets for purposes of the Bankruptcy

Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and any

other applicable laws of the United States, any state, territory, or possession thereof or the District

of Columbia.

T.      The terms of the Purchase Agreement and the Transactions contemplated therein

are fair and reasonable under the circumstances of the Debtors' businesses and these Chapter 11

Cases.

### Corporate and Organizational Authority

U.      The Transferred Assets constitute property of the Debtors' estates and title thereto

is vested in the Debtors' estates within the meaning of section 541 of the Bankruptcy Code.  The

Debtors (i) have full corporate and other organizational power and authority to execute the

Purchase Agreement and all other documents contemplated thereby, and the Sale to the Buyer has

been duly and validly authorized by all necessary corporate and other organizational action,

(ii) have all of the corporate and other organizational power and authority necessary to

consummate the Sale and the Transactions contemplated by the Purchase Agreement, (iii) have

taken all corporate and other organizational action necessary to authorize and approve the Purchase

Agreement and the consummation by the Debtors of the Sale and the Transactions contemplated

thereby, and (iv) require no consents or approvals, other than those expressly provided for in the

Purchase Agreement, to consummate the Transactions.

### Highest and Best Offer; Business Judgment

V.      The Debtors have demonstrated a sufficient basis to enter into the Purchase

Agreement, sell the Transferred Assets on the terms outlined therein, and assume and assign the

Assigned Contracts to the Buyer under sections 363 and 365 of the Bankruptcy Code.  All such

actions are appropriate exercises of the Debtors' business judgment and in the best interests of the

Debtors, their creditors, their estates and other parties in interest.  Approval of the Sale pursuant to the Purchase Agreement at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest.

W.     The offer of the Buyer, upon the terms and conditions set forth in the Purchase Agreement, including the total consideration to be realized by the Debtors thereunder, (i) is the highest and best offer received by the Debtors after extensive marketing, including through the Bidding Procedures, (ii) is in the best interests of the Debtors, their creditors, their estates and other parties in interest and (iii) constitutes full and adequate consideration, is fair and reasonable and constitutes reasonably equivalent value, fair consideration, and fair value for the Transferred Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.  Taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Transferred Assets for greater economic value to the Debtors or their estates.

X.     There has been no showing that any of the Debtors or Buyer (i) has entered into the Purchase Agreement or proposes to consummate the Transactions for the purposes of hindering, delaying, or defrauding the Debtors' present or future creditors or (ii) is entering into the Purchase Agreement or proposing to consummate the Transactions fraudulently, for the purpose of statutory or common law fraudulent conveyance and fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

Y.    The sale of the Transferred Assets outside a chapter 11 plan pursuant to the Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan of the Debtors.

### Opportunity to Object

Z.    A reasonable opportunity to object or be heard with respect to the Motion, the Bidding Procedures, the Sale (and the Transactions contemplated in connection therewith), the assumption and assignment to the Buyer of the Assigned Contracts, the Cure Costs, the Sale Hearing, and all deadlines related thereto has been afforded to all interested persons and entities.

### Good Faith Purchaser; Arm's Length Sale

AA.    The Purchase Agreement was negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's length bargaining positions. Neither the Debtors, the Buyer, nor any parent or affiliate of the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or the Sale to be avoided under section 363(n) of the Bankruptcy Code.

BB.    The Buyer is a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

CC.    Neither Buyer nor any of its affiliates, members, officers, directors, shareholders, or any of their respective successors or assigns is an "insider" or "affiliate" of any of the Debtors, as those terms are defined in sections 101(31) and 101(2) of the Bankruptcy Code, and the Buyer's professionals, agents, and other representatives have complied in all respects with the Bidding Procedures Order and all other applicable orders of this Court in negotiating and entering into the Purchase Agreement.  The Purchase Agreement complies with the Bidding Procedures Order and all other applicable orders of this Court.

## Free and Clear Transfer Required by Buyer

DD.    The Buyer would not have entered into the Purchase Agreement and would not consummate the Sale, if each of the Sale and the assumption and assignment of the Assigned Contracts to the Buyer were not free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever (with the exceptions of: (i) the Assumed Liabilities; (ii) any Permitted Encumbrances; or (iii) as more fully set forth in Paragraphs 9–11 of this Order), or if the Buyer would, or in the future could, be liable for any of the Excluded Liabilities except to the extent expressly provided in this Order.  For the avoidance of doubt, subject to Paragraphs 9–11 of this Order, neither the Buyer nor any of its affiliates shall have any responsibility whatsoever with respect to the Excluded Liabilities, which shall remain the responsibility of the Debtors before, on, and after the Closing.

EE.    As of the Closing, pursuant and subject to the terms of the Purchase Agreement and this Order, the transfer of the Transferred Assets and of the Assumed Liabilities and the Sale will effect a legal, valid, enforceable, and effective transfer of the Transferred Assets and will vest the Buyer with all of the Debtors' rights, title, and interests in the Transferred Assets free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever (with the exceptions of the Assumed Liabilities and any Permitted Encumbrances).

## Satisfaction of Section 363(f)

FF.    The Debtors may sell the Transferred Assets free and clear of any and all Liens, Claims, and Interests of any kind or nature whatsoever (with the exception of any Permitted Encumbrances), including any rights or claims based on any putative successor or transferee liability, as set forth herein, because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  All parties in interest, including, without limitation, any holders of Liens, Claims, and/or Interests, and any non-Debtor

counterparties to the Assigned Contracts, that did not object, or who withdrew their objection, to the Sale, the Motion, the assumption and assignment of the applicable Assigned Contract, or the associated Cure Cost are deemed to have consented to the relief granted herein pursuant to section 363(f)(2) of the Bankruptcy Code.

### Assigned Contracts

GG.    The Debtors have demonstrated (i) that it is an exercise of their sound business judgment to assume and assign the Assigned Contracts to the Buyer in each case in connection with the consummation of the Sale and (ii) that the assumption and assignment of the Assigned Contracts to the Buyer is in the best interests of the Debtors, their estates, and creditors, and other parties in interest.  The Assigned Contracts being assigned to the Buyer are an integral part of the Transferred Assets being purchased by the Buyer and, accordingly, such assumption, assignment, and cure of any defaults under the Assigned Contracts are reasonable and enhance the value of the Debtors' estates.  Any non-Debtor counterparty to an Assigned Contract that has not actually filed with the Court an objection to such assumption and assignment in accordance with the terms of the Motion is deemed to have consented to such assumption and assignment.

### Cure Costs and Adequate Assurance

HH.    The Debtors and the Buyer, as applicable, have, including by way of entering into the Purchase Agreement, and agreeing to the provisions therein relating to the Assigned Contracts, (i) cured, or provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assigned Contracts within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assigned Contracts within the meaning of section 365(b)(1)(B) of the Bankruptcy Code and the Buyer has, based upon the record of these proceedings, including the evidence

adduced at the Sale Hearing, provided adequate assurance of its future performance of and under the Assigned Contracts pursuant to sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code. The Buyer's agreement under the Purchase Agreement to perform the obligations under the Assigned Contracts after the Closing shall constitute adequate assurance of future performance under the Assigned Contracts being assigned to the Buyer within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. The Cure Costs are hereby found to be the sole amounts necessary to cure any and all defaults under the Assigned Contracts under section 365(b) of the Bankruptcy Code.

### Time Is of the Essence; Waiver of Stay

II.     Time is of the essence in consummating the Sale. In order to maximize the value of the Transferred Assets, it is essential that the sale and assignment of the Transferred Assets occur within the time constraints set forth in the Purchase Agreement. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

### Motion is Granted

1.     The relief requested by the Motion is granted as set forth herein.

### Objections Overruled

2.     All objections to the entry of this Order or to the relief granted herein, whether filed, stated on the record before this Court or otherwise, which have not been withdrawn, waived, or settled, and all reservations of rights included therein, are denied and overruled on the merits.

3.     Notice of the Motion, the Bidding Procedures, the Sale (and the Transactions contemplated in connection therewith), the assumption and assignment to the Buyer of the Assigned Contracts, the Cure Costs, the Sale Hearing, and all deadlines related thereto was fair

and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

## Approval of the Purchase Agreement

4.      The Purchase Agreement, as amended to reflect the increased Purchase Price as set forth on the record of the Auction, including all of the terms and conditions thereof, is hereby approved.  Pursuant to sections 105,  363, and 365 of the Bankruptcy Code, the Debtors are authorized and directed to take any and all actions necessary to fulfill their obligations under, and comply with the terms of, the Purchase Agreement and to consummate the Sale pursuant to and in accordance with the terms and conditions of the Purchase Agreement and this Order, without further leave of the Court.  The Debtors are further authorized and directed to pay, without further order of this Court, whether before, at, or after the Closing, any expenses or costs, if any, that are required to be paid to consummate the Transactions contemplated by the Purchase Agreement, as set forth in the Purchase Agreement and this Order, or otherwise perform their obligations under the Purchase Agreement and this Order.

5.      The Debtors are authorized, in accordance with the Purchase Agreement, to execute and deliver, and empowered to perform under, consummate, and implement, the Purchase Agreement, together with all additional instruments, documents, and other agreements that may be reasonably necessary or desirable to implement the Purchase Agreement, and to take all further actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to possession, the Transferred Assets, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement.

6.      Buyer and the Debtors have no obligation to proceed with the Closing unless and until all conditions precedent to their respective obligations to do so, as set forth in the Purchase

Agreement, have been met, satisfied, or waived in accordance with the terms of the Purchase Agreement.

### Binding Effect of Order

7.      This Order and the Purchase Agreement shall be binding upon all creditors of, and equity holders in, the Debtors and any and all other parties in interest, including, without limitation, any and all holders of Liens, Claims, and Interests (including holders of any rights or claims based on any putative successor or transferee liability) of any kind or nature whatsoever, all non-Debtor parties to the Assigned Contracts, the Buyer, the Debtors and their affiliates and subsidiaries, and any trustee or successor trustee appointed in the Debtors' Chapter 11 Cases or upon a conversion to cases under chapter 7 under the Bankruptcy Code.

### Amendments to the Purchase Agreement

8.      The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, supplemented, or restated by the parties thereto in a writing signed by such parties and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, supplement, or restatement does not have a material adverse effect on the Debtors' estates or any other person or entity, including Bank of Montreal.  The Purchase Agreement and this Order and the Debtors' and Buyer's obligations therein and herein shall not be altered, amended, rejected, discharged, or otherwise affected by any chapter 11 plan proposed or confirmed in these bankruptcy cases or any other relief sought from or granted by the Court without the prior written consent of the Buyer.

### Transfer of the Transferred Assets Free and Clear

9.      Subject to Paragraphs 9–11 hereof, the Buyer shall assume and be liable for only those liabilities expressly assumed pursuant to the Purchase Agreement.  Except as expressly permitted or otherwise specifically provided for in the Purchase Agreement or this Order, pursuant

to sections 105(a), 363(b), 363(f), and 365(b) of the Bankruptcy Code, upon the Closing, the Transferred Assets shall be transferred to the Buyer free and clear of any and all Liens, Claims, and Interests of any kind or nature whatsoever, with the exceptions of the Assumed Liabilities and any Permitted Encumbrances, with such Liens, Claims and Interests to attach to the proceeds of such transfer to the same extent and with the same priority as such Liens, Claims and Interests had in the Transferred Assets.  For purposes of this Order, "Liens," "Claims," and "Interests" shall mean, respectively:

    a.    any and all Encumbrances, charges, liens (statutory or otherwise), claims, mortgages, leases, subleases, hypothecations, deeds of trust, pledges, security interests, options, hypothecations, rights of use or possession, rights of first offer or first refusal (or any other type of preferential arrangement), rights of consent, rights of offset and setoff (but only to the extent not actually taken pre-petition), successor liability, easements, servitudes, restrictive covenants, interests or rights under any operating agreement, encroachments, encumbrances, restrictions on transferability of any type, any dedication under any gathering, transportation, treating, purchasing or similar agreement that is not assumed by or assigned to the Buyer, any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Buyer's interest in the Transferred Assets, any similar rights, and third-party interests or any other restrictions or limitations of any kind with respect to the Transferred Assets (collectively, "Liens");

    b.    any and all claims as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, including, without limitation, (i) any and all claims or causes of action based on or arising under any labor, employment or pension laws, labor or employment agreements, including any employee claims related to worker's compensation, occupational disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA (as defined below), (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code and of any similar state law (collectively, "COBRA"), (i) state

discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (l) the WARN Act (29 U.S.C. §§2101 et seq.), (ii) any rights under any pension or multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974 (as amended, "ERISA"), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability, (iii) any and all claims or causes of action based upon or relating to any putative successor or transferee liability, (iv) any rights related to intercompany loans and receivables between the Debtors and any non-Debtor subsidiary or affiliate, (v) any Excluded Liabilities, (vi) any and all claims or causes of action based upon or relating to any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not an Assigned Contract that will be assumed and assigned pursuant to this Order and the Purchase Agreement, (vii) any and all claims or causes of action based upon or relating to any bulk sales or similar law, (viii) any and all claims or causes of action based upon or relating to any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Transferred Assets prior to the Closing, including, without limitation, any ad valorem taxes assessed by any applicable taxing authority (notwithstanding the foregoing, the Sale is not tax exempt under Section 1146(a) of the Bankruptcy Code, and nothing herein releases, waives, or enjoins enforcement of the Buyer's obligation to pay any transfer taxes that may be due and owing as a result of the Sale), and (ix) any and all other claims, causes of action, proceedings, warranties, guaranties, rights of recovery, setoff (but only to the extent not actually taken pre-petition), rights, remedies, obligations, liabilities, counterclaims, cross-claims, third party claims, demands, restrictions, responsibilities, or contribution, reimbursement, subrogation, or indemnification claims or liabilities based on or relating to any act or omission of any kind or nature whatsoever asserted against any of the Debtors or any of their respective affiliates, subsidiaries, directors, officers, agents, successors or assigns in connection with or relating to the Debtors, their operations, their business, their liabilities, the Debtors' marketing and bidding process with respect to the Transferred Assets, the Assigned Contracts, or the Transactions contemplated by the Purchase Agreement (collectively, "Claims"); and

c.      any and all equity or other interests of any kind or nature whatsoever in or with respect to (x) any of the Debtors or their respective affiliates, subsidiaries, successors or assigns, (y) the Transferred Assets, or (z) the Assigned Contracts (collectively, "Interests");

whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or

unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, and whether occurring or arising before, on or after the Petition Date, or occurring or arising prior to the Closing.  On the Closing, the Buyer shall take title to and possession of the Transferred Assets, subject only to the Permitted Encumbrances and Assumed Liabilities, and Paragraphs 9–11 of this Order.

## **Vesting of Transferred Assets in the Buyer**

10.    The transfer of the Transferred Assets to the Buyer pursuant to the Purchase Agreement shall constitute a legal, valid, effective and final transfer of the Transferred Assets on the Closing, and shall vest the Buyer with all of the Debtors' rights, title and interests in the Transferred Assets free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever (with the exceptions of the Assumed Liabilities, any Permitted Encumbrances, and subject to Paragraphs 9–11 of this Order), with such Liens, Claims and Interests to attach to the proceeds of such transfer to the same extent and with the same priority as such Liens, Claims and Interests had in the Transferred Assets.

11.    In connection with the Closing and subject in all respects to any financing documents or organizational agreements, the Buyer is hereby authorized in connection with the consummation of the Sale to allocate the Transferred Assets, including the Assigned Contracts, to and among its direct and indirect parent and subsidiary corporations (collectively, "Designees"), in a manner as it in its sole discretion deems appropriate, and to assign, lease, sublease, license, sublicense, transfer, or otherwise dispose of any of the Transferred Assets, including the Assigned Contracts, to and among its Designees with all of the rights and protections accorded to the Buyer

under this Order and the Purchase Agreement with respect thereto, and the Debtors shall cooperate with and take all actions reasonably requested by the Buyer to effectuate any of the foregoing.

### Assumption and Assignment of Assigned Contracts

12.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption and assignment to the Buyer of the Assigned Contracts is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

13.     The Debtors are hereby authorized, in accordance with the Purchase Agreement, and in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (i) assume and assign to the Buyer the Assigned Contracts, effective upon and subject to the occurrence of the Closing, free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever (with the exceptions of the Assumed Liabilities and Permitted Encumbrances), which Assigned Contracts, by operation of this Order, shall be deemed assumed and assigned to the Buyer effective as of the Closing, and (ii) execute and deliver to the Buyer such documents or other instruments as the Buyer may deem necessary to assign and transfer the Assigned Contracts to the Buyer.

14.     Subject to Paragraph 15 hereof:

    a.     The Debtors are authorized to and shall assume all of the Assigned Contracts in accordance with section 365 of the Bankruptcy Code.

    b.     The Debtors are authorized to and shall assign each Assigned Contract to the Buyer in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract to the Buyer on the consent of the counterparty thereto or allow the non-Debtor party to such Assigned Contract to terminate, recapture, impose any penalty, condition, renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, shall constitute unenforceable anti-assignment provisions which are expressly preempted under section 365 of the Bankruptcy Code.

    c.        All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption and assignment of the Assigned Contracts by the Debtors to the Buyer have been satisfied.

    d.        To the extent provided in section 365(f)(1) of the Bankruptcy Code, upon the Closing, the Assigned Contracts shall be transferred and assigned to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2), 365(e)(1) and 365(f) of the Bankruptcy Code) that prohibits, restricts, limits, or conditions such assignment or transfer.

    e.        After the Debtors' transfer and assignment of the Assigned Contracts to the Buyer, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title, and interest of each Assigned Contract free and clear of Liens, Claims, and Interests with the exceptions of the Assumed Liabilities and Permitted Encumbrances, with such Liens, Claims and Interests to attach to the proceeds of such transfer and assignment to the same extent and with the same priority as such Liens, Claims and Interests had in the Assigned Contracts.

    f.        Any portion of any Assigned Contract which purports to permit a landlord thereunder to cancel the remaining term of such Assigned Contract if the lessee discontinues its use or operation of the leased premises is void and of no force and effect, and shall not be enforceable against the Buyer, or its assignees and sublessees; and the landlords under any such Assigned Contract shall not have the right to cancel or otherwise modify the Assigned Contract or increase the rent, assert any claim, or impose any penalty by reason of such discontinuation, the Debtors having suspended or ceased operations in, on, or about the leased premises prior to the transfer and assignment of such Assigned Contract to the Buyer, the assignment of such Assigned Contract to the Buyer, or the interruption of business activities at any of the leased premises.

    g.        The failure of the Debtors to enforce, at any time prior to the Closing Date, one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Buyer's rights to enforce every term and condition of the Assigned Contracts.

    h.        There shall be no rent accelerations, assignment fees, increases, or any other fees charged to the Buyer as a result of the assumption, assignment, and sale of the Assigned Contracts.

15.    All defaults and all other obligations of the Debtors under the Assigned Contracts occurring, arising or accruing prior to the assignment thereof to the Buyer at Closing (without

giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) are deemed to have been cured or satisfied by the payment of the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Assigned Contract in the amounts set forth in the Notice of Assumption and Assignment or any supplemental Notice of Assumption and Assignment (or any other cure cost reached by agreement after an objection to the proposed cure cost by a counterparty to an Assigned Contract), which was served in compliance with the Bidding Procedures Order (the "Cure Costs"), and which Cure Costs were satisfied, or shall be satisfied as soon as practicable, by the Buyer, as the case may be, as provided in the Purchase Agreement.  For all Assigned Contracts for which a Notice of Assumption and Assignment was served, the Buyer is authorized and directed to pay the Cure Costs required to be paid by such parties in accordance with the Purchase Agreement upon the Closing.  For any Assigned Contract that is designated by Buyer to be an Assigned Contract after the date of this Order in accordance with the Purchase Agreement, the Debtors shall file a Notice of Assumption and Assignment on the counterparties thereto that identifies the Cure Costs, and, to the extent no objection is received to such notice within seven (7) days of the date of mailing, such Assigned Contract shall be deemed assumed and assigned to Buyer as an Assigned Contract with the Cure Costs set forth in such notice and subject to all relief set forth herein that applies to Assigned Contracts effective as of the Closing.  To the extent a timely objection to such notice is received and a is not resolved between the Debtors and such counterparty in accordance with the procedures governing the assumption and assignment of executory contracts and leases approved in the Bidding Procedures Order, such objection will be adjudicated by this Court.

16.    Pursuant to section 365(k) of the Bankruptcy Code, the Debtors and their estates shall be relieved from any liability for any breach for any Assigned Contract that occurs after the effectiveness of such assumption and assignment to the Buyer.

17.    Notwithstanding any provision in this Order, any and all agreements and obligations of Buyer shall be and are subject to Closing in accordance with the Purchase Agreement.

### No Successorship or Transferee Liability

18.    Neither the Buyer nor any of its affiliates is or shall be deemed, as a result of the consummation of the Transactions contemplated herein, to: (a) be legal successors to the Debtors or their estates by reason of any theory of law or equity, (b) have, *de facto* or otherwise, merged with or into the Debtors, or (c) be an alter ego or a mere continuation or substantial continuation or successor of the Debtors in any respect.  Neither the Buyer nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates, except as otherwise expressly provided in the Purchase Agreement or this Order.

### Modification of the Automatic Stay

19.    The automatic stay provisions of section 362 of the Bankruptcy Code are lifted and modified to the extent necessary to implement the terms and conditions of the Purchase Agreement and the provisions of this Order.

### Release of Liens by Creditors; Collection of Transferred Assets

20.    Except as expressly provided to the contrary in this Order or in the Purchase Agreement, the holder of any valid Lien, Claim, or Interest in the Transferred Assets (other than a Permitted Encumbrance) shall, as of the Closing, without regard to whether such holder has executed or filed any applicable release, and such Liens, Claims and Interests shall be deemed to attach to the proceeds of such transfer to the same extent and with the same priority as such Liens,

Claims and Interests had in the Transferred Assets.  Notwithstanding the foregoing and except as expressly provided in this Order or the Purchase Agreement, any such holder of such a Lien, Claim, or Interest is authorized and directed to execute and deliver any waivers, releases, or other related documentation reasonably requested by the Debtors to evidence the release of their Liens, Claims, or Interests in the Transferred Assets.  Any person or entity that has filed any financing statements, mortgages, mechanic's liens, lis pendens, or any other documents or agreements evidencing a Lien on any of the Transferred Assets conveyed pursuant to the Purchase Agreement and this Order is directed to deliver to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all Liens which the person or entity has with respect to the Transferred Assets or otherwise.

21.     In the event that such termination statements, instruments of satisfaction, or releases of all Liens (excluding Permitted Encumbrances) are not filed in accordance with the foregoing paragraph, the Debtors and the Buyer are hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens in the Transferred Assets of any kind or nature whatsoever (except any Permitted Encumbrances) except as expressly provided in this Order or the Purchase Agreement.

22.     As of the Closing, the Buyer and its successors and assigns shall be designated and appointed as the Debtors' true and lawful attorney with full power of substitution in the Debtors' name and stead on behalf of and for the benefit of the Buyer, and its successors and assigns, for the following sole and limited purposes: to have the power to demand and receive any and all of the Transferred Assets and to give receipts and releases for and in respect of the Transferred Assets, or any part thereof, and from time to time to institute and prosecute against third parties for the

benefit of the Buyer, its successors and assigns, proceedings at law, in equity or otherwise, which the Buyer, and its successors and assigns, may deem proper for the collection or reduction to possession of any of the Transferred Assets.

### Payment of Net Proceeds

23.     Within three (3) business days of the Closing, the Debtors will deliver the net proceeds from Sale, up to the amount of the DIP Obligations and the Prepetition Obligations, to the DIP Lender and the Prepetition Lender, respectively, for application to the DIP Obligations in accordance with the DIP Facility and the Prepetition Obligations in accordance with the Prepetition Facility (the "DIP and Prepetition Payoff"); provided that, notwithstanding the DIP and Prepetition Payoff, (a) the rights of the Committee and any other party in interest pursuant to section 4.1(b) of the *Final Order (I) Authorizing Debtors and Debtors in Possession to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Liens and Super-Priority Claims, and (D) Grant Adequate Protection; (II) Modifying the Automatic Stay; and (C) Granting Related Relief* [Docket No. 136] (the "DIP Order") shall be expressly reserved, (b) the rights of the DIP Lender and the Prepetition Lender are expressly reserved in connection with the same, including, without limitation, any rights (including but not limited to any rights of indemnification) arising under the DIP Order and DIP Credit Agreement (as defined in the DIP Order) in the event of a Challenge (as defined in the DIP Order) (the "Lender Rights") and (c) notwithstanding the DIP and Prepetition Payoff, the liens of the DIP Lender and the Prepetition Lender under the DIP Order and the Pre-Petition Loan Documents (as defined in the DIP Order) shall attach to the net proceeds from the Sale to secure the Lender Rights, and such liens shall be deemed perfected without any further notice, filing or action (subject, with respect to the rights of the Prepetition Lender under the Pre-Petition Loan Documents and the DIP Order, to the Challenge Period).

**Effect of Recordation of Order**

24.     This Order, once filed, registered, or otherwise recorded, (a) shall be effective as a conclusive determination that, upon the Closing, all Liens, Claims, and Interests of any kind or nature whatsoever (with the exceptions of the Assumed Liabilities and any Permitted Encumbrances and except as expressly provided in this Order) existing as to the Transferred Assets prior to the Closing have been unconditionally released, discharged, and terminated and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all persons and entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, local officials, notaries, protonotaries, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to, the Transferred Assets.  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transactions contemplated by the Purchase Agreement and this Order, including, without limitation, recordation of this Order.

**Prohibition of Actions Against the Buyer**

25.     Except for the Assumed Liabilities and any Permitted Encumbrances or as expressly permitted or otherwise specifically provided for in the Purchase Agreement or this Order, the Buyer and its affiliates shall have no liability or responsibility for any liability or other obligation of the Debtors or any of their affiliates arising under or related to the Transferred Assets or otherwise.  Without limiting the generality of the foregoing, and except as otherwise specifically provided in this Order or in the Purchase Agreement, the Buyer and its affiliates shall not be liable

for any claims against the Debtors or any of their predecessors or affiliates, and the Buyer and its affiliates shall have no successor or vicarious liabilities of any kind or character including, without limitation, any theory of antitrust, warranty, product liability, environmental, successor or transferee liability, labor law, ERISA, *de facto* merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, without limitation, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing or any claims under the WARN Act or any claims related to wages, benefits, severance, or vacation pay owed to employees or former employees of the Debtors.

26.     EFFECTIVE UPON THE CLOSING, WITH THE SOLE EXCEPTIONS OF ANY ENFORCEMENT OF RIGHTS RELATED TO THE ASSUMED LIABILITIES OR ANY PERMITTED ENCUMBRANCES, AND EXCEPT AS EXPRESSLY PROVIDED BY THIS ORDER, ALL PERSONS AND ENTITIES HAVING LIENS, CLAIMS, ENCUMBRANCES, CAUSES OF ACTION OR INTERESTS OF ANY KIND OR NATURE WHATSOEVER AGAINST OR IN THE DEBTORS OR THE TRANSFERRED ASSETS OR ASSIGNED CONTRACTS SHALL BE, AND HEREBY ARE, FOREVER BARRED AND ENJOINED FROM (A) TAKING ANY ACTION THAT WOULD ADVERSELY AFFECT OR INTERFERE WITH THE ABILITY OF THE DEBTORS TO TRANSFER THE TRANSFERRED ASSETS TO THE BUYER IN ACCORDANCE WITH THE TERMS OF THIS ORDER AND THE PURCHASE AGREEMENT OR BUYER'S RIGHTS, USE, AND ENJOYMENT OF THE TRANSFERRED ASSETS AND ASSIGNED CONTRACTS IN ACCORDANCE WITH THE TERMS OF AND AS AUTHORIZED BY THIS ORDER TO THE EXTENT SUCH ACTION

RELATED TO A LIEN, CLAIM, ENCUMBRANCE, INTEREST, OR CAUSE OF ACTION ARISING ON OR PRIOR TO THE CLOSING DATE AND (B) ASSERTING, PROSECUTING, OR OTHERWISE PURSUING, WHETHER IN LAW OR IN EQUITY, IN ANY JUDICIAL, ADMINISTRATIVE, ARBITRAL, OR OTHER PROCEEDING, ANY LIENS, CLAIMS, ENCUMBRANCES, CAUSES OF ACTION, OR INTERESTS OF ANY KIND OR NATURE WHATSOEVER ARISING ON OR PRIOR TO THE CLOSING DATE AND RELATING TO (i) ANY LIEN, CLAIM, ENCUMBRANCE, CAUSE OF ACTION, OR INTEREST RELEASED PURSUANT TO THIS ORDER, (ii) THE PURCHASE AGREEMENT, (iii) THE SALE, (iv) THE TRANSACTIONS, (v) THE TRANSFERRED ASSETS, OR (vi) THE ASSIGNED CONTRACTS AGAINST THE BUYER AND ITS AFFILIATES, SUCCESSORS, DESIGNEES, ASSIGNS, OR PROPERTY, OR THE TRANSFERRED ASSETS OR ASSIGNED CONTRACTS CONVEYED UNDER THE AUTHORIZATION OF THIS ORDER IN ACCORDANCE WITH THE PURCHASE AGREEMENT.

### No Interference

27.     Following the Closing, subject to paragraphs 9–11 of this Order, no holder of a Lien, Claim, and/or Interest (with the exception of any holders of Permitted Encumbrances) in or against the Debtors or the Transferred Assets, or any other entity or person, shall interfere with the Buyer's title to or use and enjoyment of the Transferred Assets based on or related to such Lien, Claim, and/or Interest or any actions that the Debtors may take in their bankruptcy cases or any successor cases.

### Retention of Jurisdiction

28.     This Court retains jurisdiction prior to, on, and after Closing to, among other things, interpret, enforce, and implement the terms and provisions of the this Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the

agreements executed in connection therewith in all respects, including, without limitation, retaining jurisdiction to:  (a) compel delivery of the Transferred Assets or performance of other obligations owed to the Buyer; (b) compel performance of obligations owed to the Debtors; (c) resolve any disputes arising under or related to the Purchase Agreement; (d) interpret, implement, and enforce the provisions of this Order; (e) determine whether any lien or Encumbrance constitutes a Permitted Encumbrance, (f) determine any claim, cause, cause of action, or controversy brought by the Buyer relating to the Purchase Agreement or the Transferred Assets or that constitute Transferred Assets, and (g) protect the Buyer and its affiliates against (i) any Liens, Claims, and Interests in or against the Debtors or the Transferred Assets of any kind or nature whatsoever and (ii) any creditors or other parties in interest regarding the turnover of the Transferred Assets that may be in their possession.

## No Stay of Order

29.    Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Buyer are free to close the Sale under the Purchase Agreement at any time pursuant to the terms thereof.

## Good Faith Purchaser

30.    The Sale contemplated by the Purchase Agreement is undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and Buyer has acted without collusion in undertaking and consummating the Sale and Transactions contemplated by the Purchase Agreement.  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Buyer (including the assumption and assignment by the Debtors of any of the Assigned Contracts), unless such authorization is duly stayed pending such appeal.  The Buyer is a buyer in good faith of the

Transferred Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

31.     There has been no showing that the Debtors or Buyer or its affiliates engaged in any action or inaction that would cause or permit the Transactions to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.

## Inconsistencies with Prior Orders, Pleadings or Agreements

32.     To the extent of any conflict between the Purchase Agreement and this Order, the terms of this Order shall govern.  To the extent this Order is inconsistent or conflicts with any prior order or pleading in these Chapter 11 Cases, the terms of this Order shall govern to the extent required to permit consummation of the Sale.

## Failure to Specify Provisions

33.     The failure to specifically reference any particular provisions of the Purchase Agreement or other related documents in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement and other related documents be authorized and approved in their entirety.

## Resolution of Informal Objection by the Environmental Protection Agency

34.     Nothing in this Order or the Asset Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a U.S. governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Order. Nothing in this Order or the Asset Purchase Agreement authorizes the transfer or assignment of any U.S. governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law in the United States.

Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

**Dated: May 30th, 2023**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**