## **EXHIBIT A**

Combined Plan and Disclosure Statement

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| STRUCTURLAM MASS TIMBER U.S., INC., *et al.*,[1] | Case No. 23-10497 (CTG) |
| Debtors. | (Jointly Administered) |

## FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF STRUCTURLAM MASS TIMBER U.S., INC., *ET AL.*

December 14, 2023
Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**
William E. Chipman, Jr. (No. 3818)
Robert A. Weber (No. 4013)
Mark L. Desgrosseilliers (No. 4083)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Email:    chipman@chipmanbrown.com
            weber@chipmanbrown.com
            desgross@chipmanbrown.com
            olivere@chipmanbrown.com

*Counsel to Debtors and Debtors in Possession*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or Canadian business number, as applicable, include: Structurlam Mass Timber U.S., Inc. (6287); Natural Outcomes, LLC (n/a); Structurlam Mass Timber Corporation (5050); and SLP Holdings Ltd. (3114). The location of the Debtors' headquarters is: 2176 Government Street, Penticton, British Columbia, Canada V2A 8B5.  The address of the registered agent for Structurlam Mass Timber U.S., Inc. is: 8 The Green, Suite A, Dover, Delaware 19901.

# <u>TABLE OF CONTENTS</u>

I.    Introduction ..................................................................................................................1

II.   Important Dates ...........................................................................................................1

III.  Definitions and Construction of Terms .......................................................................2

    A.    Definitions ........................................................................................................2

    B.    Interpretation; Application of Definitions and Rules of Construction..................13

IV.   Disclosures ................................................................................................................13

    A.    General Background .........................................................................................13

        1.    Overview of Business Operations ........................................................13

        2.    Debtors' Prepetition Capital Structure .................................................14

        3.    Events Precipitating the Chapter 11 Filing .............................................16

    B.    The Chapter 11 Cases ......................................................................................17

        1.    First Day Orders ...................................................................................17

        2.    Retention of Professionals ....................................................................17

        3.    Appointment of the Committee .............................................................17

        4.    The DIP Facility ...................................................................................17

        5.    Sale of the Debtors' Assets ...................................................................18

        6.    Claims Process and Bar Date ................................................................19

        7.    The Canadian Recognition Proceedings ................................................20

    C.    Summary of Assets ..........................................................................................20

    D.    Summary of Treatment of Claims and Interests Under the Plan ..........................21

    E.    Potential Claims and Causes of Action..............................................................22

    F.    Certain Federal Income Tax Consequences.........................................................22

        1.    Tax Consequences to the Debtors..........................................................23

        2.    Tax Consequences for Holders of Claims ...............................................23

G.     Certain Risk Factors to Be Considered ............................................................24

H.     Feasibility .......................................................................................................25

I.     Best Interests Test and Alternatives to the Combined Disclosure Statement and Plan .............................................................................................................25

J.     Releases by the Debtors ...................................................................................26

V.     Unclassified Claims .................................................................................................27

A.     Administrative Expense Claims.......................................................................27

B.     Professional Fee Claims...................................................................................27

C.     Priority Tax Claims .........................................................................................27

D.     Statutory Fees .................................................................................................28

VI.     Classification and Treatment of Claims and Interests ...............................................28

A.     Classification of Claims and Interests...............................................................28

B.     Treatment of Claims and Interests ...................................................................28

     1.     Class 1 – Other Secured Claims...............................................................28

     2.     Class 2 – Priority Claims .........................................................................29

     3.     Class 3A – SMTU General Unsecured Claims...........................................29

     4.     Class 3B – SLP General Unsecured Claims ...............................................30

     5.     Class 3C – SMTC General Unsecured Claims ...........................................30

     6.     Class 4 – Equity Interests.........................................................................31

C.     Impaired Claims and Equity Interests...............................................................31

D.     Cramdown and No Unfair Discrimination.........................................................31

VII.     Confirmation Procedures ..........................................................................................32

A.     Confirmation Procedures .................................................................................32

     1.     Combined Hearing .................................................................................32

     2.     Procedure for Objections ........................................................................32

     3.     Requirements for Confirmation ...............................................................32

4863-7105-0120, v. 4

B.     Solicitation and Voting Procedures ..................................................................32

    1.    Substantive Consolidation ................................................................32

    2.    Eligibility to Vote on the Combined Disclosure Statement and Plan ........33

    3.    Solicitation Package ..........................................................................33

    4.    Voting Procedures and Voting Deadline ...........................................33

    5.    Deemed Acceptance or Rejection .....................................................34

    6.    Acceptance by Impaired Classes ......................................................35

VIII.   Implementation and Execution of the Combined Disclosure Statement and Plan ...........35

A.     Effective Date ...............................................................................................35

B.     Dissolution of the Debtors ............................................................................35

C.     Records ........................................................................................................35

D.     Liquidating Trustee ......................................................................................36

    1.    Establishment of the Liquidating Trust............................................36

    2.    Transfer of Liquidating Trust Assets to Liquidating Trust .......................36

    3.    Purpose of Liquidating Trust ...........................................................36

    4.    Preservation of Rights......................................................................37

    5.    Continued Cooperation ....................................................................38

    6.    Liquidating Trustee ..........................................................................38

    7.    Trust Expenses .................................................................................42

    8.    Privileges.........................................................................................42

    9.    Termination of Liquidating Trust .....................................................43

    10.   Exculpation Relating to the Liquidating Trust...........................43

E.     Plan Transactions .........................................................................................43

    1.    Transfer of Assets ............................................................................43

F.     Effective Date Transactions...........................................................................44

| | | 1. | Transfer of Any Remaining Assets to Liquidating Trust | 44 |
| | G. | | Provisions Governing Distributions Under the Combined Disclosure Statement and Plan | 44 |
| | | 1. | Distribution Record Date | 44 |
| | | 2. | Method of Payment | 44 |
| | | 3. | Surrender of Instruments | 45 |
| | | 4. | Delivery of Distributions | 45 |
| | | 5. | Objection to and Resolution of Claims | 45 |
| | | 6. | Preservation of Rights to Settle Claims | 46 |
| | | 7. | Miscellaneous Distribution Provisions | 46 |
| IX. | | | Executory Contracts and Unexpired Leases | 47 |
| | A. | | Background | 47 |
| | B. | | Executory Contracts and Unexpired Leases | 47 |
| | C. | | Rejection Claims | 47 |
| X. | | | Conditions Precedent to Confirmation and the Effective Date | 48 |
| | A. | | Conditions Precedent to Confirmation | 48 |
| | B. | | Conditions Precedent to the Effective Date | 48 |
| | C. | | Waiver of Conditions | 49 |
| | D. | | Effect of Nonoccurrence of Conditions | 49 |
| XI. | | | Exculpation, Releases, and Injunctions | 49 |
| | A. | | Injunction | 49 |
| | B. | | Exculpation | 50 |
| | C. | | Estate Releases | 50 |
| | D. | | Releases by Holders of Claims and Interests of Debtors. | 51 |
| XII. | | | Retention of Jurisdiction | 52 |
| XIII. | | | Miscellaneous Provisions | 53 |

A.  Amendment or Modification of the Combined Disclosure Statement and Plan....53

B.  Exhibits/Schedules ...............................................................................54

C.  Plan Supplement ....................................................................................54

D.  Filing of Additional Documents ............................................................54

E.  Binding Effect of Plan ...........................................................................54

F.  Governing Law ......................................................................................54

G.  Time .......................................................................................................54

H.  Severability ...........................................................................................55

I.  Revocation .............................................................................................55

J.  Dissolution of the Committee ................................................................55

K.  Inconsistency..........................................................................................55

L.  No Admissions .......................................................................................55

M.  Reservation of Rights.............................................................................56

XIV.  Recommendation .............................................................................................56

**PLAN EXHIBITS**

<u>Exhibit A</u>:      Liquidation Analysis

**NOTICE**

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN EXCEPT AS EXPRESSLY INDICATED HEREIN. THIS COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED, OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED DISCLOSURE STATEMENT AND PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY.

## I.      INTRODUCTION[1]

The Debtors propose this Combined Disclosure Statement and Plan pursuant to Bankruptcy Code sections 1125 and 1129, and Local Rule 3017-2.  The Debtors are the "proponents" of the Combined Disclosure Statement and Plan within the meaning of Bankruptcy Code section 1129. The Committee supports Confirmation of the Combined Disclosure Statement and Plan and urges all creditors to vote to accept the Combined Disclosure Statement and Plan.

The Combined Disclosure Statement and Plan reflects substantial negotiations among the Debtors and the Committee.

**Copies of this Combined Disclosure Statement and Plan and all other documents related to these Chapter 11 Cases are available for review with charge on the bankruptcy case website at https://www.pacer.gov/, through Debtors' counsel by emailing olivere@chipmanbrown.com, or online for no charge at https://www.kccllc.net/structurlam.**

The Combined Disclosure Statement and Plan is a liquidating chapter 11 plan. The Combined Disclosure Statement and Plan provides that upon the Effective Date: (i) Liquidating Trust Assets will be transferred to the Liquidating Trust; and (ii) after completing all of their fiduciary obligations, the Debtors will be dissolved.  Thereafter, the Liquidating Trust Assets will be administered and distributed as soon as practicable pursuant to the terms of the Combined Disclosure Statement and Plan and the Liquidating Trust Agreement.

Each Holder of a Claim against the Debtors entitled to vote to accept or reject the Combined Disclosure Statement and Plan is encouraged to read the Combined Disclosure Statement and Plan in its entirety before voting.

Subject to the restrictions on modifications as set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and in this Combined Disclosure Statement and Plan, the Debtors expressly reserve the right to alter, amend, or modify the Combined Disclosure Statement and Plan one or more times before its substantial consummation.

## II.     IMPORTANT DATES

| | |
|---|---|
| Voting Procedures Hearing Objection Deadline | November 7, 2023, at 4:00 p.m. (ET) |
| Voting Procedures and Interim Disclosure Statement Hearing | November 14, 2023, at 3:30 p.m. (ET) |
| Voting Record Date | The date of entry of the Interim Approval and Procedures Order |

---

[1]    All capitalized terms used but not defined in the Introduction shall have the meanings ascribed to them in Article II of the Combined Disclosure Statement and Plan.

| Solicitation Commencement Date | Within five (5) business days after entry of the Interim Approval and Procedures Order |
|---|---|
| Deadline for Creditors to File Rule 3018 Motions | December 1, 2023, at 4:00 p.m. (ET) |
| Deadline for Debtors to Respond to Rule 3018 Motions | December 8, 2023, at 4:00 p.m. (ET) |
| Voting Deadline for the Combined Disclosure Statement and Plan | December 12, 2023, at 4:00 p.m. (ET) |
| Combined Disclosure Statement and Plan Objection Deadline | December 12, 2023, at 4:00 p.m. (ET) |
| Deadline to File Confirmation Brief and Other Evidence Supporting the Combined Disclosure Statement and Plan | December 14, 2023, at 4:00 p.m. (ET) |
| Deadline to File Voting Tabulation Affidavit | December 14, 2023, at 4:00 p.m. (ET) |
| Combined Hearing | December 19, 2023, at 11:00 a.m. (ET) |

## III.   DEFINITIONS AND CONSTRUCTION OF TERMS

## A.   Definitions

"**Acquired Assets**" means the Assets that the Debtors have already sold, conveyed, assigned, transferred, and delivered to Purchaser, and that Purchaser purchased from each Debtor, in each case, free and clear of all Liens in accordance with the terms of the Sale Order and APA. Any inconsistencies that arise under this definition shall be interpreted in favor of the definition of Acquired Assets in the APA, as modified by the Sale Order.

"**Administrative Expense Bar Date**" means the date that is 30 calendar days after the Effective Date.

"**Administrative Expense Claim**" means any right to payment constituting actual and necessary costs and expenses of preserving the Estates under Bankruptcy Code sections 503(b) and 507(a)(2) including, without limitation: (a) Professional Fee Claims, (b) any fees or charges assessed against the Estates under section 1930 of title 28 of the United States Code, and (c) all Claims arising under Bankruptcy Code section 503(b)(9).

"**Affiliate**" means an "affiliate" as defined in section 101(2) of the Bankruptcy Code.

"**Allowed**" means, with reference to any Claim, proof of which was timely and properly Filed or, if no Proof of Claim was Filed, that has been or hereafter is listed by the Debtors on its Schedules as liquidated in amount and not disputed or contingent and, in each case, as to which:

(a) no objection to allowance has been interposed within the applicable period fixed by the Combined Disclosure Statement and Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or the Bankruptcy Court; or (b) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order.

"**APA**" means the Asset Purchase Agreement, dated April 21, 2023, between the Debtors and Purchaser [Docket No. 204], as may have been subsequently amended or modified consistent with its terms.

"**Avoidance Actions**" means any and all Causes of Action and rights to recover or avoid transfers or to avoid any lien under chapter 5 of the Bankruptcy Code or applicable state law or otherwise belonging to the Debtors and which were not transferred to Purchaser in connection with the Sale.

"**Ballot**" means the voting form distributed to each Holder of an Impaired Claim entitled to vote on the Combined Disclosure Statement and Plan, on which the Holder is to indicate acceptance or rejection of the Combined Disclosure Statement and Plan in accordance with the voting instructions and make any other elections or representations required pursuant to the Combined Disclosure Statement and Plan.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases or, if such Court ceases to exercise jurisdiction over the Chapter 11 Cases, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases in lieu of the United States Bankruptcy Court for the District of Delaware.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

"**Bar Date**" means July 10, 2023 at 5:00 p.m. (prevailing Eastern Time), as stated in the *Notice of Deadline for the Filing of Proofs of Claim, Including for Claims Asserted Under Section 503(b)(9) of the Bankruptcy Code* [Docket No. 184].

"**Bar Date Order**" means the *Order Pursuant to Bankruptcy Rule 3003(c)(3) and Local Rule 2002-1(e) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim (Including for Administrative Expense Claims Arising Under Section 503(b)(9) of the Bankruptcy Code) and Approving the Form and Manner of Notice Thereof* [Docket No. 174].

"**Bidding Procedures Order**" means the *Order (I) Approving Bidding Procedures, (II) Approving Stalking Horse Protections and Debtors' Entry into Stalking Horse Purchase Agreement, (III) Scheduling the Bid Deadlines and the Auction, (IV) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (V) Approving the Form and Manner of the Notice Thereof, (VI) Approving Contract Assumption and Assignment Procedures, and (VII) Granting Related Relief* [Docket No. 87].

"**Board**" means the Debtors' current and former Board of Directors.

"**Business Day**" means any day other than a Saturday, Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

"**Canadian Court**" means the Supreme Court of British Columbia.

"**Canadian Debtors**" means SMTC and SLP.

"**Canadian Recognition Order re Confirmation**" means the order of the Canadian Court recognizing and enforcing in Canada the Confirmation Order in all respects.

"**Canadian Recognition Order re Procedures**" means the order of the Canadian Court recognizing and enforcing in Canada the Interim Approval and Procedures Order.

"**Canadian Recognition Proceedings**" means No. 233209, Vancouver Registry in the Matter of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C - 36 as Amended and in the Matter of SLP Holdings Ltd, Structurlam Mass Timber Corporation, Structurlam Mass Timber US, Inc., Natural Outcomes, LLC; Application of SLP Holdings Ltd. Under Section 46 of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as Amended pending before the Canadian Court.

"**Cash**" means legal tender of the United States of America or Canada or equivalents thereof, including, without limitation, payment in such tender by check, wire transfer, or any other customary payment method.

"**Causes of Action**" means any Claim, cause of action, controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, or franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

"**CCAA**" means the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C - 36 as Amended.

"**Chapter 11 Cases**" means the chapter 11 cases initiated by the Debtors' filing on the Petition Date of voluntary petitions for relief in the Bankruptcy Court under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are jointly administered by the Bankruptcy Court under Case No. 23-10497 (CTG).

"**Claim**" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

"**Claims Register**" means the official register of Claims maintained on https://www.pacer.gov/

"**Class**" means any group of substantially similar Claims or Equity Interests classified by the Combined Disclosure Statement and Plan pursuant to Bankruptcy Code sections 1122 and 1123(a)(1).

"**Clerk**" means the Clerk of the Bankruptcy Court.

"**Close of Sale**" means the date upon which the Debtors and Purchaser closed the transaction that transferred the Acquired Assets to Purchaser pursuant to the Sale Order.

"**Closing Date**" means the date on which the Close of Sale occurred.

"**COD**" means cancellation of indebtedness.

"**Combined Disclosure Statement and Plan**" means this combined disclosure statement and chapter 11 plan of liquidation including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as the same may be altered, amended, or modified from time to time.

"**Committee Solicitation Letter**" means the Committee's letter to holders of General Unsecured Claims in support of the Combined Disclosure Statement and Plan for inclusion in the Solicitation Package.

"**Company**" means the Debtors, collectively.

"**Confirmation Date**" means the date on which the Confirmation Order is entered on the Bankruptcy Court's Docket.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider (a) approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to Bankruptcy Code section 1125, and (b) Confirmation of the Combined Disclosure Statement and Plan pursuant to Bankruptcy Code section 1129, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Combined Disclosure Statement and Plan pursuant to Bankruptcy Code section 1129.

"**Confirmation**" means confirmation of the Combined Disclosure Statement and Plan pursuant to Bankruptcy Code section 1129.

"**Creditor**" means any Person that is the Holder of a Claim against the Debtors.

"**Critical Vendors**" means certain vendors, suppliers, service providers and other similar parties that were essential to maintaining the going concern value of the Debtors' business.

"**Debtors**" means the Debtors in the Chapter 11 Cases: Structurlam Mass Timber U.S., Inc.; Natural Outcomes, LLC; Structurlam Mass Timber Corporation; and SLP Holdings Ltd.

"**DIP Credit Agreement**" means the Senior Secured SuperPriority DIP Financing Credit Agreement between the Debtors and the DIP Lender.

"**DIP Facility**" means the financing facility provided to the Debtors pursuant to the terms of the Final DIP Order.

"**DIP Facility Claims**" means all Claims asserted against the Debtors by the DIP Lender, including, without limitation, principal, accrued and unpaid interest, any reimbursement obligations (contingent or otherwise), all fees, expenses, and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, and related expenses and disbursements incurred by, or on behalf of, the DIP Lender), indemnification obligations, all other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect thereof.

"**DIP Lender**" means Bank of Montreal in its capacity as postpetition financier in the Chapter 11 Cases.

"**Disallowed**" means, when used in reference to a Claim, all or that portion, as applicable, of any Claim that has been disallowed under the Combined Disclosure Statement and Plan, the Bankruptcy Code, applicable law, or by Final Order.

"**Disputed**" means any Claim or Equity Interest, or any portion thereof, that is (a) listed on the Schedules as unliquidated, disputed, and/or contingent for which no Proof of Claim in a liquidated and non-contingent amount has been Filed, or (b) the subject of an objection or request for estimation Filed by the Debtors or the Liquidating Trustee or any other party in interest in accordance with applicable law and which objection has not been withdrawn, resolved, or overruled by a Final Order.

"**Distribution**" means any distribution to the Holders of Allowed Claims.

"**Distribution Record Date**" means the Date the Bankruptcy Court enters the Interim Approval and Procedures Order.

"**Docket**" means the docket in the Chapter 11 Cases maintained by the Clerk.

"**Effective Date**" means the date on which the conditions specified in Article X.B of the Combined Disclosure Statement and Plan have been met or satisfied.

"**Effective Date Distributions**" means all the Distributions required to be made on the Effective Date of the Combined Disclosure Statement and Plan to the Holders of Claims that are Allowed as of the Effective Date.

"**Entity**" means an "entity" as defined in Bankruptcy Code section 101(15).

"**Equity Interests**" means all equity interests in the Debtors, including, but not limited to, all issued, unissued, authorized, or outstanding shares or membership interests together with any warrants, options, or contract rights to purchase or acquire such interests at any time.

"**Estate Causes of Action**" means any and all Causes of Action of the Debtors, including, but not limited to, the (1) the Avoidance Actions; (2) commercial tort claims as defined in Article 9 of the UCC, other than Claims or Causes of Action included in "Acquired Assets" in the APA; (3) Causes of Action against any Person whether sounding in tort, contract, equity, statute or any other legal or equitable theory of recovery; (4) the non-exclusive right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Bankruptcy Code section 505; and (5) all other rights, Claims or Causes of Action not transferred to Purchaser pursuant to the APA. Estate Causes of Action shall include, for the avoidance of doubt, direct or derivative Claims or Causes of Action against any Person who transacted business with the Debtors, to the detriment of the Debtors.

"**Estates**" means the estates of the Debtors created upon the commencement of the Chapter 11 Cases pursuant to Bankruptcy Code section 541.

"**Excluded Assets**" means assets of the Debtors not included in the Acquired Assets, which the Debtors retained and did not transfer to Purchaser. Any inconsistencies which arise under this definition shall be interpreted in favor of the definition of Excluded Assets in the APA, as modified by the Sale Order.

"**Exculpated Parties**" means, individually and collectively, in each case solely in their capacities as such, each and all of: (a) the Debtors and their Professionals; (b) the Committee, the members of the Committee in their capacity as members of the Committee, and the Committee's Professionals; and (c) the Debtors' current directors and officers, each in their capacity as such.

"**Executory Contract**" means any executory contract or unexpired lease as of the Petition Date between the Debtors and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to this Combined Disclosure Statement and Plan.

"**File, Filed, or Filing**" means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases.

"**Final Decree**" means the order entered pursuant to Bankruptcy Code section 350, Bankruptcy Rule 3022, and Local Rule 5009-1 closing the Chapter 11 Cases.

"**Final DIP Order**" means the *Final Order (I) Authorizing Debtors and Debtors in Possession to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Liens and Super-Priority Claims, and (D) Grant Adequate Protection; (II) Modifying the Automatic Stay; and (III) Granting Related Relief* [Docket No. 136].

"**Final Order**" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has been entered on the docket in the Chapter 11 Cases (or the docket of such other court) that is not subject to a stay and has not been modified, amended, reversed or vacated and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing pursuant to Bankruptcy Rule 9023 has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was timely and properly appealed, or certiorari shall have been denied or a new trial, reargument

7

or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired.

"**First Day Declaration**" means the *Declaration of Matthew Karmel, Interim Chief Executive Officer of the Debtors, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 9].

"**First Lien Claims**" means the Claims held by Bank of Montreal in its capacity as Prepetition Lender, including the Senior Secured Claims and excluding the DIP Facility Claims.

"**General Unsecured Claims**" means any unsecured Claim against the Debtors which is not a Priority Claim, Administrative Expense Claim, Professional Fee Claim, Priority Tax Claim, DIP Facility Claim, First Lien Claim, or Other Secured Claim and is not entitled to a priority under the Bankruptcy Code or any order of the Bankruptcy Court.

"**Governmental Bar Date**" means October 18, 2023 at 5:00 p.m. (*prevailing* Eastern Time), as stated in the *Notice of Deadline for the Filing of Proofs of Claim, Including for Claims Asserted Under Section 503(b)(9) of the Bankruptcy Code* [Docket No. 184].

"**Governmental Unit**" means a "governmental unit" as defined in Bankruptcy Code section 101(27).

"**Holder**" means the beneficial holder of any Claim or Interest.

"**Impaired**" means, with respect to any Class, a Class that is impaired within the meaning of Bankruptcy Code sections 1123(a)(4) and 1124.

"**Intercompany Claims**" means any Claim held by one Debtor against another Debtor.

"**Interest**" means any "equity security" in a Debtor as defined in section 101(16) of the Bankruptcy Code, including, without limitation, all issued, unissued, authorized or outstanding ownership interests (including common and preferred) or other equity interests, together with any warrants, options, convertible securities, liquidating preferred securities or contractual rights to purchase or acquire any such equity interests at any time and all rights arising with respect thereto.

"**Interim Approval and Procedures Order**" means the order of the Bankruptcy Court conditionally approving the Combined Disclosure Statement and Plan for solicitation purposes only and authorizing the Debtors to solicit the Combined Disclosure Statement and Plan.

"**Liquidating Trust Agreement**" means the trust agreement that documents the powers, duties, and responsibilities of the Liquidating Trustee, and which agreement will be materially consistent with the Combined Disclosure Statement and Plan and otherwise reasonably acceptable to the Debtors and the Committee, in the substance and form included in the Plan Supplement.

"**Liquidating Trust Assets**" means the Estate Causes of Action and the proceeds thereof and Trust Funding.

"**Liquidating Trust**" means a trust to be established on the Effective Date pursuant to the terms of the Liquidating Trust Agreement and the Combined Disclosure Statement and Plan.

"**Liquidating Trustee**" means the Person selected by the Committee and the Debtors, to administer the Liquidating Trust under the Liquidating Trust Agreement and identified in the Plan Supplement.

"**Local Rules**" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

"**Natural**" means Debtor Natural Outcomes, LLC.

"**Other Secured Claims**" means any Secured Claim other than the DIP Facility Claims, or the First Lien Claims.

"**Person**" means a "person" as defined in Bankruptcy Code section 101(41).

"**Petition Date**" means April 21, 2023, the date on which the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

"**Plan Supplement**" means the appendix of schedules and exhibits to be Filed with the Bankruptcy Court at least seven (7) days before the Confirmation Hearing.

"**Prepetition Lender**" means Bank of Montreal in its capacity as prepetition lender.

"**Priority Claims**" means any Claim entitled to priority pursuant to Bankruptcy Code section 507(a) other than Administrative Expense Claims and Priority Tax Claims.

"**Priority Tax Claims**" means Claims of a Governmental Unit against any Debtor entitled to priority pursuant to Bankruptcy Code section 507(a)(8) or specified section of Bankruptcy Code section 502(i).

"**Pro Rata**" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in the same Class.

"**Professional Fee Claims Bar Date**" means the date that is 60 days after the Effective Date for Professional Fee Claims to be Filed.

"**Professional Fee Claims**" means all Claims for compensation and reimbursement of expenses by Professionals to the extent Allowed by the Bankruptcy Court.

"**Professional**" means any professional Person employed in the Chapter 11 Cases pursuant to Bankruptcy Code section 327, 328, 363, or 1103 pursuant to an order of the Bankruptcy Court who is to be compensated for services rendered pursuant to Bankruptcy Code sections 327, 328, 329, 330, 331, or 363.

"**Proof of Claim**" means a proof of Claim Filed against any Debtor in accordance with the order establishing the Bar Date or any other order by the Bankruptcy Court requiring the fixing of Claims.

"**Purchaser**" means Mercer International Inc.

"**Rejection Claims**" means any Claim arising from, or relating to, the rejection of an executory contract or unexpired lease pursuant to section 365(a) of the Bankruptcy Code by any of the Debtors, as limited, in the case of a rejected unexpired lease, by Bankruptcy Code section 502(b)(6).

"**Release by Debtors**" means the release given by the Debtors to the Released Parties as set forth in Article XI.C.

"**Released Parties**" means, individually and collectively, in each case solely in their capacities as such, each and all of: (a) the Debtors; (b) the Debtors' current Professionals; (c) the Committee and members of the Committee in their capacity as members of the Committee; and (d) the Committee's Professionals; with respect to each of the foregoing identified in subsections (a) through (d), including each and all of their respective direct and indirect current and former Affiliates, subsidiaries, partners (including general partners and limited partners), investors, managing members, members, officers, directors, principals, employees, managers, controlling persons, agents, attorneys, investment bankers, Professionals, advisors, and representatives, each in their capacity as such, but excluding all officers and directors of the Debtors who were not serving in that capacity as of the Effective Date, provided, however, that, for the avoidance of doubt, "Released Parties" shall not include Walmart, Inc., or any non-Debtor entity owned or controlled by, or otherwise affiliated (including affiliated through control or financial interdependence) with Walmart, Inc.

"**Releasing Parties**" means, individually and collectively, (a) each holder of a Claim that (i) votes to accept the Combined Disclosure Statement and Plan and opts into the releases contained in the Combined Disclosure Statement and Plan, (ii) votes to reject the Combined Disclosure Statement and Plan and opts into the releases contained in the Combined Disclosure Statement and Plan, and (b) as to each of the foregoing Entities in the foregoing clause (a), each such Entities' and their Affiliates' current and former officers, directors, principals, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and all other professionals and retained Professionals (in each case as to the foregoing Entities and their Affiliates in clause (a), solely in their capacities as such), provided, however, that the Entities identified in part (b) shall be Releasing Parties only to the extent the corresponding Entities in part (a) are legally entitled to bind such Entities in part (b) to the releases contained in the Plan under applicable non-bankruptcy law.

"**Rule 3018 Motion**" means a motion for temporary allowance of a claim for the purpose of voting on this Combined Disclosure Statement and Plan.

"**Sale Order**" means the *Order (I) Authorizing (A) Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests and (B) the Debtors' Assumption and Assignment of*

*Certain Executory Contracts and Unexpired Leases; and (II) Granting Related Relief* [Docket No. 204].

"**Sale**" means the sale of the Acquired Assets by the Debtors to Purchaser pursuant to the APA, as approved by the Sale Order.

"**Sale Proceeds**" means all Cash proceeds generated from the Sale of the assets of the Debtors under the APA

"**Schedules**" means the schedules of assets and liabilities, the list of Holders of Equity Interests, and the statements of financial affairs Filed by the Debtors under Bankruptcy Code section 521 and Bankruptcy Rule 1007, and all amendments and modifications thereto.

"**Secured Claims**" means Claims which are: (a) secured by a valid and perfected lien in collateral which is enforceable pursuant to applicable law, the amount of which is equal to or less than the value of such collateral (i) as set forth in this Combined Disclosure Statement and Plan, (ii) as agreed to by the Holder of such Claim and the Debtors, or (iii) as determined by a Final Order in accordance with Bankruptcy Code section 506(a); or (b) subject to a valid right of setoff under Bankruptcy Code section 553.

"**SLP**" means Debtor SLP Holdings Ltd.

"**SLP Beneficial Interest**" means the value of Trust Funding assets attributable to SLP, including the total of the Sale Proceeds attributable to SLP contributed to the Liquidating Trust as set forth in the attached Liquidation Analysis, plus Estate Causes of Action and any recoveries on Estate Causes of Action belonging to SLP transferred to the Liquidating Trust, plus any remaining SMTU Beneficial Interest after SMTU General Unsecured Claims are paid in full, plus any remaining SMTC Beneficial Interest after SMTC General Unsecured Claims are paid in full.

"**SLP General Unsecured Claims**" means General Unsecured Claims against SLP.

"**SLP General Unsecured Creditors**" means holders of SLP General Unsecured Claims.

"**SMTC**" means Debtor Structurlam Mass Timber Corporation.

"**SMTC Beneficial Interest**" means the value of Trust Funding assets attributable to SMTC, including the total of the Sale Proceeds attributable to SMTC contributed to the Liquidating Trust as set forth in the attached Liquidation Analysis, plus Estate Causes of Action and any recoveries on Estate Causes of Action belonging to SMTC transferred to the Liquidating Trust.

"**SMTC General Unsecured Claims**" means General Unsecured Claims against SMTC.

"**SMTC General Unsecured Creditors**" means holders of SMTC General Unsecured Claims.

"**SMTU**" means Debtor Structurlam Mass Timber U.S., Inc.

"**SMTU Beneficial Interest**" means the value of Trust Funding assets attributable to SMTU, including the total of the Sale Proceeds attributable to SMTU contributed to the Liquidating Trust as set forth in the attached Liquidation Analysis, plus Estate Causes of Action and any recoveries on Estate Causes of Action belonging to SMTU transferred to the Liquidating Trust.

"**SMTU General Unsecured Claims**" means General Unsecured Claims against SMTU.

"**SMTU General Unsecured Creditors**" means holders of SMTU General Unsecured Claims.

"**Solicitation Package**" means the packages to be distributed to creditors for solicitation of votes on this Combined Disclosure Statement and Plan.

"**Stalking Horse Bidder**" means Mercer International Inc. in its role as stalking horse under the Bidding Procedures Order.

"**Statutory Fees**" means all fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930, and any interest thereupon.

"**Tax Code**" means the Internal Revenue Code, as amended.

"**Treasury Regulations**" means the regulations, including temporary regulations or any successor regulations, promulgated under the United States Internal Revenue Code, as amended from time to time.

"**Trust Expense**" means all actual and necessary fees, costs, expenses and obligations incurred or owed by the Liquidating Trustee or his or her agents, employees, attorneys, advisors or other professions in administering this Combined Disclosure Statement and Plan and the Liquidating Trust (including, without limitation, reasonable compensation for services rendered, and reimbursement for actual and necessary expense incurred by the Liquidating Trustee and his or her agents, employees and professionals) arising after the Effective Date through and including the date upon which the Bankruptcy Court enters a final decree closing the Chapter 11 Cases, which shall be solely payable from the Liquidating Trust Assets.

"**Trust Funding**" means all Cash and all other assets (other than Estate Causes of Action) held by the Debtors on the Effective Date, less an amount of Cash necessary to satisfy any accrued and unpaid Professional Fee Claims, which shall be used first to fund the administration of this Combined Disclosure Statement and Plan and the Liquidating Trust and pay all Trust Expenses and, thereafter, to fund distributions to Holders of Allowed Class 3A, Class 3B, Class 3C Claims and Class 4 Interests.

"**U.S. Debtors**" means SMTU and Natural.

"**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

"**Voting Classes**" means Class 3A, Class 3B, Class 3C and Class 4.

"**Voting Deadline**" means December 12, 2023, at 4:00 p.m. (ET).

"**Voting Record Date**" means the date established by the Bankruptcy Court pursuant to the Interim Approval and Procedures Order.

## B.   Interpretation; Application of Definitions and Rules of Construction

The following rules of construction, interpretation, and application shall apply:

(1)   Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter genders.

(2)   Unless otherwise specified, each section, article, schedule, or exhibit reference in the Combined Disclosure Statement and Plan is to the respective section in, article of, schedule to, or exhibit to the Combined Disclosure Statement and Plan.

(3)   The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Combined Disclosure Statement and Plan as a whole and not to any particular section, subsection, or clause contained in the Combined Disclosure Statement and Plan.

(4)   The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of the Combined Disclosure Statement and Plan.

(5)   A term used herein that is not defined herein but that is used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.

(6)   The headings in the Combined Disclosure Statement and Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Combined Disclosure Statement and Plan.

(7)   Unless otherwise provided, any reference in the Combined Disclosure Statement and Plan to an existing document, exhibit, or schedule means such document, exhibit, or schedule as may be amended, restated, revised, supplemented, or otherwise modified.

(8)   In computing any period of time prescribed or allowed by the Combined Disclosure Statement and Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## IV.   DISCLOSURES

## A.   General Background

## 1.   Overview of Business Operations

The Debtors were a leading manufacturer of mass timber solutions and ground protection solutions used in construction and industrial markets, with U.S. facilities in Conway, Arkansas and Canadian facilities in Penticton, Okanagan Falls, and Oliver, British Columbia.  The Debtors completed or assisted in supplying mass timber for numerous projects throughout North America including, among others: the University of British Columbia Brock Commons in Vancouver, British Columbia in 2016 and 2017, at the time the tallest wood structure building in the world; the Microsoft Silicon Valley Campus in Mountain View, California in 2019, at the time the largest mass timber structure built in the United States; and the Google Mountain View, California campus in 2020.

## 2.    Debtors' Prepetition Capital Structure

On or about December 21, 2017, SMTC, as borrower, and SLP, as guarantor, entered into a letter agreement (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Prepetition Credit Agreement") with the Prepetition Lender.  On December 3, 2019, SMTU was added as a borrower under the Prepetition Credit Agreement. Natural was also added as a guarantor of the obligations under the Prepetition Credit Agreement.

At the date it was originally entered into, the Prepetition Credit Agreement established certain credit facilities, including: a committed revolving credit facility in the maximum principal amount of $6,500,000 (CAD); a non-revolving term credit facility in the maximum principal amount of $21,333,317 (CAD); a revolving letter of credit facility in the maximum principal amount of $2,000,000 (CAD); and a committed, reducing, non-revolving term credit facility in the maximum principal amount of  $40,500,000 (USD).

The facilities available under the Prepetition Credit Agreement were amended over time, including most recently pursuant to that certain eighth amendment to the Prepetition Credit Agreement, dated as of April 21, 2023, which was executed prior to the filing of these Chapter 11 Cases and, among other things, provided the Company much needed access to $900,000 (CAD) in additional funds under the committed revolving credit facility.  As a result, as of the Petition Date, the Company's secured debt liabilities totaled approximately $20.5 million (CAD) and $34.9 million (USD) in principal amount, and included the following facilities under the Prepetition Credit Agreement (collectively, the "Prepetition Credit Facilities"):

| Facility | Maturity | Interest Rate | Approx. Principal Amount Outstanding |
|---|---|---|---|
| Committed Revolving Credit Facility | May 2025 | Adjustable, approximately 10.2% at Petition Date | $3.9 million (CAD) |
| Non-Revolving Term Credit Facility | May 2025 | Adjustable, approximately 10.2% at Petition Date | $16.2 million (CAD) |

14

| Facility | Maturity | Interest Rate | Approx. Principal Amount Outstanding |
|---|---|---|---|
| Revolving Letter of Credit Facility | May 2025 | Adjustable fees, approximately 12.2% in respect of CAD Letters of Credit and approximately 13.5% in respect of USD Letters of Credit at Petition Date | $300,000 (USD) |
| Committed, Reducing, Non-Revolving Term Credit Facility | May 2025 | Adjustable, approximately 11.5% at Petition Date | $34.9 million (USD) |

The Debtors' obligations under the Prepetition Credit Facilities were secured by substantially all of the Debtors' assets in accordance with the following security and guarantee documents: (a) that certain Unlimited Guarantee in favor of the Prepetition Lender from each of SMTC, SMTU, and Natural; (b) those two certain Limited Recourse Guarantees in an unlimited amount in favor of the Prepetition Lender from SLP; (c) that certain Limited Guarantee up to the amount of $13,500,000 (USD) in favor of the Prepetition Lender from SMTU's largest customer; (d) that certain General Security Agreement providing a first-ranking security interest over all present and after-acquired personal property and a floating charge on all land from SMTC; (e) that certain General Security Agreement providing a first-ranking security interest over all present and after-acquired personal property and a floating charge on all land from SMTU; (f) that certain General Security Agreement providing a first-ranking security interest over all present and after-acquired personal property and a floating charge on all land from Natural; (g) that certain Collateral Mortgage in favor of the Prepetition Lender from SMTU for the lands of the Debtors' U.S. manufacturing facility (the "US Facility"); (h) that certain Securities Pledge Agreement in favor of the Prepetition Lender in the shares of SMTU by SLP; (i) a bond pledge and security agreement from Natural to the Prepetition Lender dated as of December 27, 2019; (j) a leasehold mortgage and security agreement dated as of December 27, 2019 and filed of record in Faulkner County, Arkansas as Instrument No. L201919704 on December 27, 2019 by and between SMTU, as borrower, and the Prepetition Lender, as lender; (k) a construction mortgage, security agreement, fixture filing, and assignment of rents and leases dated as of December 27, 2019 and filed of record in Faulkner County, Arkansas as Instrument No. L201919701 on December 27, 2019 by and between SMTU, as mortgagor, and the Prepetition Lender, as mortgagee; and (l) a collateral assignment of option rights entered into as of December 27, 2019 and filed of record in

Faulkner County, Arkansas as Instrument No. L201919705 on December 27, 2019 by SMTU, as borrower, in favor of the Prepetition Lender, as lender.

The Prepetition Credit Facilities were paid in full on or about June 20, 2023.

**3.      Events Precipitating the Chapter 11 Filing**

In the months preceding the Petition Date, the Debtors faced significant operational and liquidity challenges.  As set forth in detail in the First Day Declaration, these challenges related largely to the supply agreement with SMTU's only customer for the US Facility.  On or about January 11, 2023, the Company received notice of the termination of this supply agreement with its only customer at the US Facility.  As a result, in January 2023, the Debtors were forced to cease operations at the US Facility and terminate a majority of their employees at that location.

Following these events, the Company, in coordination with and with the support of the Prepetition Lender and the Company's advisors, conducted a robust prepetition marketing process that culminated in the selection of a stalking horse bid from the Stalking Horse Bidder for the purchase of substantially all of the Debtors' assets, all as described in further detail below.  The Debtors entered chapter 11 with the support of the Prepetition Lender and the Stalking Horse Bidder to effectuate the sale, subject to higher and better offers, to preserve the value of the Debtors' business for the benefit of all stakeholders.

In order to obtain access to essential liquidity to support the Debtors' postpetition operations and the proposed sale process, the Debtors, through their investment banker, Miller Buckfire & Co. LLC and Stifel, Nicolaus & Co., Inc. (collectively, "Miller Buckfire"), solicited financing options on behalf of the Company (the "Financing Process").  Eighteen prospective investors were solicited regarding a debtor-in-possession facility to support an in-court restructuring process, if necessary.  Seven of these parties executed non-disclosure agreements with two others proceeding under existing non-disclosure agreements, including the Prepetition Lender.

Despite the number of interested financing parties that executed a non-disclosure agreement, on or around April 7, 2023, ultimately only three parties submitted debtor-in-possession financing proposals to the Debtors.  On or around April 11, 2023, the Debtors and the Prepetition Lender began materially advancing negotiations regarding the terms, restrictions, fees, and other provisions of the Prepetition Lender's debtor-in-possession financing proposal.  The Debtors continued this negotiation process with the Prepetition Lender concurrently with the negotiations with other interested parties.  As a result of these efforts and the negotiations with the Prepetition Lender and other interested parties, the Debtors determined in their business judgment that there was no proposal for debtor-in-possession financing available to the Debtors on terms better than those provided by the Prepetition Lender, especially after taking into account certain concessions provided by the Prepetition Lender during the course of negotiations.  In particular, no party was willing to extend debtor-in-possession financing to the Debtors on an unsecured or junior basis.  Accordingly, on April 21, 2023, the Debtors and the DIP Lender entered into the DIP Credit Agreement.

16

B.     **The Chapter 11 Cases**

1.     **First Day Orders**

On the Petition Date, the Debtors Filed certain motions to transition into operations during the Chapter 11 Cases, stabilize operations, and preserve relationships with vendors, clients, and employees (collectively, the "First Day Motions").

The First Day Motions requested relief from the Bankruptcy Court to, among other things: (a) jointly administer the Chapter 11 Cases; (b) pay employee wages; (c) maintain the Debtors' cash management system; (d) obtain postpetition financing; and (e) pay Critical Vendors.  In support of the First Day Motions, the Debtors relied upon the First Day Declaration.

The Bankruptcy Court held hearings and granted the relief sought by the First Day Motions at hearings on April 26, 2023 and May 19, 2023.  Also on April 26, 2023, as part of the First Day Motions, the Bankruptcy Court entered an order authorizing SLP to act as the foreign representative for the purpose of Canadian Recognition Proceedings.

2.     **Retention of Professionals**

The Debtors, through various applications which were subsequently approved by the Bankruptcy Court, sought to employ certain professionals including: Chipman Brown Cicero & Cole, LLP as counsel [Docket No. 90]; Kurtzman Carson Consultants LLC as administrative advisor [Docket No. 89]; Alvarez & Marsal Canada ULC as financial advisors [Docket No. 95]; Miller Buckfire as investment banker [Docket No. 96]; Gowling WLG (Canada) LLP as special counsel [Docket No. 97]; Potter Anderson & Corroon LLP as co-counsel [Docket No. 137]; and Paul Hastings LLP as special counsel [Docket No. 170].  The Bankruptcy Court later approved these retentions [Docket Nos. 172, 173, 176, 177, 197, 298, and 299].

3.     **Appointment of the Committee**

On May 3, 2023, the U.S. Trustee officially appointed the Committee [Docket No. 54] and on May 5, 2023, the U.S. Trustee amended the officially appointed Committee.  The Committee is made up of the following parties: (1) Simpson Strong-Tie Canada, Ltd.; (2) Ticomtec USA, Inc.; and (3) Broadhead Operating, d/b/a HMN Agency.

The Committee, through various applications which were subsequently approved by the Bankruptcy Court, sought to employ certain professionals including: Buchalter, P.C. as lead counsel [Docket No. 179]; Goodmans LLP as Canadian counsel [Docket No. 180]; Dundon Advisers LLC as financial advisor [Docket No. 181]; and Morris, Nichols, Arsht & Tunnell LLP as co-counsel [Docket No. 182].  The Bankruptcy Court later approved these retentions [Docket Nos. 222, 223, 228, and 229].

4.     **The DIP Facility**

Upon the bankruptcy filing, the Debtors required immediate access to incremental liquidity in the form of postpetition financing to preserve the value of the Debtors' Estates, undertake the successful sale process, and maximize recoveries for all stakeholders.  Accordingly,

the Debtors sought authorization to enter into the DIP Facility in an aggregate principal amount of up to $7,500,000 (CAD), with up to $4,000,000 (CAD) of such amount available upon interim approval. The Bankruptcy Court entered the Final DIP Order approving the DIP Facility on May 19, 2023 [Docket No. 136]. The DIP Facility was paid in full on or about June 20, 2023.

**5.      Sale of the Debtors' Assets**

Promptly following its prepetition retention, Miller Buckfire launched a process for the purpose of soliciting offers for the sale or recapitalization of the Company (the "Marketing Process"). Miller Buckfire began the Marketing Process by identifying and contacting a broad group of potential strategic and financial sponsor parties for both sale and financing options. Seventy-four prospective buyers were solicited of which thirty-seven executed non-disclosure agreements and eighteen prospective investors were solicited of which seven executed non-disclosure agreements. The parties that executed non-disclosure agreements received access to the Company's virtual data room and were offered management meetings and site visits.

By March 8, 2023, five prospective buyers provided non-binding indications of interest. Of these five parties, four were selected to continue to the second round of the process and provided with access to additional diligence in the data room, continued access to Company management and site visits, and a draft asset purchase agreement. Miller Buckfire requested binding bids from these four parties by March 24, 2023. On March 24, 2023, Miller Buckfire received two bids and provided them to the Company.

Following the receipt of the two second round bids, the Company and its advisors worked with initial bidders to evaluate, solidify, and improve the initial bids received. Ultimately, after such evaluation and analysis, the bid by the Stalking Horse Bidder was determined as the highest or otherwise best initial offer and the Company and its advisors engaged with the Stalking Horse Bidder concerning the terms of a purchase agreement.

On April 21, 2023, the Debtors and the Stalking Horse Bidder entered into that certain Asset Purchase Agreement (the "Stalking Horse Purchase Agreement").

The Stalking Horse Purchase Agreement provided, among other things, for the purchase of the Debtors' US and Canadian Assets, along with assumption of certain assumed liabilities, as set forth in the Stalking Horse Purchase Agreement, for a purchase price of $60 million (USD). The Stalking Horse Purchase Agreement was also subject to certain bid protections in favor of the Stalking Horse Bidder, subject to Court approval, consisting of a breakup fee of $1.8 million (USD) and an expense reimbursement not to exceed $600,000 (USD).

Promptly following the Petition Date, Miller Buckfire continued soliciting offers for a potential overbid of the Stalking Horse Purchase Agreement. On April 25, 2023, Miller Buckfire reached out to all previously solicited prospective parties that had executed a non-disclosure agreement and on April 28, 2023, Miller Buckfire reached out to all previously solicited prospective parties that had not executed a non-disclosure agreement. In addition, on May 1, 2023, Miller Buckfire followed up directly with certain parties that had previously expressed interest in some or all of the Debtors' assets.

Also, during the postpetition period, Miller Buckfire continued to solicit new potential parties, contacting twenty-four incremental parties, of which seven executed non-disclosure agreements, for a total of 114 parties contacted, of which 50 executed a non-disclosure agreement.

On May 8, 2023, the Bankruptcy Court entered the Bidding Procedures Order approving the bidding procedures for the sale of the Debtors' assets (the "Bidding Procedures").

Pursuant to the Bidding Procedures, potential bidders that wanted to make a qualified bid for the Debtors' assets were required to transmit a qualified bid so as to be actually received on or before May 23, 2023, at 4:00 p.m. (prevailing Eastern Time) (the "Bid Deadline").

Prior to the Bid Deadline, the Debtors received what they determined to be a qualified overbid from the Weyerhaeuser Company ("Weyerhaeuser") in the amount of $70 million to acquire substantially all assets of the Debtors related to their United States operations (the "Weyerhaeuser Bid"). Given the receipt of the Weyerhaeuser Bid, on May 24, 2023, the Debtors conducted an auction (the "Auction") pursuant to the Bidding Procedures.

After several rounds of bidding between the Stalking Horse Bidder and Weyerhaeuser during the Auction, the Debtors determined that: (i) that the highest and best value for the Debtors' Estates was offered by the Stalking Horse Bidder in the amount of $83.5 million USD, representing a cash bid of $81.1 million USD and breakup fee and expense reimbursement credits totaling $2.4 million USD; (ii) the Stalking Horse Bidder's bid was the winning bid at the Auction; and (iii) Weyerhaeuser Company, with a bid in the amount of $80 million USD, would be designated as the backup bidder and its bid to acquire substantially all assets of the Debtors related to their United States operations was the "Back-Up Bid" under the Bidding Procedures Order.

After the Sale Hearing on May 30, 2023, the Bankruptcy Court subsequently entered the Sale Order approving the sale of substantially all of the Debtors' assets to Purchaser [Docket No. 204]. The Sale to Purchaser closed on June 15, 2023.

**6.      Claims Process and Bar Date**

On May 9, 2023, the Debtors filed the *Motion of Debtors for Entry of an Order Pursuant to Bankruptcy Rule 3003(c)(3) and Local Rule 2002-1(e) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim (Including for Administrative Expense Claims Arising Under Section 503(b)(9) of the Bankruptcy Code) and Approving the Form and Manner of Notice Thereof* [Docket No. 93]. On May 25, 2023, the Bankruptcy Court entered the Bar Date Order.

All creditors holding or wishing to assert unsecured, secured, priority, or nonpriority claims (as defined in Bankruptcy Code section 101(5)) against the Debtors or the Debtors' Estates, accruing prior to the Petition Date, including claims arising under Bankruptcy Code section 503(b)(9), were required to file a separate, completed, and executed Proof of Claim Form on account of each such Claim, together with accompanying documentation by the Bar Date. Governmental Units, as defined by section 101(27) of the Bankruptcy Code, must submit Claims by the Governmental Bar Date.

7.      **The Canadian Recognition Proceedings**

On April 27, 2023, the Honourable Justice Fitzpatrick of the Canadian Court in the Canadian Recognition Proceedings granted: (a) an Initial Recognition Order, among other things: (i) recognizing SLP as the "foreign representative", (ii) the Chapter 11 Proceedings of SLP and SMTC as "foreign non-main proceedings", (iii) and the Chapter 11 Proceedings of SMTU and Natural as "foreign main proceedings", each as defined in section 45 of the CCAA; and (b) the Supplemental Recognition Order, among other things: (i) recognizing various orders of the US Bankruptcy Court, (ii) ordering a stay of proceedings in Canada in respect of the Debtors until June 1, 2023; and (iii) appointing Alvarez & Marsal Canada Inc. as information officer in respect of these Canadian Recognition Proceedings.

On Tuesday, October 31, 2023, the Debtors obtained an extension the Canadian Court ordered stay of proceedings until January 31, 2024.  The Debtors have a hearing in the Canadian Court on Friday, November 17, 2023 to request the Canadian Court's recognition of the solicitation order, and a hearing on Friday, December 22, 2023 to request the Canadian Court's recognition of the Confirmation Order.

C.      **Summary of Assets**

The Liquidating Trust Assets shall be comprised of certain accounts receivable, the Estate Causes of Action and the Trust Funding, which amounts will be the source of Distributions to Holders of Allowed Claims in any of Class 3A, Class 3B, and Class 3C or Holders of Allowed Interests in Class 4 (to the extent applicable).

**D.    Summary of Treatment of Claims and Interests Under the Plan**

The following chart summarizes the classification and treatment of the Classes:

| Class | Estimated Claims[2] | Treatment | Estimated Recovery to Holders of Allowed Claims[3] |
|---|---|---|---|
| Class 1 – Other Secured Claims | $0 | Unimpaired, deemed to accept | 100% |
| Class 2 – Priority Claims | $41,770 | Unimpaired, deemed to accept | 100% |
| Class 3A – SMTU General Unsecured Claims | $99,780,470[4] | Impaired, entitled to vote | 21.1% |
| Class 3B – SLP General Unsecured Claims | $80,687,555[5] | Impaired, entitled to vote | 0% |
| Class 3C – SMTC General Unsecured Claims | $19,010,126[6] | Impaired, entitled to vote | 21.2% |
| Class 4 – Equity Interests | n/a | Impaired, entitled to vote | 0% |

---

[2]    These amounts represent filed or scheduled Claims. The Debtors have not completed their analysis of Claims in the Chapter 11 Cases, and objections to such Claims have not been Filed and/or fully litigated and may continue following the Effective Date. Therefore, there can be no assurances of the exact amount of the Allowed Claims at this time. Rather, the actual amount of the Allowed Claims may be greater or lower than estimated.

[3]    The estimated percentage recovery is based upon, among other things, an estimate of potential Allowed Claims in the Chapter 11 Cases. As set forth above, the actual amount of the Allowed Claims may be greater or lower than estimated. Thus, the actual recoveries may be higher or lower than projected depending upon, among other things, the amounts and priorities of Claims that are actually allowed by the Bankruptcy Court.

[4]    The amount of SMTU General Unsecured Claims listed herein is an estimate based upon the *Summary of Assets and Liabilities for Non-Individuals on Schedule E/F* [Docket No. 149], Filed Proofs of Claim and preliminary review by the Debtors. These amounts have not been reconciled to Filed Proofs of Claim and Filed Proofs of Claim have not been reviewed for accuracy at this point in time.

[5]    The amount of SLP General Unsecured Claims listed herein is an estimate based upon the *Summary of Assets and Liabilities for Non-Individuals on Schedule E/F* [Docket No. 155], Filed Proofs of Claim and preliminary review by the Debtors. These amounts have not been reconciled to Filed Proofs of Claim and Filed Proofs of Claim have not been reviewed for accuracy at this point in time.

[6]    The amount of SMTC General Unsecured Claims listed herein is an estimate based upon the *Summary of Assets and Liabilities for Non-Individuals on Schedule E/F* [Docket No. 153], Filed Proofs of Claim and preliminary review by the Debtors. These amounts have not been reconciled to Filed Proofs of Claim and Filed Proofs of Claim have not been reviewed for accuracy at this point in time.

21

### E.     Potential Claims and Causes of Action

The Bankruptcy Code preserves the Debtors' rights to prosecute claims and causes of action that exist outside of bankruptcy, and also empowers the Debtors to prosecute certain claims that are established by the Bankruptcy Code, including claims to, inter alia, avoid and recover certain preferential transfers and fraudulent conveyances.  The Combined Disclosure Statement and Plan preserves all of the Debtors' rights with respect to all Estate Causes of Action, transfers the Debtors' rights in respect of such Estate Causes of Action to the Liquidating Trust, and empowers the Liquidating Trustee on behalf of the Liquidating Trust's beneficiaries to investigate, prosecute, collect, and/or settle the Estate Causes of Action as deemed appropriate.

To date, the Debtors have identified certain causes of action that will be transferred to the Liquidating Trustee as Estate Causes of Action pursuant to the terms of the Combined Disclosure Statement and Plan.  The retention and preservation of known and unknown Estate Causes of Action and their prosecution and liquidation by the Liquidating Trustee, are an integral part of the Combined Disclosure Statement and Plan.

As described in further detail in Article VIII.D herein, from and after the Effective Date, the Liquidating Trustee, on behalf of the Liquidating Trust and subject to the terms of this Combined Disclosure Statement and Plan and the Liquidating Trust Agreement, shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all Estate Causes of Action without the consent or approval of any third party and without any further order of the Bankruptcy Court.

### F.     Certain Federal Income Tax Consequences

The following discussion is a summary of certain U.S. federal income tax consequences of the Combined Disclosure Statement and Plan to the Debtors and to Holders of Claims and Equity Interests. This discussion is based on the Tax Code, Treasury Regulations promulgated and proposed thereunder, judicial decisions and published administrative rules, and pronouncements of the IRS, all as in effect on the date hereof.

Due to the complexity of certain aspects of the Combined Disclosure Statement and Plan, the lack of applicable legal precedent, the possibility of changes in the law, the differences in the nature of the Claims, and each Holder's status and method of accounting and the potential for disputes as to legal and factual matters with the IRS, the tax consequences described herein are uncertain.  No legal opinions have been requested from counsel with respect to any of the tax aspects of the Combined Disclosure Statement and Plan and no rulings have been or will be requested from the IRS with respect to the any of the issues discussed below.  Further, legislative, judicial, or administrative changes may occur, perhaps with retroactive effect, which could affect the accuracy of the statements and conclusions set forth below as well as the tax consequences to the Debtors and the Holders of Claims and Equity Interests.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtors or the Holders of Claims or Equity Interests in light of their personal circumstances, nor does the discussion deal with tax issues with respect to taxpayers subject to

special treatment under the U.S. federal income tax laws (including, for example, insurance companies, financial institutions, real estate investment trusts, tax-exempt organizations, small business investment companies, regulated investment companies, foreign taxpayers, persons whose functional currency is not the U.S. dollar, persons subject to the alternative minimum tax, and persons holding Claims or Equity Interests as part of a "straddle," "hedge," "constructive sale," or "conversion transaction" with other investments). This discussion does not address the tax consequences to Holders of Claims who did not acquire such Claims at the issue price on original issue. No aspect of foreign, state, local, or estate and gift taxation is addressed.

**EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN, AND OTHER TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN.**

### 1.      Tax Consequences to the Debtors

Pursuant to the Tax Code and subject to certain exceptions, a taxpayer generally must recognize income from COD Income to the extent that such taxpayer's indebtedness is discharged for an amount less than the indebtedness' adjusted issue price determined in the manner described below. Generally, the amount of COD Income, subject to certain statutory and judicial exceptions, is the excess of (a) the adjusted issue price of the discharged indebtedness less (b) the sum of the fair market value (determined at the date of the exchange) of the consideration, if any, given in exchange for such discharged indebtedness.

The recognition of COD Income may be treated differently in the context of a confirmed chapter 11 plan. For example, under the Bankruptcy Exception, instead of recognizing COD Income, the taxpayer is required, pursuant to section 108(b) to reduce certain of that taxpayer's tax attributes to the extent of the amount of COD Income. The Tax Attributes of the taxpayer generally are reduced in the following order: net operating losses, general business and minimum tax credit carry forwards, capital loss carry forwards, the basis of the taxpayer's assets and, finally, foreign tax credit carry forwards. If the amount of COD Income exceeds the amount of Tax Attributes available to be reduced, the excess still is excluded from income. Pursuant to section 108(b)(4)(A), the reduction of Tax Attributes does not occur until the end of the taxable year after such Tax Attributes have been applied to determine the tax in the year of discharge or, in the case of asset basis reduction, the first day of the taxable year following the taxable year in which the COD Income is realized. Section 108(e)(2) provides a further exception to the recognition of COD Income upon the discharge of debt, providing that a taxpayer will not recognize COD Income to the extent that the taxpayer's satisfaction of the debt would have given rise to a deduction for United States federal income tax purposes.

### 2.      Tax Consequences for Holders of Claims

A transfer of assets to the Liquidating Trust is treated as a transfer to the beneficiaries of the Liquidating Trust under section 61 of the Tax Code. Generally, a Holder of a Claim should in most, but not all circumstances, recognize gain or loss equal to the difference between the "amount realized" by such Holder in exchange for its Claim and such Holder's adjusted tax basis in the Claim. The "amount realized" is equal to the sum of the cash and the fair market value of any

other consideration received under a plan of reorganization in respect of a Holder's Claim.  The tax basis of a Holder in a Claim will generally be equal to the Holder's cost.  To the extent applicable, the character of any recognized gain or loss (e.g., ordinary income, or short-term or long-term capital gain, or loss) will depend upon the status of the Holder, the nature of the Claim in the Holder's hands, the purpose and circumstances of its acquisition, the Holder's holding period of the Claim, and the extent to which the Holder previously claimed a deduction for the worthlessness of all or a portion of the Claim.  Generally, if the Claim is a capital asset in the Holder's hands, any gain or loss realized generally will be characterized as capital gain or loss, and will constitute long-term capital gain or loss if the Holder has held such Claim for more than one (1) year.

A Holder who received Cash (or potentially other consideration) in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest.  A Holder who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Combined Disclosure Statement and Plan, will be treated as having received interest income to the extent that any consideration received is characterized for United States federal income tax purposes as interest, regardless of whether such Holder realizes an overall gain or loss as a result of surrendering its Claim. A Holder who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such Holder realizes an overall gain or loss as a result of the distribution it may receive under the Combined Disclosure Statement and Plan on account of its Claim.

## G.    Certain Risk Factors to Be Considered

Effect of Failure to Confirm the Combined Disclosure Statement and Plan.  If the Combined Disclosure Statement and Plan is not confirmed by the requisite majorities in number and amount as required by Bankruptcy Code section 1126, or if any of the other Confirmation requirements imposed by the Bankruptcy Code are not met, the Chapter 11 Cases may not have sufficient funding to proceed, which may result in conversion to a case under chapter 7 of the Bankruptcy Code or dismissal.

"Cramdown." While the Debtors believe that the requirements of Bankruptcy Code section 1129 have been met, the Bankruptcy Court is afforded discretion to determine whether dissenting Holders of Claims would receive more if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

Claims Estimation.  While the Debtors have undertaken their best efforts to accurately estimate the amount of Claims in each Class, the actual amount of Allowed Claims may differ from the estimates.

Estate Causes of Action.  Pursuant to the Combined Disclosure Statement and Plan, the Liquidating Trust Assets, including the Estate Causes of Action, will be transferred to the Liquidating Trust upon the establishment of the Liquidating Trust upon the Effective Date.  The Estate Causes of Action include Causes of Action which are not released, waived, or transferred pursuant to the Combined Disclosure Statement and Plan, the Sale, or otherwise.  There is no

assurance that the Liquidating Trust will be successful in prosecuting any Estate Causes of Action or generating sufficient proceeds from the Estate Causes of Action for Distribution.  To the extent Distributions are possible from the Estate Causes of Action, the timing of any such Distribution is uncertain.

Delays.  Any delay in Confirmation of the Combined Disclosure Statement and Plan or delay to the Effective Date could result in additional Administrative Expense Claims and/or Liquidating Trustee expenses.  This may endanger ultimate approval of the effectiveness of the Combined Disclosure Statement and Plan or result in a decreased recovery for Holders of Claims entitled to a Distribution.

Sufficient Cash for Liquidating Trust Distributions.  There is no assurance that the Liquidating Trust Assets will be sufficient to fund the Liquidating Trust's expenses to enable the Liquidating Trust to hold and liquidate the Liquidating Trust Assets as envisioned under the Combined Disclosure Statement and Plan.  Accordingly, there is no assurance as to whether the Liquidating Trust will make any Distributions, the amount, if any, or the timing on which such Distributions may be made.

## H.    Feasibility

The Bankruptcy Code requires that, in order for a plan to be confirmed, the Bankruptcy Court must find that confirmation of such plan is not likely to be followed by the liquidation or need for further reorganization of the debtor unless contemplated by the plan.

Here, the Combined Disclosure Statement and Plan provides for the liquidation and distribution of all of the Debtors' assets.  The Debtors will be providing to the Liquidating Trust in excess of $20 million dollars in cash on the Effective Date for distributions to creditors and for funding the Liquidating Trust to pursue all Causes of Action.  Accordingly, the Debtors believe all chapter 11 plan obligations will be satisfied without the need for further reorganization of the Debtors.

## I.    Best Interests Test and Alternatives to the Combined Disclosure Statement and Plan

The Bankruptcy Code requires that the Bankruptcy Court determine that a plan accepted by the requisite number of creditors in an impaired class provides each such member of each impaired class of claims and interests a recovery that has value, on the effective date, at least equal to the value of the recovery that each such creditor would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

The Bankruptcy Code further requires that the Bankruptcy Court determine that a plan is in the best interests of each holder of a claim or interest in any such impaired class which has not voted to accept the plan.  Thus, if an impaired class does not vote unanimously to confirm the plan, the best interests test requires that the Bankruptcy Court find that the plan provides to each member of such impaired class a recovery on account of the class member's claim or interest that has a value, on the effective date, at least equal to the value of the recovery that each such class member would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

25

Here, the Debtors and the Committee believe the Combined Disclosure Statement and Plan satisfies the best interests test as the Liquidation Analysis, attached hereto as <u>Exhibit A</u>, demonstrates that the recoveries expected to be available to Holders of Allowed Claims under the Combined Disclosure Statement and Plan will be greater than the recoveries expected in a liquidation under chapter 7 of the Bankruptcy Code.

In a typical chapter 7 case, a trustee is elected or appointed to liquidate a debtor's assets for distribution to creditors in accordance with the priorities set forth in the Bankruptcy Code. Generally, secured creditors are paid first from the proceeds of sales of the properties securing their liens. If any assets are remaining in the bankruptcy estate after satisfaction of secured creditors' claims from their collateral, administrative expenses (including those incurred by a chapter 7 trustee) are next to receive payment. Unsecured creditors are paid from any remaining proceeds, according to their respective priorities. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims in relationship to the total amount of allowed claims held by all unsecured creditors with the same priority. Finally, equity interest holders receive the balance that remains, if any, after all creditors are paid.

Substantially all of the Debtors' Assets have already been sold and transferred to Purchaser under the Sale Order. While a liquidation under chapter 7 of the Bankruptcy Code would have the same goal, the Combined Disclosure Statement and Plan provides the best source of recovery for several reasons. First, liquidation under chapter 7 of the Bankruptcy Code would not provide for a timely distribution. Second, Distributions would likely be smaller because of the fees and expenses incurred in a liquidation under chapter 7 of the Bankruptcy Code.

At this time, there are no alternative plans available to the Debtors. Following the Close of Sale, the Debtors have few assets remaining. Therefore, the Debtors and the Committee believe that the Combined Disclosure Statement and Plan provides the greatest possible value under the circumstances and has the greatest chance of being confirmed and consummated.

## J.        Releases by the Debtors

Article XII of this Combined Disclosure Statement and Plan contains certain releases, exculpations, and injunction language. Parties are urged to read these provisions carefully to understand how Confirmation and consummation of the Combined Disclosure Statement and Plan will affect any claim, interest, right, or action with regard to the Debtors and certain third parties.

**THE COMBINED DISCLOSURE STATEMENT AND PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED UNDER THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND ALL OTHER APPLICABLE LAW.**

Under the voting procedures described in Article VII and Article VIII of this Combined Disclosure Statement and Plan, the Debtors believe that these releases, exculpations, and injunction language are considered consensual under applicable bankruptcy law.

## V.    UNCLASSIFIED CLAIMS

### A.    Administrative Expense Claims

Requests for payment of Administrative Expense Claims must be Filed no later than the applicable Administrative Expense Bar Date.  Holders of Administrative Expense Claims that do not File requests for the allowance and payment thereof on or before the applicable Administrative Expense Bar Date shall forever be barred from asserting such Administrative Expense Claims against the Debtors, their Estates, or the Liquidating Trust.

Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for release of each Allowed Administrative Expense Claim, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash (a) on the Effective Date or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due or as soon thereafter as is reasonably practicable, (b) if an Administrative Expense Claim is Allowed after the Effective Date, on the date such Administrative Expense Claim is Allowed or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due, or (c) at such time and upon such terms as set forth in an order of the Bankruptcy Court.  Allowed Administrative Expense Claims may be paid by the Liquidating Trust, upon the agreement of the holder of an Allowed Administrative Expense Claim and the Liquidating Trustee.

### B.    Professional Fee Claims

All Professionals or other Persons requesting compensation or reimbursement of Professional Fee Claims for services rendered before the Effective Date (including compensation requested by any Professional or other Entity for making a substantial contribution in the Chapter 11 Cases) shall File an application for final allowance of compensation and reimbursement of expenses no later than the Professional Fee Claims Bar Date.

The final hearing to determine the allowance of Professional Fee Claims shall be held as soon as practicable after the Professional Fee Claims Bar Date.  The Debtors' counsel shall File a notice of such hearing, which shall be served upon counsel for the Committee, all Professionals, the U.S. Trustee, and all parties on the Debtors' Bankruptcy Rule 2002 service list.

Allowed Professional Fee Claims shall be paid (a) as soon as is reasonably practicable following the later of (i) the Effective Date and (ii) the date upon which the order relating to any such Allowed Professional Fee Claim is entered by the Bankruptcy Court, or (b) upon such other terms as agreed by the Holder of such an Allowed Professional Fee Claim.

### C.    Priority Tax Claims

Except to the extent the Debtors, with the consent of the Committee or Liquidating Trustee, as applicable, and the Holder of an Allowed Priority Tax Claim agree to a different and less favorable treatment, the Debtors shall pay, in full satisfaction and release of such Claim, to each holder of a Priority Tax Claim, Cash, in an amount equal to such Allowed Priority Tax Claim, on

27

the later of: (a) the Effective Date and (b) the first Business Day after the date that is 30 calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is reasonably practicable.

Any Claims asserted by a Governmental Unit on account of any penalties and assessments shall not be Priority Tax Claims and shall be subordinated to General Unsecured Claims. On the Effective Date, any Liens securing any Allowed Priority Tax Claim shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Person.

The Debtors estimate that the aggregate amount of Allowed Priority Tax Claims does not exceed $0.

## D.     Statutory Fees

All Statutory Fees incurred prior to the Effective Date shall be paid by the Debtors in full in cash on the Effective Date. After the Effective Date, the Liquidating Trustee shall pay any and all Statutory Fees in full in cash when due and payable from the Liquidating Trust Assets and shall File with the Bankruptcy Court quarterly reports using UST Form 11-MOR, until such time that the case is closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code, provided, however, that the Liquidating Trustee and the Debtors shall remain jointly and severally liable to pay Statutory Fees. Notwithstanding anything to the contrary in the Combined Disclosure Statement and Plan, (i) Statutory Fees are Allowed; (ii) the U.S. Trustee shall not be required to file any proofs of claim or any other request(s) for payment with respect to Statutory Fees; and (iii) the U.S. Trustee shall not be treated as providing any release under the Combined Disclosure Statement and Plan.

## VI.     CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

## A.     Classification of Claims and Interests

The below categories of Claims and Interests classify such Claims and Interests for all purposes, including voting, Confirmation, and Distribution pursuant hereto and pursuant to Bankruptcy Code sections 1122 and 1123.

## B.     Treatment of Claims and Interests

## 1.     Class 1 – Other Secured Claims

Except to the extent that a Holder of an Allowed Other Secured Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed Other Secured Claim has not been paid in full prior to the Effective Date, in full and final satisfaction of each Allowed Other Secured Claim, each such Holder, at the option of the Debtors (in consultation with the Committee) or the Liquidating Trustee, shall (i) be paid in full in Cash; (ii) receive the collateral securing its Allowed Other Secured Claim, plus postpetition interest to the extent required under Bankruptcy Code section 506(b); or (iii) receive other treatment rendering such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code, in each case on the later of the Effective

Date and the date such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is reasonably practicable.  In the event the Debtors or the Liquidating Trustee treat a Claim under clause (i) of this Section, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization, or approval of any Person.  The Debtors and the Liquidating Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Other Secured Claims.

The Debtors estimate that the aggregate amount of Allowed Other Secured Claims will be $0.00. Class 1 is Unimpaired and is deemed to accept the Combined Disclosure Statement and Plan.

## 2.      Class 2 – Priority Claims

Except to the extent that a Holder of an Allowed Priority Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed Priority Claim has not been paid in full prior to the Effective Date, each such Holder shall receive, in full satisfaction of such Allowed Priority Claim, Cash in an amount equal to such Allowed Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between the Debtors or Liquidating Trustee, as the case may be, and the Holder of the Allowed Priority Claim.

The Debtors estimate that the aggregate amount of Allowed Priority Claims does not exceed $41,770.

Class 2 is Unimpaired and is deemed to accept the Combined Disclosure Statement and Plan.

## 3.      Class 3A – SMTU General Unsecured Claims

Except to the extent that a Holder of an Allowed SMTU General Unsecured Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed SMTU General Unsecured Claim has not been paid by any applicable Debtor prior to the Effective Date, in full and final satisfaction of each Allowed SMTU General Unsecured Claim, each Holder of an Allowed SMTU General Unsecured Claim shall receive such Holder's Pro Rata share of the SMTU Beneficial Interest in the Liquidating Trust and as beneficiary of the Liquidating Trust shall receive, on a Distribution date, its Pro Rata share of net Cash derived from the SMTU Beneficial Interest available for Distribution from the Liquidating Trust on each such Distribution date as provided under the Combined Disclosure Statement and Plan and Liquidating Trust Agreement, as full and complete satisfaction of the Claims against the Liquidating Trust.

The asserted aggregate amount of SMTU General Unsecured Claims is approximately $99,780,470, based on the Debtors' Schedules and Claims asserted against the Estates.

Class 3A is Impaired and is entitled to vote to accept or reject the Combined Disclosure Statement and Plan. The ultimate amount of any recovery under the Combined Disclosure Statement and Plan to Holders of Allowed SMTU General Unsecured Claims is contingent upon the continued investigative efforts of the Committee and any recoveries by the Liquidating Trust on account of the Estate Causes of Action transferred to the Liquidating Trust. It is impossible to estimate at this time the amount, if any, of recoveries by the Liquidating Trust. Each Allowed SMTU General Unsecured Claim will only be entitled to share in the SMTU Beneficial Interest portion of the Liquidating Trust Assets.

## 4.      Class 3B – SLP General Unsecured Claims

Except to the extent that a Holder of an Allowed SLP General Unsecured Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed SLP General Unsecured Claim has not been paid by any applicable Debtor prior to the Effective Date, in full and final satisfaction of each Allowed SLP General Unsecured Claim, each Holder of an Allowed SLP General Unsecured Claim shall receive such Holder's Pro Rata share of the SLP Beneficial Interest in the Liquidating Trust and as beneficiary of the Liquidating Trust shall receive, on a Distribution date, its Pro Rata share of net Cash derived from the SLP Beneficial Interest available for Distribution from the Liquidating Trust on each such distribution date as provided under the Combined Disclosure Statement and Plan and Liquidating Trust Agreement, as full and complete satisfaction of the Claims against the Liquidating Trust.

The asserted aggregate amount of SLP General Unsecured Claims is approximately $80,687,555, based on the Debtors' Schedules and Claims asserted against the Estates.

Class 3B is Impaired and is entitled to vote to accept or reject the Combined Disclosure Statement and Plan. The ultimate amount of any recovery under the Combined Disclosure Statement and Plan to Holders of Allowed SLP General Unsecured Claims is contingent upon the continued investigative efforts of the Committee and any recoveries by the Liquidating Trust on account of the Estate Causes of Action transferred to the Liquidating Trust. It is impossible to estimate at this time the amount, if any, of recoveries by the Liquidating Trust. Each Allowed SLP General Unsecured Claim will only be entitled to share in the SLP Beneficial Interest portion of the Liquidating Trust Assets.

## 5.      Class 3C – SMTC General Unsecured Claims

Except to the extent that a Holder of an Allowed SMTC General Unsecured Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed SMTC General Unsecured Claim has not been paid by any applicable Debtor prior to the Effective Date, in full and final satisfaction of each Allowed SMTC General Unsecured Claim, each Holder of an Allowed SMTC General Unsecured Claim shall receive such Holder's Pro Rata share of the SMTC Beneficial Interest in the Liquidating Trust and as beneficiary of the Liquidating Trust shall receive, on a Distribution date, its Pro Rata share of net Cash derived from the SMTC Beneficial Interest available for Distribution from the Liquidating Trust on each such distribution date as provided under the Combined Disclosure Statement and Plan and Liquidating Trust Agreement, as full and complete satisfaction of the Claims against the Liquidating Trust.

4863-7105-0120, v. 4

The asserted aggregate amount of SMTC General Unsecured Claims is approximately $19,010,126, based on the Debtors' Schedules and Claims asserted against the Estates.

Class 3C is Impaired and is entitled to vote to accept or reject the Combined Disclosure Statement and Plan. The ultimate amount of any recovery under the Combined Disclosure Statement and Plan to Holders of Allowed SMTC General Unsecured Claims is contingent upon the continued investigative efforts of the Committee and any recoveries by the Liquidating Trust on account of the Estate Causes of Action transferred to the Liquidating Trust. It is impossible to estimate at this time the amount, if any, of recoveries by the Liquidating Trust. Each Allowed SMTC General Unsecured Claim will only be entitled to share in the SMTC Beneficial Interest portion of the Liquidating Trust Assets.

**6.      Class 4 – Equity Interests**

Holders of Interests in Class 4 are Impaired under the Combined Disclosure Statement and Plan. Holders of Equity Interests will receive beneficial interests in the Liquidating Trust in exchange for their ownership interests under the Combined Disclosure Statement and Plan and shall receive any assets remaining in the Liquidating Trust after all Allowed General Unsecured Claims in Class 3B have been paid in full.

Class 4 is Impaired and is entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

**C.      Impaired Claims and Equity Interests**

Under the Combined Disclosure Statement and Plan, Holders of Claims in Classes 3A, 3B, 3C and 4 are the only Impaired Classes pursuant to section 1124 of the Bankruptcy Code because the Combined Disclosure Statement and Plan alters the legal, equitable, or contractual rights of the Holders of such Claims and Interests treated in such Classes.

**D.      Cramdown and No Unfair Discrimination**

To the extent that any Impaired Class does not accept the Combined Plan and Disclosure Statement, the Debtors will seek Confirmation pursuant to Bankruptcy Code section 1129(b). This provision allows the Bankruptcy Court to confirm a plan accepted by at least one impaired class so long as it does not unfairly discriminate and is fair and equitable with respect to each class of claims and interests that is impaired and has not accepted the plan. Colloquially, this mechanism is known as a "cramdown."

The Debtors believe the treatment of Claims and Interests described in this Combined Disclosure Statement and Plan is fair and equitable and does not discriminate unfairly. The proposed treatment of Claims and Interests provides that each Holder of such Claim or Interest will be treated identically within its respective class and that, except when agreed to by such Holder, no Holder of any Claim or Interest junior will receive or retain any property on account of such junior Claim or Interest.

4863-7105-0120, v. 4

## VII.    CONFIRMATION PROCEDURES

### A.    Confirmation Procedures

### 1.    Combined Hearing

The Confirmation Hearing before the Bankruptcy Court has been scheduled for **December 19, 2023, at 11:00 a.m. (ET)** at the United States Bankruptcy Court, 824 North Market Street, 3rd Floor, Courtroom #7, Wilmington, DE 19801 to consider (a) approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to Bankruptcy Code section 1125, and (b) Confirmation of the Combined Disclosure Statement and Plan pursuant to Bankruptcy Code section 1129.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing.

### 2.    Procedure for Objections

Any objection to approval or Confirmation of the Combined Disclosure Statement and Plan must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim held by the objector.  Any such objection must be Filed by **December 12, 2023, at 4:00 p.m. (ET)** with the Bankruptcy Court and served on the Debtors' counsel, the Committee, the U.S. Trustee, and all parties who have Filed a request for notice in these Chapter 11 Cases.  Unless an objection is timely Filed and served, it may not be considered by the Bankruptcy Court.

### 3.    Requirements for Confirmation

The Bankruptcy Court will confirm the Combined Disclosure Statement and Plan only if the requirements of Bankruptcy Code section 1129 are met.  As set forth in this Combined Disclosure Statement and Plan, the Debtors believe that the Combined Disclosure Statement and Plan: (a) meets the cramdown requirements; (b) meets the feasibility requirements; (c) is in the best interests of creditors; (d) has been proposed in good faith; and (e) meets all other technical requirements imposed by the Bankruptcy Code.

Additionally, pursuant to section 1126 of the Bankruptcy Code, under the Combined Disclosure Statement and Plan, only Holders of Claims in Impaired Classes are entitled to vote.

### B.    Solicitation and Voting Procedures

### 1.    Substantive Consolidation

For the purposes of the Chapter 11 Cases and the Combined Disclosure Statement and Plan, all Assets of and Claims against the Debtors shall not be deemed to be substantively consolidated.  Claims of Debtors against other Debtors, including Intercompany Claims, shall be disregarded for voting purposes, however, for distribution purposes, Intercompany Claims are accounted for in the attached Liquidation Analysis.

2.      **Eligibility to Vote on the Combined Disclosure Statement and Plan**

Except as otherwise ordered by the Bankruptcy Court, only Holders of Claims or Interests in Classes 3A, 3B, 3C and 4 may vote on the Combined Disclosure Statement and Plan pursuant to Bankruptcy Code section 1126.  To vote on the Combined Disclosure Statement and Plan, a Holder must hold a Claim or Interest in Class 3A, Class 3B, Class 3C or Class 4 or have a Claim or Interest that is Allowed or that has been temporarily Allowed for voting purposes only under Bankruptcy Rule 3018(a).

**ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS OR INTERESTS IN CLASSES 3A, 3B, 3C AND 4**.

3.      **Solicitation Package**

Accompanying the Combined Disclosure Statement and Plan for the purposes of soliciting votes on the Combined Disclosure Statement and Plan are Solicitation Packages, which contain copies of: (a) the notice of the Confirmation Hearing; (b) the Interim Approval and Procedures Order, excluding the exhibits annexed thereto; (c) a Ballot; (d) the Committee Solicitation Letter; and (e) such other documents the Bankruptcy Court may direct or approve or that the Debtors deem appropriate.

Holders of Claims in non-voting classes will receive packages consisting of: (a) the notice of the Confirmation Hearing; and (b) a notice of such Holder's non-voting status.

4.      **Voting Procedures and Voting Deadline**

The Voting Record Date for determining which Holders of Claims or Interests in Classes 3A, 3B, 3C and 4 may vote on the Combined Disclosure Statement and Plan is the earliest of **November 14, 2023** or the entry of the Interim Approval and Procedures Order.

The Voting Deadline by which the Debtors must *RECEIVE* original ballots by mail, overnight delivery, hand delivery, or email is **December 12, 2023, at 4:00 p.m. (ET)**.

If you are entitled to vote to accept or reject the Combined Disclosure Statement and Plan, a Ballot is enclosed.  Please carefully review the Ballot instructions and complete the Ballot by: (a) indicating your acceptance or rejection of the Combined Disclosure Statement and Plan; and (b) signing and returning the Ballot to the Debtors.

If you are a member of the Voting Classes and did not receive a Ballot, received a damaged Ballot, or lost your Ballot, contact Debtors' counsel at:

**CHIPMAN BROWN CICERO & COLE, LLP**
Re: Structurlam Mass Timber U.S., Inc., *et al.*
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Facsimile: (302) 295-0199
Email: chipman@chipmanbrown.com
        olivere@chipmanbrown.com

The following Ballots will not be counted or considered:

(1)     any Ballot received after the Voting Deadline, unless the Bankruptcy Court grants an extension to the Voting Deadline with respect to such Ballot;

(2)     any Ballot that is illegible or contains insufficient information;

(3)     any Ballot cast by a Person or Entity that does not hold a Claim in the Voting Classes;

(4)     any Ballot cast for a Claim designated as unliquidated, contingent, or disputed or as zero (0) or unknown in amount and for which no Rule 3018 Motion has been Filed by the Rule 3018 Motion deadline;

(5)     any Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Combined Disclosure Statement and Plan or that indicates both acceptance and rejection of the Combined Disclosure Statement and Plan;

(6)     simultaneous duplicative Ballots voted inconsistently;

(7)     Ballots partially rejecting and partially accepting the Combined Disclosure Statement and Plan;

(8)     any Ballot received other than the official form sent by Debtors' counsel; or

(9)     any unsigned Ballot.

## 5.      Deemed Acceptance or Rejection

Holders of Claims in Classes 1 and 2 are unimpaired, thus deemed to accept the Combined Disclosure Statement and Plan.  Under Bankruptcy Code section 1126(f), Holders of such Claims are conclusively presumed to have accepted the Combined Disclosure Statement and Plan, and the votes of the Holders of such Claims shall not be solicited.

Holders of Claims in Classes 3A, 3B, 3C and 4 are impaired and entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

**6.      Acceptance by Impaired Classes**

In order for the Combined Disclosure Statement and Plan to be accepted by an Impaired Class of Claims, a majority in number (i.e., more than half) and two-thirds in dollar amount of the Claims voting (of the Impaired Class of Claims) must vote to accept the Combined Disclosure Statement and Plan.  At least one (1) impaired Class of creditors, excluding the votes of insiders, must actually vote to accept the Combined Disclosure Statement and Plan.  The Debtors urge that you vote to accept the Combined Disclosure Statement and Plan.

**YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL THE BALLOT ATTACHED TO THE NOTICE.  PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR.**

**VIII.   IMPLEMENTATION AND EXECUTION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN**

**A.      Effective Date**

The Effective Date shall not occur until the conditions for the Effective Date of Article X.B herein are satisfied or otherwise waived in accordance with the terms of this Combined Disclosure Statement and Plan. Upon the Effective Date, the Debtors shall File a notice of the occurrence of the Effective Date.

**B.      Dissolution of the Debtors**

The Debtors shall be dissolved in accordance with applicable state law by the Liquidating Trustee, without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith.

**C.      Records**

On the Effective Date, the Liquidating Trustee shall provide for the retention and storage of the Debtors' books, records, and files (which were not otherwise transferred to Purchaser pursuant to the APA) that shall have been delivered by the Debtors to the Liquidating Trustee. After receipt of such documents, the Liquidating Trustee shall be authorized to destroy any documents he or she deems necessary or appropriate in his or her reasonable judgment; *provided*, *however*, that the Liquidating Trustee shall not destroy any documents, including but not limited to tax documents, that the Liquidating Trust is required to retain under applicable law.

**D.    Liquidating Trustee**

**1.    Establishment of the Liquidating Trust**

On the Effective Date, the Liquidating Trust will be established pursuant to the Liquidating Trust Agreement, which will be filed with the Bankruptcy Court in the Plan Supplement.  Upon establishment of the Liquidating Trust, all Liquidating Trust Assets shall be deemed transferred to the Liquidating Trust without any further action of any of the Debtors, or any employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors.  The Liquidating Trustee may elect for the Liquidating Trust to be treated as a partnership or a corporation or other Entity for tax purposes only, if the Liquidating Trustee may determine, in his or her reasonable discretion, that such election would be in the best interests of the beneficiaries of the Liquidating Trust.

The Debtors shall have the power and authority to enter into the Liquidating Trust Agreement on the Effective Date.

Prior to the Confirmation Date, the Committee and the Debtors shall designate a Person to serve as the Liquidating Trustee, pursuant to the Liquidating Trust Agreement.  The Liquidating Trustee shall be supervised by a trust oversight committee comprised of three members appointed by the Committee.

**2.    Transfer of Liquidating Trust Assets to Liquidating Trust**

Pursuant to section 1141 of the Bankruptcy Code, all transfers and contributions made pursuant to this Article VIII, Section D.2 shall be made free and clear of all Claims, liens, encumbrances, charges, and other interests.  Upon completion of the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets, or the Liquidating Trust.  For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust's beneficiaries) will treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms of the Combined Disclosure Statement and Plan, as a transfer to the Liquidating Trust's beneficiaries, followed by a transfer by such Liquidating Trust's beneficiaries to the Liquidating Trust, and the Liquidating Trust's beneficiaries will be treated as the grantors and owners thereof.

**3.    Purpose of Liquidating Trust**

The Liquidating Trust shall be established for the purpose of liquidating the Liquidating Trust Assets, prosecuting any Estate Causes of Action transferred to the Liquidating Trust to maximize recoveries for the benefit of the Liquidating Trust's beneficiaries, and making Distributions in accordance with the Combined Disclosure Statement and Plan to the Liquidating Trust's beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d).  The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust's beneficiaries treated as grantors and owners of the trust.

## 4.    Preservation of Rights

Under the Combined Disclosure Statement and Plan, but subject in all respects to the Sale Order and to the APA, the Liquidating Trustee retains any and all rights of, and on behalf of, the Debtors, the Estates, and the Liquidating Trust to commence and pursue any and all Estate Causes of Action, including, without limitation, setoff, offset, and recoupment rights, regardless of whether or not such rights are specifically enumerated in the Combined Disclosure Statement and Plan, Plan Supplement, or elsewhere, and all such rights shall not be deemed modified, waived, or released in any manner, nor shall Confirmation of the Combined Disclosure Statement and Plan or the Confirmation Order act as *res judicata* or limit any of such rights of Liquidating Trustee to commence and pursue any and all Estate Causes of Action, including, without limitation, setoff, offset, and recoupment rights, to the extent the Liquidating Trustee deems appropriate. Any and all Estate Causes of Action, including, without limitation, setoff, offset, and recoupment rights, may, but need not, be pursued by the Debtors prior to the Effective Date and by the Liquidating Trustee after the Effective Date, to the extent warranted.

Unless an Estate Cause of Action against a Person or other Entity is expressly waived, relinquished, released, compromised, or settled in the Combined Disclosure Statement and Plan, or any Final Order, including the Sale Order, the Debtors expressly reserve any and all Estate Causes of Action, including, without limitation, setoff, offset, and recoupment rights, for later enforcement and prosecution by the Liquidating Trustee (including, without limitation, any Estate Causes of Action set forth in the Plan Supplement, or not specifically identified herein or otherwise, or which the Debtors may presently be unaware of, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or circumstances which may change or be different from those which the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise), or laches shall apply to any and all Estate Causes of Action, including, without limitation, setoff, offset, and recoupment rights, upon or after the Confirmation or consummation of the Combined Disclosure Statement and Plan based on the Combined Disclosure Statement and Plan or the Confirmation Order.   In addition, the Liquidating Trust expressly reserves the right to pursue or adopt any and all Causes of Action that are not Estate Causes of Action, including, without limitation, setoff, offset, and recoupment rights, alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, subject to the provisions of the Combined Disclosure Statement and Plan or any Final Order.

The Debtors and the Liquidating Trustee do not intend, and it should not be assumed (nor shall it be deemed) that because any existing or potential Estate Causes of Action, including, without limitation, setoff, offset, and recoupment rights, have not yet been pursued by the Debtors or are not set forth herein, in the Disclosure Statement, or otherwise, that any and all Estate Causes of Action, including, without limitation, setoff, offset, and recoupment rights, has been waived or expunged.

Except as otherwise provided in the Combined Disclosure Statement and Plan, all Estate Causes of Action against any Person or Entity shall, on the Effective Date, automatically vest in the Liquidating Trust free and clear of liens, claims, encumbrances and interests and no Estate

Causes of Action shall be deemed released or discharged by the Combined Disclosure Statement and Plan unless expressly stated therein. The Liquidating Trustee, on behalf of the Liquidating Trust, shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Estate Causes of Action without the consent or approval of any third party and without any further order of the Bankruptcy Court, except as otherwise provided herein or in the Liquidating Trust Agreement. From and after the Effective Date, the Liquidating Trustee, in accordance with Section 1123(b)(3) of the Bankruptcy Code, and on behalf of the Liquidating Trust, shall serve as a representative of the Debtors' Estates and shall retain and possess the sole and exclusive right to commence, pursue, settle, compromise or abandon, as appropriate, any and all Estate Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal. The Debtors and, after the Effective Date, the Liquidating Trustee, on behalf of the Liquidating Trust, reserve all rights to pursue any and all Estate Causes of Action.

**5.  Continued Cooperation**

On (and in the case of Purchaser, after) the Effective Date, the Debtors, the Liquidating Trustee and Purchaser shall provide reasonable and timely cooperation to effectuate the provisions of the Combined Disclosure Statement and Plan as the Liquidating Trustee or the Debtor might reasonably request, including, but not limited to, executing such documents as necessary to carry out the terms of the Combined Disclosure Statement and Plan and administration of the Liquidating Trust.

**6.  Liquidating Trustee**

Retention of Liquidating Trustee. The Liquidating Trustee will be a disinterested Person from Dundon Advisers LLC to be disclosed in the Plan Supplement. The Liquidating Trustee shall carry out the duties as set forth in this section and in the Liquidating Trust Agreement. Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Liquidating Trustee shall be deemed the appointed representative to, and may pursue, litigate, and compromise and settle any such rights, claims, and Estate Causes of Action in accordance with the best interests of and for the benefit of the Liquidating Trust's beneficiaries. In the event that the Liquidating Trustee resigns, is removed, terminated, or otherwise unable to serve as the Liquidating Trustee, then a successor shall be appointed as set forth in the Liquidating Trust Agreement. Any successor Liquidating Trustee appointed shall be bound by and comply with the terms of the Combined Disclosure Statement and Plan, the Confirmation Order, and the Liquidating Trust Agreement.

Responsibilities, Powers, and Authority of Liquidating Trustee. As of the Effective Date, the Liquidating Trustee shall take possession and charge of the Liquidating Trust Assets and, subject to the provisions herein and the Liquidating Trust Agreement, shall have full right, power and discretion to manage the affairs of the Liquidating Trust. Except as otherwise provided herein or in the Liquidating Trust Agreement, the Liquidating Trustee shall have the right and power to enter into any covenants or agreements binding the Liquidating Trust and in furtherance of the purpose of this Combined Disclosure Statement and Plan and the Liquidating Trust Agreement and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Liquidating Trustee to be consistent with and advisable in connection with the performance of the Liquidating Trustee's duties. On and after the Effective Date, the Liquidating Trustee shall have the power and responsibility to do all acts contemplated by the Combined Disclosure

Statement and Plan to be done by the Liquidating Trustee and all other acts that may be necessary or appropriate in connection with the disposition of the Liquidating Trust Assets and the distribution of the proceeds thereof, as contemplated herein, including, without limitation:

(a)      To exercise all power and authority that may be or could have been exercised and take all actions that may be or could have been taken by the Debtors with like effect as if authorized, exercised and taken by unanimous action of the Debtors' partners, members, officers, directors and equity holders; including, without limitation, amendment of the certificates of incorporation and by-laws of the Debtors, merger of any Debtor into another Debtor, the dissolution of any Debtor and the assertion or waiver of the Transferred Privileges (defined below);

(b)      To open and maintain bank and other deposit accounts, escrows and other accounts, calculate and implement Distributions to Holders of Allowed Claims as provided for or contemplated by the Combined Disclosure Statement and Plan and take other actions consistent with the Combined Disclosure Statement and Plan and the implementation thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves in accordance with the Combined Disclosure Statement and Plan and the Liquidating Trust Agreement, in the name of the Debtors or the Liquidating Trustee, even in the event of the dissolution of the Debtors;

(c)      To make a good faith valuation of the Liquidating Trust Assets, as soon as possible after the Effective Date;

(d)      To object to any Claims (Disputed or otherwise) including, without limitation, the power to subordinate and recharacterize Claims by objection, motion, or adversary proceeding, and to defend, compromise and/or settle any Claims prior to or following objection without the necessity of approval of the Combined Disclosure Statement and Plan, and/or to seek Bankruptcy Court approval for any Claims settlement, to the extent thought appropriate by the Liquidating Trustee or to the extent such approval is required by prior order of the Bankruptcy Court;

(e)      To make decisions in consultation with the oversight committee, without further Bankruptcy Court approval, regarding the retention or engagement of professionals, employees and consultants by the Liquidating Trust and to pay, from the Liquidating Trust Assets, the charges incurred by the Liquidating Trust on or after the Effective Date for services of professionals, disbursements, expenses or related support services relating to the winding up of the Debtors and implementation of the Combined Disclosure Statement and Plan, without application to the Bankruptcy Court;

(f)      To cause, on behalf of the Liquidating Trust, the Debtors, and their Estates all necessary tax returns and all other appropriate or necessary documents related to municipal, State, Federal or other tax law to be prepared or filed timely;

(g)      To invest Cash in accordance with section 345 of the Bankruptcy Code or as otherwise permitted by a Final Order of the Bankruptcy Court and as deemed appropriate by the Liquidating Trustee in accordance with the Liquidating Trust Agreement;

(h)      To enter into any agreement or execute any document required by or consistent with the Combined Disclosure Statement and Plan and perform all of the obligations of the Liquidating Trustee thereunder;

(i)　　To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization approved by the oversight committee, any assets that the Liquidating Trustee concludes are of no benefit to the Liquidating Trust beneficiaries or too impractical to distribute;

(j)　　To investigate (including pursuant to Bankruptcy Rule 2004), prosecute and/or settle any Estate Causes of Action (in consultation with the oversight committee), participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction, participate as a party or otherwise in any administrative, arbitrative or other non-judicial proceeding, litigate or settle such Estate Causes of Action on behalf of the Liquidating Trust and pursue to settlement or judgment such actions;

(k)　　To enter into, without Bankruptcy Court approval, the settlement of any Estate Cause of Action;

(l)　　To use Liquidating Trust Assets to purchase or create and carry all appropriate insurance policies, bonds, or other means of assurance and protection of the Liquidating Trust Assets and pay all insurance premiums and other costs the Liquidating Trustee deems necessary or advisable to insure the acts and omissions of the Liquidating Trustee, and if appropriate, the oversight committee;

(m)　　To maintain appropriate books and records (including financial books and records) to govern the liquidation and distribution of the Liquidating Trust Assets;

(n)　　To pay fees incurred pursuant to 28 U.S.C. § 1930(a)(6) and to file with the Bankruptcy Court and serve on the U.S. Trustee quarterly post-confirmation financial reports for each of the Debtors until such time as a final decree is entered closing the Chapter 11 Cases or the Chapter 11 Cases are converted or dismissed;

(o)　　To dissolve the Liquidating Trust if the Liquidating Trustee determines, in consultation with the oversight committee and its retained professionals, that the expenses of administering the Liquidating Trust so as to make a final Distribution are likely to exceed the value of the remaining Liquidating Trust Assets.

(p)　　To provide the oversight committee and the beneficiaries of the Liquidating Trust, within thirty (30) days after the end of the first full month following the Effective Date, and within twenty (20) days after the end of each quarter thereafter, or such other period as subsequently agreed to between the oversight committee and the Liquidating Trustee, a report setting forth: (i) the receipt and disposition by the Liquidating Trustee of property during such period, including the amounts, recipients, and dates of any Distribution; (ii) any Disputed Claims resolved by the Liquidating Trustee; (iii) all known material non-Cash assets of the Liquidating Trust remaining to be disposed of; (iv) the status of all Estate Causes of Action; (v) an itemization of all expenses the Liquidating Trustee anticipates will become due and payable within the subsequent quarter; and (vi) the Liquidating Trustee's forecast of Cash receipts and expenses for the subsequent quarter.  The Liquidating Trustee shall also provide information about the activities of the Liquidating Trust on an informal basis as such recipients may reasonably request from time to time;

(q)     Incur any reasonable and necessary expenses in liquidating and converting the Liquidating Trust Assets to Cash.

(r)     To seek one or more final decrees closing the Chapter 11 Cases and the Canadian Proceedings;

(s)     To be the representative of the Estates and successor of the Debtors for all purposes; and

(t)     To do all other acts or things consistent with the provisions of the Combined Disclosure Statement and Plan that the Liquidating Trustee deems reasonably necessary or desirable with respect to implementing the Combined Disclosure Statement and Plan.

Except as expressly set forth in the Combined Disclosure Statement and Plan and in the Liquidating Trust Agreement, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have absolute discretion to pursue or not to pursue any Estate Causes of Action as it determines is in the best interests of the Liquidating Trust's beneficiaries and consistent with the purposes of the Liquidating Trust.

Subject to the other terms and provisions of the Combined Disclosure Statement and Plan, the Liquidating Trustee shall be granted standing, authority, power, and right to assert, prosecute, and/or settle the Estate Causes of Action and/or make a claim under any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies based upon its powers as a Court-appointed representative of the Estates with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, or similar officials.

Enforcement of Estate Causes of Action. Pursuant to section 1123(b) of the Bankruptcy Code, the Liquidating Trustee, on behalf of and for the benefit of the Liquidating Trust's beneficiaries, shall be vested with and shall retain and may enforce Estate Causes of Action transferred to the Liquidating Trust that were held by, through, or on behalf of, the Debtors and/or the Estates against any other Person, arising before the Effective Date that have not been fully resolved or disposed of prior to the Effective Date, whether or not such Estate Causes of Action are specifically identified in the Combined Disclosure Statement and Plan and whether or not litigation with respect to same has been commenced prior to the Effective Date. The recoveries from any Estate Causes of Action transferred to the Liquidating Trust will be deposited into the Liquidating Trust and distributed in accordance with the Liquidating Trust Agreement and the Combined Disclosure Statement and Plan.

Compensation of Liquidating Trustee. The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement; *provided*, *however,* that such compensation shall only be payable from the Liquidating Trust Assets. The Liquidating Trustee shall fully comply with the terms, conditions, and rights set forth in the Combined Disclosure Statement and Plan, the Confirmation Order and the Liquidating Trust Agreement. The Liquidating Trustee shall not be required to file a fee application to receive compensation.

Limitation of Liability of the Liquidating Trustee. The Liquidating Trust shall indemnify the Liquidating Trustee and his or her professionals against any losses, liabilities, expenses

(including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trustee or his or her professionals may incur or sustain by reason of being or having been a Liquidating Trustee or professionals of the Liquidating Trustee for performing any functions incidental to such service; *provided*, *however*, the foregoing shall not relieve the Liquidating Trustee or his or her professionals from liability for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing or malpractice.

**7.     Trust Expenses**

The Liquidating Trustee may, in the ordinary course of business and without the necessity for any application to, or approval of, the Bankruptcy Court, pay any accrued but unpaid Trust Expenses. All Trust Expenses shall be charged against and paid from the Liquidating Trust Assets.

**8.     Privileges**

Other than the Retained Privileges (defined below), and subject to the terms of the Combined Disclosure Statement and Plan, all of the Debtors' privileges (the "Privileges"), including, but not limited to, corporate privileges, confidential information, work product protections, attorney-client privileges, and other immunities or protections solely relating to the Estate Causes of Action, in each instance arising on or after the earlier of (i) two (2) years prior to the Petition Date and (ii) the applicable statute of limitations governing any such Estate Cause of Action (but in no event more than six (6) years prior to the Petition Date) (the "Transferred Privileges"), shall be transferred, assigned, and delivered to the Liquidating Trust, without waiver, limitation, or release, and shall vest with the Liquidating Trust on the Effective Date and be jointly held by the Debtors and the Liquidating Trust on and after the Effective Date; *provided*, *however*, that notwithstanding the foregoing, Transferred Privileges do not and shall not include Privileges relating in any way to (a) any rights, Claims, or Causes of Action sold to Purchaser in connection with the Sale, (b) the preparation, filing, or prosecution of the Chapter 11 Cases, or (c) any negotiations with Purchaser, the Committee, or the DIP Lender.

The Liquidating Trust and Debtors shall each hold and each be the beneficiary of all Transferred Privileges and be entitled to assert all Transferred Privileges. No Privilege shall be waived by disclosures to the Liquidating Trustee of the Debtors' documents, information, or communications subject to any privilege, protection, or immunity, or protections from disclosure jointly held by the Debtors and the Liquidating Trust.

Notwithstanding the foregoing or anything else in the Combined Disclosure Statement and Plan or otherwise to the contrary, no Privileges other than the Transferred Privileges (all Privileges other than the Transferred Privileges being the "Retained Privileges") shall be transferred, assigned, or delivered to the Liquidating Trust and such Retained Privileges shall not vest with the Liquidating Trust. The Liquidating Trust shall not hold nor be the beneficiary of any Retained Privileges or entitled in any way to assert any Retained Privileges, which shall be held solely by the Debtors.

The Liquidating Trustee shall have until two (2) years after the Effective Date to request documents or information subject to the Transferred Privileges (each an "Information Request"); *provided*, *however*, that with respect to any action involving Transferred Privileges filed on or

before two (2) years after the Effective Date, the Liquidating Trustee may make an Information Request subject to the Transferred Privileges involved in such action until the final resolution of such action, including any appeals.

Notwithstanding anything in this Section 8 to the contrary, to the extent that the Debtors or the Liquidating Trustee seek to waive any of the Privileges and such waiver could result in (i) a waiver of any of any Privilege relating to the Causes of Action that were Acquired Assets, (ii) a waiver of any other Privilege arising out or acquired pursuant to the Sale Order and APA, or (iii) any negative impact on Purchaser, then the Debtors or the Liquidating Trustee, as applicable, shall be required to receive the written consent of Purchaser prior to the Debtors or the Liquidating Trustee, as applicable, waiving such Privilege.

To the extent of any conflict between this Section 8 of the Combined Disclosure Statement and Plan and any other provision of the Combined Disclosure Statement and Plan relating to Privileges, this Section 8 shall control.

## 9.      Termination of Liquidating Trust

The Liquidating Trust shall be dissolved upon the earlier of the distribution of all of its assets to the Liquidating Trust's beneficiaries (or Interest Holders, if applicable) and the third anniversary of the creation of the Liquidating Trust, *provided* that the Liquidating Trustee shall, in its sole discretion, be authorized to extend the dissolution date to the fifth anniversary of the creation of the Liquidating Trust with prior Bankruptcy Court approval.  If warranted by the facts and circumstances involved in resolving any Estate Causes of Action, upon application to, and if approved by, the Bankruptcy Court upon a finding that such further extension is necessary for purposes of resolving such Estate Causes of Action and distributing the proceeds to Liquidating Trust's beneficiaries, the term of the Liquidating Trust may be further extended by the Liquidating Trustee for a specified, finite term.

## 10.     Exculpation Relating to the Liquidating Trust

No Holder of a Claim or Interest or any other party in interest will have, or otherwise pursue, any Claim or Cause of Action against the Liquidating Trustee, the Liquidating Trust, or the employees or professionals thereof (solely in the performance of their duties), for making payments and Distributions in accordance with the Combined Disclosure Statement and Plan or for fulfilling any functions incidental to implementing the provisions of the Combined Disclosure Statement and Plan or the Liquidating Trust, except for any acts or omissions to act that are the result of bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing.

## E.      Plan Transactions

## 1.      Transfer of Assets

On the Effective Date, the Debtors shall cause the Liquidating Trust Assets to be transferred to the Liquidating Trust.

43

## F.    Effective Date Transactions

### 1.    Transfer of Any Remaining Assets to Liquidating Trust

On the Effective Date, except as otherwise expressly provided in the Combined Disclosure Statement and Plan, title to the Liquidating Trust Assets (including specifically the Trust Funding, the rights to collect under the Debtors' existing insurance policies, including the primary director and officer liability, employment practices liability, or fiduciary liability insurance policies and any claims arising thereunder, and all Estate Causes of Action) shall vest in the Liquidating Trust free and clear of all liens, encumbrances, or interests of any kind.  Except as otherwise provided in the Sale Order or the Combined Disclosure Statement and Plan, the Liquidating Trust shall succeed to all rights and interests provided to the Debtors and their Estates under the APA to the extent permitted under the APA and the Sale Order.

## G.    Provisions Governing Distributions Under the Combined Disclosure Statement and Plan

### 1.    Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or the Liquidating Trustee, or their respective agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests.  The Debtors or the Liquidating Trustee shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date.  The Debtors, the Liquidating Trustee, or any party responsible for making Distributions shall be entitled to recognize and deal for all purposes under the Combined Disclosure Statement and Plan only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

### 2.    Method of Payment

Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed as of the Effective Date shall be made on the Effective Date or as soon thereafter as is reasonably practicable.  Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed after the Effective Date shall be made as soon as is reasonably practicable after the date on which such Claim becomes Allowed. Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and, except as otherwise provided in the Combined Disclosure Statement and Plan, no interest shall accrue or be payable with respect to such Claims or any distribution related thereto.  In the event that any payment or act under the Combined Disclosure Statement and Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on, or as soon as reasonably practicable after, the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

All Distributions hereunder shall be made by the Liquidating Trustee, or its named successor or assign, as "Disbursing Agent," on or after the Effective Date or as otherwise provided herein. For the avoidance of doubt, the Liquidating Trust shall act as Disbursing Agent with respect

to all Effective Date Distributions, and (ii) the Liquidating Trustee, or such other Entity designated by the Liquidating Trustee, shall act as Disbursing Agent with respect to all General Unsecured Claims. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Disbursing Agent.

Unless otherwise expressly agreed in writing, all cash payments to be made pursuant to the Combined Disclosure Statement and Plan shall be made by check drawn on a domestic bank or an electronic wire.

## 3.     Surrender of Instruments

Pursuant to Bankruptcy Code section 1143, as a condition precedent to receiving any Distribution under the Combined Disclosure Statement and Plan, each Holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee. Any Holder of such instrument or note that fails to (i) surrender the instrument or note or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent before the third anniversary of the Effective Date shall be deemed to have forfeited all rights and Claims and may not participate in any Distribution hereunder.

## 4.     Delivery of Distributions

Except as otherwise provided herein, Distributions to Holders of Allowed Claims shall be made: (a) at the addresses set forth on the respective Proofs of Claim Filed by such Holders; (b) at the addresses set forth in any written notice of address changes delivered to the Liquidating Trustee after the date of any related Proof of Claim; or (c) at the address reflected in the Schedules if no Proof of Claim is filed and the Liquidating Trustee has not received a written notice of a change of address.

If any Distribution to a Holder of an Allowed Claim is returned as undeliverable, the Liquidating Trustee shall use reasonable efforts to determine such Holder's then-current address, at which time a Distribution shall be made to such Holder without interest. If the Liquidating Trustee cannot determine, or is not notified of, a Holder's then-current address within ninety (90) days after the original Distribution date for such Holder, such Distribution shall be deemed unclaimed property under Bankruptcy Code section 347(b). After such date, all unclaimed property or interest in property shall revert to the Liquidating Trust to be distributed in accordance with the terms of the Liquidating Trust Agreement and the Combined Disclosure Statement and Plan.

## 5.     Objection to and Resolution of Claims

Except as expressly provided herein, or in any order entered in the Chapter 11 Cases prior to the Effective Date, including the Confirmation Order, no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under the Combined Disclosure Statement and Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim or

Interest. On or after the Effective Date, the Liquidating Trust shall be vested with any and all rights and defenses each Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

On and after the Effective Date, the Liquidating Trustee, with respect to all Claims and Interests, shall be entitled to file objections to all Claims and Interests that are otherwise not deemed Allowed Claims or Interests, including Claims listed on the Debtors' Schedules, under the Combined Disclosure Statement and Plan, or otherwise. Any objections to Claims shall be served and filed on or before the later of (i) 180 days after the Effective Date or (ii) such later date as may be fixed by the Bankruptcy Court after reasonable notice and opportunity to object.

## 6.      Preservation of Rights to Settle Claims

Except as otherwise expressly provided herein, nothing contained in the Combined Disclosure Statement and Plan, the Plan Supplement, or in the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtors may have or which the Liquidating Trustee may choose to assert on behalf of the Estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law or rule, common law, equitable principle, or other source of right or obligation, including, without limitation, (i) any and all claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or claim for setoff that seeks affirmative relief against the Debtors, their officers, directors, or representatives, and (ii) the turnover of all property of the Estates. This Section shall not apply to any claims sold, released, waived, relinquished, exculpated, compromised, or settled under the Combined Disclosure Statement and Plan or pursuant to a Final Order, expressly including the Sale Order. Except as expressly provided in the Combined Disclosure Statement and Plan, nothing contained in the Combined Disclosure Statement and Plan, the Plan Supplement, or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense. No Entity may rely on the absence of a specific reference in the Combined Disclosure Statement and Plan, the Plan Supplement, or the Disclosure Statement to any cause of action against it as any indication that the Debtors or the Liquidating Trustee, as applicable, will not pursue any and all available causes of action against them. The Debtors and the Liquidating Trustee expressly reserve all rights to prosecute any and all causes of action against any Person or Entity, except as otherwise expressly provided in the Combined Disclosure Statement and Plan.

## 7.      Miscellaneous Distribution Provisions

Disputed Claims. At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the Holder of such Claim, such Holder's Pro Rata share of the property distributable with respect to the Class in which such Claim belongs as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order. To the extent that all or a portion of a Disputed Claim is Disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is Disallowed, and any property withheld pending the resolution of such Claim shall be reallocated pro rata to the Holders of Allowed Claims in the same Class.

Setoff. The Debtors or Liquidating Trustee, as applicable, retain the right to reduce any Claim by way of setoff in accordance with the Debtors' books and records and in accordance with the Bankruptcy Code.

Minimum Distributions. Notwithstanding anything herein to the contrary, the Liquidating Trustee shall not be required to make Distributions or payments of less than $100.00.

## IX.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.   Background

The Bidding Procedures Order and the Sale Order contemplate the treatment of Executory Contracts and Unexpired Leases.  While nothing in this Combined Disclosure Statement and Plan shall be deemed to supersede the Bidding Procedures Order and Sale Order, Article IX of this Combined Disclosure Statement and Plan is included out of an abundance of caution.

### B.   Executory Contracts and Unexpired Leases

All Executory Contracts and Unexpired Leases of the Debtors that have not been assumed, assigned, or rejected, prior to the Effective Date shall be deemed rejected on the Effective Date.

### C.   Rejection Claims

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Combined Disclosure Statement and Plan results in a Rejection Claim in favor of a counterparty to such executory contract or unexpired lease, such Rejection Claim, if not heretofore evidenced by a timely and properly filed Proof of Claim, shall be forever barred and shall not be enforceable against the Debtors or the Liquidating Trust, or their respective properties or interests in property as agents, successors, or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtors and the Liquidating Trustee on or before the date that is 30 days after the Effective Date.  All Allowed Rejection Claims shall be treated as General Unsecured Claims pursuant to the terms of the Combined Disclosure Statement and Plan.

To the extent that any and all of the Debtors' insurance policies that were not transferred to Purchaser pursuant to the APA, including any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies, are considered executory contracts, then notwithstanding anything contained in the Combined Disclosure Statement and Plan to the contrary, such insurance policies, shall be deemed assumed and assigned to the Liquidating Trust. Unless otherwise determined by the Bankruptcy Court, pursuant to a Final Order, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such policy.  For the avoidance of any doubt, all rights under any insurance policy that is not an executory contract and was not transferred to Purchaser pursuant to the APA and the Sale Order, and all rights under any other insurance policies that were not transferred to Purchaser pursuant to the APA and the Sale Order and under which the Debtors may be beneficiaries, shall be preserved and shall vest with the Liquidating Trust and shall remain in full force and effect after the Effective Date for the term thereof; and nothing herein shall alter or adversely affect the rights of any non-Debtor beneficiaries of or covered Persons or Entities under such insurance policies.  Further, for

the avoidance of any doubt, the Liquidating Trustee may bring or assert Estate Causes of Action under any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies, as insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, or similar officials, as those terms are used in the policies.

## X.   CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

### A.   Conditions Precedent to Confirmation

The following is the list of conditions precedent to Confirmation:

(1)   the Plan Supplement is Filed;

(2)   the Canadian Court shall have issued the Canadian Recognition Order re Procedures and it shall be a Final Order;

(3)   the Confirmation Order shall be in form and substance reasonably acceptable to the Debtors and the Committee;

(4)   the form of Liquidating Trust Agreement shall be agreed upon by the Debtors and the Committee, and the proposed Liquidating Trustee identified and disclosed; and

(5)   the Combined Disclosure Statement and Plan shall not have been materially amended, altered, or modified from the Combined Disclosure Statement and Plan as Filed on October 17, 2023, unless such material amendment, alteration, or modification has been made in accordance with Article XIII herein.

### B.   Conditions Precedent to the Effective Date

The following is the list of conditions precedent to the Effective Date:

(1)   The Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order shall be a Final Order;

(2)   The Canadian Court shall have issued the Canadian Recognition Order re Confirmation and it shall be a Final Order;

(3)   the Liquidating Trust Agreement shall be executed and the Liquidating Trustee shall have been appointed and accepted such appointment; and

(4)   the Combined Disclosure Statement and Plan shall not have been materially amended, altered, or modified from the Combined Disclosure Statement and Plan as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made in accordance with Article XIII herein.

48

## C. Waiver of Conditions

The conditions precedent to Confirmation and conditions precedent to the Effective Date, other than those in paragraphs X.B. (1) and (2) above, may be waived in whole or in part, in writing, by both of the Debtors and the Committee, without further order of the Bankruptcy Court.

## D. Effect of Nonoccurrence of Conditions

If the conditions precedent to the Effective Date are not satisfied or waived, the Debtors may, upon motion and notice to parties in interest, seek to vacate the Confirmation Order.

If the Confirmation Order is vacated: (i) the Combined Disclosure Statement and Plan is null and void in all respects; and (ii) nothing contained in the Combined Disclosure Statement and Plan shall (a) constitute a waiver or release of any Claims by or against the Debtors, or (b) prejudice, in any manner, the rights of the Debtors or any other party in interest.

## XI. EXCULPATION, RELEASES, AND INJUNCTIONS

## A. Injunction

**All injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the Confirmation Date shall remain in full force and effect until the later of (a) the Effective Date, or (b) the date indicated in the order providing for such injunction or stay. Notwithstanding the foregoing, nothing herein shall be otherwise deemed to modify, limit, amend, or supersede any injunctions or stays granted in the Sale Order.**

**Except as otherwise provided in the Combined Disclosure Statement and Plan or to the extent necessary to enforce the terms and conditions of the Combined Disclosure Statement and Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all entities who have held, hold, or may hold Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against any property that is to be distributed under the terms of the Combined Disclosure Statement and Plan on account of any such Claims or Equity Interests: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any lien or encumbrance; (d) asserting a setoff not taken pre-confirmation, right or subrogation of any kind against any debt, liability, or obligation due to the Debtors; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Combined Disclosure Statement and Plan; *provided, however*, that such entities shall not be precluded from exercising their rights pursuant to and consistent with the terms of the Combined Disclosure Statement and Plan or the Confirmation Order; *provided, further*, that the foregoing provisions of this provision shall not apply to any acts, omissions, claims, causes of action, or other obligations expressly set forth in and preserved by this Combined Disclosure Statement and Plan or any defenses thereto. Notwithstanding the foregoing, nothing herein shall be otherwise deemed to modify, limit, amend, or supersede any injunctions or stays granted in the Sale Order.**

49

Notwithstanding any other provision of the Combined Disclosure Statement and Plan to the contrary, pursuant to 1141(d)(3), the debtors shall not receive a discharge.

## B.     Exculpation

Except as otherwise specifically provided in the Combined Disclosure Statement and Plan, none of the Exculpated Parties shall have or incur any liability to any holder of a Claim or Interest (including Estate Causes of Action) for any act or omission occurring on or after the Petition Date and on or before the Effective Date in connection with, related to, or arising out of the Chapter 11 Cases, the Combined Disclosure Statement and Plan, the pursuit of Confirmation, the consummation of the Combined Disclosure Statement and Plan, the administration of the Combined Disclosure Statement and Plan, the property to be liquidated and/or distributed under the Combined Disclosure Statement and Plan or any postpetition and pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of the liquidation of the Debtors, except for their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under this Combined Disclosure Statement and Plan.

The foregoing paragraph shall apply to attorneys to the greatest extent permissible under applicable bar rules and case law.

## C.     Estate Releases

PURSUANT TO BANKRUPTCY CODE SECTION 1123(B), AND NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE COMBINED DISCLOSURE STATEMENT AND PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE RELEASED PARTIES (OTHER THAN THE DEBTORS) SHALL BE DEEMED RELEASED BY THE DEBTORS AND THEIR ESTATES, FROM ANY AND ALL CLAIMS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS OR THE ESTATES, AS APPLICABLE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE (EXCEPT FOR ANY CLAIMS BASED UPON WILLFUL MISCONDUCT OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION) THAT THE DEBTORS, THEIR ESTATES, OR THE LIQUIDATING TRUSTEE, AS APPLICABLE, WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT, OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE PURCHASE, SALE, TRANSFER, OR RESCISSION OF THE PURCHASE, SALE, OR TRANSFER OF ANY DEBT, SECURITY, ASSET, RIGHT, OR INTEREST OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE

COMBINED DISCLOSURE STATEMENT AND PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN AND ANY OTHER AGREEMENTS OR DOCUMENTS EFFECTUATING THE COMBINED DISCLOSURE STATEMENT AND PLAN, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, AND ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE RELATING TO THE DEBTORS OR THE ESTATES.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASE OF THE RELEASED PARTIES BY THE DEBTORS AND THE ESTATES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE RELEASE BY THE DEBTORS AND THE ESTATES IS: (A) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (B) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTORS; (C) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES, AND ALL HOLDERS OF CLAIMS AND INTERESTS; (D) FAIR, EQUITABLE, AND REASONABLE; (E) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (F) A BAR TO THE DEBTORS, THEIR ESTATES, OR THE LIQUIDATING TRUST ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE RELEASE BY DEBTORS AND THE ESTATES.

D.     Releases by Holders of Claims and Interests of Debtors.

EXCEPT AS OTHERWISE PROVIDED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN, ON THE EFFECTIVE DATE AND AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE RELEASING PARTIES SHALL BE DEEMED TO FOREVER RELEASE, WAIVE, AND DISCHARGE EACH OF THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, AND LIABILITIES WHATSOEVER IN CONNECTION WITH OR IN ANY WAY RELATING TO THE DEBTORS, THE CONDUCT OF THE DEBTORS' BUSINESSES, THE CHAPTER 11 CASES, THE COMBINED DISCLOSURE STATEMENT AND PLAN (OTHER THAN THE RIGHTS OF THE DEBTORS, OR A CREDITOR HOLDING AN ALLOWED CLAIM TO ENFORCE THE OBLIGATIONS UNDER THE CONFIRMATION ORDER AND COMBINED DISCLOSURE STATEMENT PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED THEREUNDER), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN

**LAW, EQUITY, OR OTHERWISE, WHETHER FOR TORT, CONTRACT, VIOLATION OF FEDERAL OR STATE SECURITIES LAW OR OTHERWISE, THAT ARE BASED IN WHOLE OR PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE; PROVIDED, HOWEVER, THAT NOTHING IN THIS ARTICLE XI SHALL OPERATE AS A RELEASE, WAIVER OR DISCHARGE OF ANY CAUSES OF ACTION OR LIABILITIES ARISING OUT OF GROSS NEGLIGENCE, WILLFUL MISCONDUCT, FRAUD OR CRIMINAL ACTS OF ANY SUCH RELEASED PARTY.**

## XII.   RETENTION OF JURISDICTION

Following the Confirmation Date and the Effective Date, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(1)   to hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

(2)   to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(3)   to issue such orders in aid of execution and consummation of the Combined Disclosure Statement and Plan, to the extent authorized by Bankruptcy Code section 1142;

(4)   to consider any amendments to or modifications of the Combined Disclosure Statement and Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(5)   to hear and determine all requests for compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under Bankruptcy Code sections 330 or 503;

(6)   to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Combined Disclosure Statement and Plan;

(7)   to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Sale Order;

(8)   to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(9)   to hear any other matter not inconsistent with the Bankruptcy Code;

(10)  to enter the Final Decree;

(11)  to ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Combined Disclosure Statement and Plan;

52

(12)  to decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(13)  to hear and determine any and all motions, adversary proceedings, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases, including the Estate Causes of Action;

(14)  to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Combined Disclosure Statement and Plan, except as otherwise provided herein;

(15)  to determine any other matters that may arise in connection with or related to the Combined Disclosure Statement and Plan, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created or implemented in connection with the Combined Disclosure Statement and Plan;

(16)  to determine any other matters that may arise in connection with or related to the Sale Order or any contract, instrument, release, indenture, or other agreement or document created or implemented in connection with the Sale Order;

(17)  to enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

(18)  to resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof; and

(19)  to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the Bar Date, or the Confirmation Hearing for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose.

## XIII.  MISCELLANEOUS PROVISIONS

### A.  Amendment or Modification of the Combined Disclosure Statement and Plan

Alterations, amendments, or modifications of the Combined Disclosure Statement and Plan may be proposed in writing by the Debtors, but only with the prior written consent of the Committee, at any time before the Confirmation Date; provided that the Combined Disclosure Statement and Plan, as altered, amended, or modified, satisfies the conditions of Bankruptcy Code sections 1122 and 1123 and the Debtors shall have complied with Bankruptcy Code section 1125. The Debtors, but only with the prior written consent of the Committee, may modify the Combined Disclosure Statement and Plan at any time after Confirmation and before substantial consummation, provided that this Combined Disclosure Statement and Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and the circumstances warrant such

modifications. A Holder of a Claim that has accepted the Combined Disclosure Statement and Plan shall be deemed to have accepted such Combined Disclosure Statement and Plan as modified if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

**B.    Exhibits/Schedules**

All exhibits and schedules to this Combined Disclosure Statement and Plan are incorporated into and are part of the Combined Disclosure Statement and Plan as if set forth in full herein.

**C.    Plan Supplement**

The Debtors will File the Plan Supplement at least seven days (7) before the Confirmation objection deadline. The Plan Supplement will contain, among other things: (a) the Liquidating Trust Agreement; (b) identification of the Liquidating Trustee; and (c) any other disclosures as required by the Bankruptcy Code.

**D.    Filing of Additional Documents**

On or before substantial consummation of the Combined Disclosure Statement and Plan, the Liquidating Trustee shall File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Disclosure Statement and Plan.

**E.    Binding Effect of Plan**

The Combined Disclosure Statement and Plan shall be binding upon and inure to the benefit of the Debtors, the Holders of Claims, the Holders of Equity Interests, and their respective successors and assigns. Notwithstanding anything to the contrary herein, nothing in the Combined Disclosure Statement and Plan modifies, alters, or amends the respective rights and obligations of the Debtors or Purchaser under the Sale Order, the APA, or any other document governing the Sale.

**F.    Governing Law**

Except as required by the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, the rights and obligations arising under the Combined Disclosure Statement and Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Delaware.

**G.    Time**

To the extent that any time for the occurrence or happening of an event as set forth in this Combined Disclosure Statement and Plan falls on a day that is not a Business Day, the time for the next occurrence or happening of said event shall be extended to the next Business Day.

### H.    Severability

Should any provision of this Combined Disclosure Statement and Plan be deemed unenforceable after the Effective Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Combined Disclosure Statement and Plan.

### I.    Revocation

The Debtors reserve the right to revoke and withdraw the Combined Disclosure Statement and Plan prior to the entry of the Confirmation Order. If the Debtors revoke or withdraw the Combined Disclosure Statement and Plan, the Combined Disclosure Statement and Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtors.

### J.    Dissolution of the Committee

On the Effective Date, the Committee shall be dissolved and its members deemed released of any continuing duties, responsibilities, and obligations in connection with the Chapter 11 Cases or the Combined Disclosure Statement and Plan and its implementation, and the retention and employment of the Committee's Professionals shall terminate, except with respect to: (i) any matters concerning Distributions; (ii) prosecuting applications for Professionals' compensation and reimbursement of expenses incurred as a member of the Committee; or (iii) asserting, disputing, and participating in resolution of Professional Fee Claims. Upon the resolution of (i) through (iii), the Committee shall be immediately dissolved, released, and discharged.

### K.    Inconsistency

To the extent that the Combined Disclosure Statement and Plan conflicts with or is inconsistent with any agreement related to the Combined Disclosure Statement and Plan, the provisions of the Combined Disclosure Statement and Plan shall control; *provided*, *however*, that nothing in the Combined Disclosure Statement and Plan shall be deemed to supersede, amend, or modify the provisions of the Sale Order, Bidding Procedures Order, and APA.

In the event of any inconsistency between any provision of any of the foregoing documents, and any provision of the Confirmation Order, the Confirmation Order shall control and take precedence.

### L.    No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Combined Disclosure Statement and Plan shall be deemed an admission by any Entity with respect to any matter set forth herein.

## M. Reservation of Rights

Except as expressly set forth herein, the Combined Disclosure Statement and Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Combined Disclosure Statement and Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect to the Combined Disclosure Statement and Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors, Holders of Claims, or Holders of Equity Interests before the Effective Date.

## XIV. RECOMMENDATION

In the opinion of the Debtors and the Combined Disclosure Statement and Plan is superior and preferable to any alternative described in this Combined Disclosure Statement and Plan. Further, the value being provided to Creditors under the Combined Disclosure Statement and Plan was subject to a competitive process through which parties other than Purchaser could have provided higher and better bids, but determined, in their reasonable business judgment, that Purchaser submitted the highest and best bid. Accordingly, the Debtors and the Committee recommend that Holders of Claims entitled to vote on the Combined Disclosure Statement and Plan vote to accept the Combined Disclosure Statement and Plan and support Confirmation.

Dated: December 14, 2023  
      Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ William E. Chipman, Jr.*  
William E. Chipman, Jr. (No. 3818)  
Robert A. Weber (No. 4013)  
Mark L. Desgrosseilliers (No. 4083)  
Mark D. Olivere (No. 4291)  
Hercules Plaza  
1313 North Market Street, Suite 5400  
Wilmington, Delaware 19801  
Telephone:    (302) 295-0191  
Facsimile:    (302) 295-0199  
Email:    chipman@chipmanbrown.com  
    weber@chipmanbrown.com  
    desgross@chipmanbrown.com  
    olivere@chipmanbrown.com

*Counsel to the Debtors and*  
*Debtors-In-Possession*

# EXHIBIT A

**Structurium**
**Liquidation Analysis**
**Subject to Revision**
$'000

| | | SMTU | | | | SMTC | | | | SLP | | | | NOLLC | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Notes | Book Value | Estimated Recovery under the Plan Scenario A | Estimated Recovery under the Plan Scenario B | Estimated Liquidation Value under Chapter 7 | Book Value | Estimated Recovery under the Plan Scenario A | Estimated Recovery under the Plan Scenario B | Estimated Liquidation Value under Chapter 7 | Book Value | Estimated Recovery under the Plan Scenario A | Estimated Recovery under the Plan Scenario B | Estimated Liquidation Value under Chapter 7 | Book Value | Estimated Recovery under the Plan Scenario A | Estimated Recovery under the Plan Scenario B |
| Cash | A | 21,593 | 21,593 | 22,678 | 21,593 | 1,647 | 1,647 | 2,022 | 1,647 | - | - | - | - | - | - | - |
| Additional recoveries | B | - | - | - | - | - | 2,773 | 5,456 | 2,562 | - | - | - | - | - | - | - |
| **Estimated Proceeds from Liquidation of Assets** | | **21,593** | **21,593** | **22,678** | **21,593** | **1,647** | **4,421** | **7,479** | **4,209** | - | - | - | - | - | - | - |
| Administrative Claims | | | | | | | | | | | | | | | | |
| Chapter 7 Trustee Fees | C | | N/A | N/A | 648 | | N/A | N/A | 126 | | - | - | - | | - | - |
| Net Trustee Fees | D | | 350 | 250 | 750 | | 250 | 150 | 350 | | - | - | - | | - | - |
| Chapter 7/Post Confirmation Trustee Professional Fees | E | | 150 | 100 | 250 | | 100 | 75 | 150 | | - | - | - | | - | - |
| Wind down Costs | F | | | | | | | | | | | | | | | |
| **Net Proceeds Available after Administrative Claims** | | | **21,093** | **22,328** | **19,945** | | **4,071** | **7,254** | **3,583** | | - | - | - | | - | - |
| Priority Claims | G | - | | | | 42 | 42 | 42 | 42 | - | | | | - | | |
| **Return to General Unsecured Creditors** | | | **21,093** | **22,328** | **19,945** | | **4,029** | **7,212** | **3,541** | | - | - | - | | - | - |
| General Unsecured Claims | H | 103,045 | 103,045 | 56,531 | 103,045 | 42,626 | 42,626 | 42,626 | 42,626 | 81,131 | 81,131 | 81,131 | 81,131 | 7 | 7 | 7 |
| Preliminary rejections – 1st round | H | | (3,265) | (3,265) | (3,265) | | (23,616) | (23,616) | (23,616) | | (444) | (444) | (444) | | (7) | (7) |
| **Adjusted - General Unsecured Claims** | H | | **99,780** | **53,266** | **99,780** | | **19,010** | **19,010** | **19,010** | | **80,688** | **80,688** | **80,688** | | | |
| **Estimated Recovery for General Unsecured Creditors** | H | | **21.1%** | **41.9%** | **20.0%** | | **21.2%** | **37.9%** | **18.6%** | | **0.0%** | **0.0%** | **0.0%** | | **N/A** | **N/A** |

**Introduction**

Under the "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless the plan provides holders of allowed claims or interest that does not otherwise vote in favor of the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

As set forth in the attached hypothetical liquidation analysis (the "Liquidation Analysis"), and subject to the assumptions and limitations set forth herein and therein, and in the Combined Disclosure Statement and Plan (the "Plan") of Structurlam Mass Timber U.S., Inc. ("SMTU"); Natural Outcomes, LLC ("NOLLC"); Structurlam Mass Timber Corporation ("SMTC"); and SLP Holdings Ltd. ("SLP, together with SMTU, NOLLC and SMTC, "Structurlam" or the "Debtors"), and the Official Committee of Unsecured Creditors (the "Committee"), the Plan satisfies the best interests of creditors test.

The Liquidation Analysis sets forth, as part of its sensitivity analysis and estimated range of recovery, values for each Class of Claims and Interests upon the disposition of assets pursuant to a hypothetical Chapter 7 liquidation.  As outlined herein, the Debtors and the Committee believe that confirmation of the Plan will serve the best interests of all interested parties.  The recoveries realized by creditors under the Plan at this point in the Debtors' Chapter 11 Cases, are not less than what such creditors might otherwise realize from a liquidation under chapter 7 of the Bankruptcy Code.

**Statement of Limitations**

The preparation of a liquidation analysis is an uncertain process involving the use of estimates and assumptions that, although considered reasonable by the Debtors based upon the Debtors' business judgment and input from its advisors, are subject to significant uncertainties and contingencies, including environmental, business, and economic considerations.  Many such contingencies are difficult to predict and generally and unequivocally beyond the control of the Debtors and their advisors. There will be differences between the assumptions and the actual results and events and those differences may be material.  Unanticipated events and circumstances could materially affect the ultimate results in an actual Chapter 7 liquidation. The underlying financial information in the Liquidation Analysis and values stated herein have not been subject to any review, compilation, or audit by any independent accounting firm. In addition, the assumptions and decisions are subject to change. As a result, the actual amount of claims against the Debtors' estate could vary significantly from the estimates stated herein, depending on the nature and amount of claims asserted during the pendency of any Chapter 7 case.

**Structurlam Mass Timber U.S. Inc.,** *et al*
**Liquidation Analysis**
**Subject to Revision**

The Liquidation Analysis does not include estimates for: (i) the tax consequences, if any that may be triggered upon the liquidation and sale of assets, (ii) recoveries resulting from any potential preference, fraudulent transfer, or other litigation or avoidance actions, or (iii) certain claims that may be entitled to priority under the Bankruptcy Code, including administrative priority claims under sections 503(b) and 507(b) of the Bankruptcy Code.  More specific assumptions are detailed in the notes below.

ACCORDINGLY, NONE OF THE (I) DEBTORS NOR ANY OF THEIR ADVISORS, COUNSEL, OFFICERS, STAKEHOLDERS, BOARD MEMBERS, OR ANY PERSONNEL ASSOCIATED WITH THE DEBTORS OR (II) THE COMMITTEE NOR ANY OF ITS ADVISORS, COUNSEL, OR MEMBERS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS OF A LIQUIDATION OF THE DEBTORS WOULD OR WOULD NOT, IN WHOLE OR IN PART, APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED HEREIN. THE ACTUAL LIQUIDATION VALUE OF THE DEBTORS IS SPECULATIVE, AND RESULTS COULD AND WILL VARY MATERIALLY FROM ESTIMATES PROVIDED HEREIN.  ALL READERS MUST PERFORM THEIR OWN ANALYSIS DRAWING THEIR OWN CONCLUSIONS.

In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of Claims listed on the Debtors' Schedules of Assets and Liabilities, Proofs of Claim filed in the Chapter 11 Case, and the Debtors' financial statements to account for other known liabilities, as necessary.  In addition,  the Liquidation Analysis includes estimates for Claims not currently asserted in the Chapter 11 Cases, but which could be asserted and allowed in a chapter 7 liquidation, including unpaid Chapter 11 Administrative Claims, and chapter 7 administrative claims such as wind down costs, trustee fees, and professional fees. To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims used for purposes of preparing this Liquidation Analysis. Therefore, the Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and Interests under the Plan. NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTORS, OR A WAIVER OF ANY RIGHTS TO OBJECT TO ANY CLAIM INCLUDED HEREIN. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.

**Structurlam Mass Timber U.S. Inc.,** *et al*
**Liquidation Analysis**
**Subject to Revision**

<u>**Basis of Presentation**</u>

The Liquidation Analysis has been prepared assuming that the Debtors convert the current Chapter 11 cases to Chapter 7 of the Bankruptcy Code on or about December 15, 2023 (the "<u>Liquidation Date</u>"), which is the currently anticipated effective date of the Plan. Except as otherwise noted herein, the Liquidation Analysis is based upon the projected balances and unaudited financial information of the Debtors which values, in total, are assumed to be representative of the Debtors' assets and liabilities as of the Liquidation Date.

<u>**Conclusion**</u>

As illustrated by the Liquidation Analysis, under a Chapter 7 liquidation, holders of General Unsecured Claims and other Impaired Claims and Interests would receive the following recoveries outside of highly speculative litigation recoveries:
- SMTU: 20.0%;
- SMTC: 18.6%; and
- SLP and NOLLC: 0%.

Such other (speculative) recoveries would potentially be available in either scenario, without the additional administrative burden of a Chapter 7. Accordingly, and as set forth in greater detail below, the Plan satisfies the "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code.

**Structurlam Mass Timber U.S. Inc.,** *et al*
**Liquidation Analysis**
**Subject to Revision**

### Detailed Assumptions

General Note:
Structurlam sold substantially all of its assets to a purchaser through a Chapter 11 363 Sale Process on June 15, 2023. The liquidation analysis contains projected realization estimates for the remaining "left behind" assets which consist primarily of cash on hand and aged accounts receivables. This liquidation analysis uses "Scenario A" and "Scenario B" to represent a range of realizations for the Debtors' respective creditors depending on ultimate asset recoveries and settled claims.

[A] **Cash and Cash Equivalents:** Consists of projected unrestricted cash in the Debtors' bank accounts as of the Liquidation Date. The estimated recovery from this asset category will vary depending on final accounts receivables collections and the final amount of Chapter 11 Administrative Claims and wind-down costs.

[B] **Additional Recoveries**: Additional recoveries for SMTC represent the potential distribution from SMTU to SMTC for the intercompany claim of approximately $12.8 million due from SMTU to SMTC. None of the scenarios include any potential proceeds from potential Causes of Action that may be undertaken by the Debtors/ Post Confirmation Trustee/Chapter 7 Trustee.

[C] **Administrative Claims**: The Liquidation Analysis assumes a chapter 7 proceeding takes approximately 3 to 6 months from the Liquidation Date. This timeline would afford time to complete the claims adjudication and assess the collectability of any potential recoveries.

[D] **Chapter 7 Trustee Fees:** Trustee fees include all fees that would be paid to the chapter 7 trustee, consistent with the Bankruptcy Code requirements. The Chapter 7 Trustee Fees are estimated using a graduating scale, as set forth in section 326 of the Bankruptcy Code, ranging from 25% on the first distribution of $5,000 to 3.0% for the distribution in excess of $1,000,000.

[E] **Chapter 7/Post Confirmation Trustee Professional Fees**: Professional Fees and US Trustees Fees are projected to be funded immediately prior to the assumed effective date with funds designated for payment of professional fees and U.S. Trustee fees. If funding were delayed, the Debtors' cash and equivalents would be increased by an identical amount. The estimate does not take into account any additional professional fees that may be incurred if the Chapter 7 Trustee/Post Confirmation Trustee have to take part in any contentious litigation proceedings.

[F] **Wind down costs**: Consists of expenses for personnel in relation to claims review and potential accounts receivable collections.

[G] **Priority/Section 503(b)(9) Claims**: Pursuant to claims filed as of Bar Date. Amount subject to review by the Debtor.

**Structurlam Mass Timber U.S. Inc.,** *et al*
**Liquidation Analysis**
**Subject to Revision**

[H] <u>**General Unsecured Claims**</u>: This amount is subject to material change due to ongoing review and revision by the Debtor. Adjusted General Unsecured Claims represent claim amounts upon preliminary review by the Debtors and are subject to further changes.

SMTU's Scenario A includes the largest claim at $81 million (face value of the proof of claim). Such amount has not been reviewed nor adjudicated. SMTU's Scenario B represents the potential adjustment of the said claim from $81 million to $34 million, pursuant to the contingent, unliquidated and disputed claim as filed in the Voluntary Petition [Docket No. 1]. The actual adjudicated claim amount may potentially range below $34 million to $81 million with further potential counterclaim offsets to be determined.

**<u>EXHIBIT B</u>**

Notice of Effective Date

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| STRUCTURLAM MASS TIMBER U.S., INC., *et al.*,[1] | Case No. 23-10497 (CTG) |
| | (Jointly Administered) |
| Debtors. | |

### NOTICE OF (I) ENTRY OF FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF STRUCTURLAM MASS TIMBER U.S., INC., ET AL. AND (II) EFFECTIVE DATE

PLEASE TAKE NOTICE that an order (the "**Confirmation Order**") of the Honorable Craig T. Goldblatt, United States Bankruptcy Judge for the District of Delaware, confirming and approving the *First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Structurlam Mass Timber U.S., Inc., et al.* [Docket No. 450] (including all exhibits thereto and as the same may be amended, modified, or supplemented from time to time, the "**Combined Plan and Disclosure Statement**") was entered on December ●, 2023 [Docket No. ●].

PLEASE TAKE FURTHER NOTICE that, all conditions precedent to effectiveness pursuant to Article X.B of the Combined Plan and Disclosure Statement have been satisfied or waived. Therefore, today, ●, 2024, is the Effective Date of the Combined Plan and Disclosure Statement.

PLEASE TAKE FURTHER NOTICE that the Combined Plan and Disclosure Statement and its provisions are binding on, among others, the Debtors, all Holders of Claims and Equity Interests (irrespective of whether such Claims or Equity Interests are impaired under the Combined Plan and Disclosure Statement or whether the Holders of such Claims have voted to accept or reject the Combined Plan and Disclosure Statement), and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor, as provided in the Combined Plan and Disclosure Statement.

PLEASE TAKE FURTHER NOTICE all final requests for payment of Professional Fee Claims (the "**Final Fee Applications**") must be filed no later than ●, 2024 (*i.e.*, sixty (60) days after the Effective Date). The procedures for processing Final Fee Applications are set forth in the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or Canadian business number, as applicable, include: Structurlam Mass Timber U.S., Inc. (6287) ("**SMTU**"); Natural Outcomes, LLC (n/a) ("**Natural**"); Structurlam Mass Timber Corporation (5050) ("**SMTC**"); and SLP Holdings Ltd. (3114) ("**SLP**"). The location of the Debtors' headquarters is: 2176 Government Street, Penticton, British Columbia, Canada V2A 8B5. The address of the registered agent for Structurlam Mass Timber U.S., Inc. is: 8 The Green, Suite A, Dover, Delaware 19901.

Combined Plan and Disclosure Statement.  If a Professional does not timely submit a Final Fee Application, such Professional shall be forever barred from seeking payment of such Professional Fee Claim from the Debtor, the Post-Effective Date Debtor, or its Estate.

**PLEASE TAKE FURTHER NOTICE** that requests for payment of Administrative Expense Claims (other than Professional Fee Claims) against the Debtors that arose, accrued or otherwise became due and payable at any time after the Petition Date, but on or before the Effective Date (the "**Administrative Expense Period**") must be filed with the Bankruptcy Court and served on the Debtors or the Creditor Trust, as applicable, no later than ●, 2024 (*i.e.*, thirty (30) days after the Effective Date) (the "**Administrative Expense Bar Date**").  Holders of Administrative Expense Claims that arose, accrued, or otherwise became due during the Administrative Expense Period that do not file requests for the allowance and payment thereof on or before the Administrative Expense Bar Date shall forever be barred from asserting such Administrative Expense Claims against the Debtor or the Creditor Trust.  Unless the Debtors, the Liquidating Trustee on behalf of the Liquidating Trust, or any other party in interest objects to an Administrative Expense Claim, such Administrative Expense Claim shall be deemed Allowed in the amount requested.  In the event that the Debtors, the Liquidating Trustee on behalf of the Liquidating Trust, or any other party in interest objects to an Administrative Expense Claim, and the Administrative Expense Claim is not otherwise resolved, the Bankruptcy Court shall determine the Allowed amount of such Administrative Expense Claim.

**PLEASE TAKE FURTHER NOTICE** that as set forth in Article IX of the Combined Plan and Disclosure Statement, all Executory Contracts and Unexpired Leases that have not been assumed are rejected as of the Effective Date.  If the rejection by the Debtors, pursuant to the Combined Plan and Disclosure Statement, of an Executory Contract or Unexpired Leases gives rise to a Claim, a Proof of Claim must be filed (a) if by overnight mail, courier service, hand delivery, regular mail, or in person mail, with: Structurlam Mass Timber Claims Processing Center c/o KCC 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245, or (b) if electronically, through the online Proof of Claim Form available at https://www.kccllc.net/structurlam, no later than ●, 2023 (*i.e.*, thirty (30) days after the Effective Date).  Please note that the Clerk's office is not permitted to give legal advice.  Any Proofs of claim not filed and served within such time periods will be forever barred from assertion against the Debtors, their Estates, and the Creditor Trust.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Bankruptcy Rule 2002, after the Effective Date, to continue to receive notices pursuant to Bankruptcy Rule 2002 all Creditors and other parties in interest must file a renewed notice of appearance with the Bankruptcy Court requesting receipt of documents pursuant to Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE** that copies of the Combined Plan and Disclosure Statement are available for review without charge at the website maintained by the Stretto, the Claims and Noticing Agent, https://www.kccllc.net/structurlam.

Dated:  December ___, 2023
      Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

/s/DRAFT_____
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Facsimile:    (302) 295-0199
Email:        chipman@chipmanbrown.com
           olivere@chipmanbrown.com

*Counsel for the Debtors and the*
*Debtors-in-Possession*

4878-3270-3382, v. 3