**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>STRUCTURLAM MASS TIMBER U.S., INC. *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10497 (CTG)<br><br>(Jointly Administered) |
| HEATHER L. BARLOW AS \|LIQUIDATING TRUSTEE OF THE STRUCTURLAM LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>-against-<br><br>WALMART INC.,<br><br>Defendant. | Adv. Case No. 25-50541 (CTG)<br><br>**Objection Deadline: July 27, 2026 at 4:00 p.m. (ET)**<br>**Hearing Date: August 5, 2026 at 3:00 p.m. (ET)** |

**MOTION OF HEATHER L. BARLOW, SOLELY AS TRUSTEE OF THE STRUCTURLAM LIQUIDATING TRUST, FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND FED. R. BANKR. P. 9019(b) AUTHORIZING AND APPROVING A SETTLEMENT BETWEEN THE TRUSTEE, THE STRUCTURLAM LIQUIDATING TRUST, WALMART, INC., CINDI MARSIGLIO, CHRISTINE ALLEN AND BRIAN HOOPER**

Heather Barlow, solely in her capacity as the Trustee ("Trustee") of the Structurlam Liquidating Trust (the "Trust"), moves this Court (this "Motion"), for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A,** pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9019(b) of the Federal Rules of Bankruptcy Procedure, and section 2.1(k) of the amended Liquidating Trust Agreement [Bankr. D.I. 526-1], to approve a settlement (the "Settlement Agreement"), by and

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number or Canadian business number, as applicable, include: Structurlam Mass Timber U.S., Inc. (6287); Natural Outcomes, LLC (n/a); Structurlam Mass Timber Corporation (5050); and SLP Holdings Ltd. (3114). The location of the Debtors' headquarters is: 2176 Government Street, Penticton, British Columbia, Canada V2A 8B5. The address of the registered agent for Structurlam Mass Timber U.S., Inc. is: 8 The Green, Suite A, Dover, Delaware 19901.

between (a) Heather L. Barlow, acting solely in her capacity as the trustee (the "Trustee") of the Structurlam Liquidating Trust ("the "Trust") of the bankruptcy estates of Structurlam Mass Timber U.S., Inc. ("Structurlam U.S."), Structurlam Mass Timber Corporation, SLP Holdings Ltd. ("SLP") and Natural Outcomes, LLC (collectively, "Structurlam" or the "Debtors") and (b) Walmart Inc. ("Walmart"), and its designees to the SLP Board of Directors, Cindi Marsiglio ("Marsiglio"), Christine Allen ("Allen"), and Brian Hooper ("Hooper" and collectively with Allen and Marsiglio, the "Walmart Directors" and collectively with the Trustee, Trust and Walmart, the "Parties") as follows:

## PRELIMINARY STATEMENT

As the Court is aware, this adversary proceeding arises from a dispute between Walmart and Structurlam relating to the construction of Walmart's new home office campus in Bentonville, Arkansas (the "Project"). After the Debtors filed for bankruptcy, Walmart filed proofs of claim against debtors Structurlam U.S. and SLP in the total amount of $80,514,079.44 (the "Walmart Proofs of Claim.").

Following the Trustee's appointment, the Trustee filed suit against Walmart on April 17, 2025, which was designated Adv. Pro. No. 25-50541 (CTG) (the "Walmart Adversary Proceeding"), objecting to the Walmart Proofs of Claim and asserting claims against Walmart for, among other causes of action, breach of contract and equitable subordination. Walmart filed counterclaims against the Trust in the Walmart Adversary Proceeding, asserting Structurlam U.S. and SLP breached the operative contract for the supply of mass timber to Walmart and asserting damages in the full amount of the Walmart Proofs of Claim. On June 24, 2025, the Trustee, on behalf of the Trust, also filed a separate suit against the Walmart Directors designated Adv. Pro. No. 25-51040 (the "Walmart Directors Adversary Proceeding") alleging breaches of fiduciary duty

by the Walmart Directors while acting as board members of SLP. The Court dismissed the Walmart Directors Adversary Proceeding for the reasons set forth in its Order dated April 6, 2026.

The Trustee and Walmart have been engaged in an exhaustive discovery process. But for this settlement, the Parties would now be commencing several months of fact witness depositions followed by competing expert discovery and expert depositions. In an effort to globally resolve all claims between the Parties, on June 25, 2026, the Trustee and Walmart engaged in a mediation with retired bankruptcy judge Christopher S. Sontchi ("Judge Sontchi") that successfully ended with a consensual settlement of all issues as well as a term sheet executed by the Trustee, Walmart, and the Walmart Directors. The mediated settlement provides for the Trust to make a $7.6 million payment to Walmart, an immediate cessation of all litigation between the Parties, and mutual general releases. The settlement, which was negotiated in good faith, and at arm's length, will (i) resolve a hard-fought and expensive litigation between the Parties, (ii) eliminate the Trust's continued litigation expenses, (iii) resolve the uncertainties inherent in continued litigation by bringing these matters to an end, (iv) resolve ongoing contested issues relating to the allowance or disallowance of the Walmart Proofs of Claim, (v) resolve Walmart's dispute over various intercompany issues, and (vi) allow the Trustee's administration of the Trust to continue for the benefit of all creditors unburdened by the Walmart Proofs of Claim, the Walmart Adversary Proceeding, and the Walmart Directors Adversary Proceeding.

The proposed settlement falls well within the range of reasonableness and is fair, reasonable, and in the best interest of the Trust beneficiaries. Accordingly, the Trustee requests that the Court grant the motion and approve the proposed settlement.

## **JURISDICTION AND VENUE**

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue of this proceeding and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code and Rule 9019(b) of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND[2]

3. Founded in 1962, the Debtors were a leading manufacturer of mass timber solutions and ground protection solutions used in construction and industrial markets. Prior to filing for bankruptcy, the Debtors manufactured Cross Laminated Timber ("CLT"), and Glued Laminated Timber ("Glulam") used in construction and sold on industrial markets, and had Canadian facilities in Penticton, Okanagan Falls, and Oliver, British Columbia and a U.S. facility in Conway, Arkansas.

4. On or about December 3, 2019, Walmart, Structurlam U.S. and SLP entered into the *Walmart Realty Supplier Agreement — Goods Not For Resale* (the "TSA 1"). Under TSA 1, Walmart agreed to purchase CLT, Glulam, steel and hardware (collectively, the "Goods") from Structurlam U.S. for use in constructing Walmart's new home office campus. The TSA 1 served as the basis for the Debtors to establish a new manufacturing facility in Conway, Arkansas, and for the Debtors to raise debt and equity financing to fund Structurlam U.S.

5. On or about June 24, 2022, Structurlam U.S., SLP and Walmart entered into an *Amended and Restated Walmart Realty Supplier Agreement — Goods Not For Resale* (the "TSA 2"), which amended the TSA 1. TSA 2 established a new delivery and deposit schedule for the Goods, among other things.

[2] The recitation of events in this Background are for reference only. Many of the events stated herein are the subject of disputes between the Parties, and they are stated without any acknowledgement or admission of the accuracy of disputed facts.

6. In November 2022, Structurlam U.S. discovered an alleged fire-rating issue that caused concern with how some of the Glulam was being manufactured for the Project. Between November 2022 and January 2023, Structurlam U.S. and Walmart attempted to resolve the concern over the issue and anticipated delays attributable to the issue, but Walmart ultimately terminated the TSA 2 on January 11, 2023.

7. On April 21, 2023 (the "Petition Date"), the Debtors each filed voluntary bankruptcy petitions in the United States Bankruptcy Court for the District of Delaware (the "Court").

8. On July 10, 2023, Walmart filed the Walmart Proofs of Claim.

9. On December 19, 2023, the Court entered an Order [D.I. 540] (the "Confirmation Order") confirming the First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation [D.I. 540-1] (the "Plan"). Pursuant to the Plan and Confirmation Order, on the effective date of the Plan, the Trustee was appointed as the Trustee of the Structurlam Liquidating Trust. In her capacity as the Trustee, Ms. Barlow was tasked with, *inter alia*, investigating and pursuing recoveries of any assets on behalf of the Trust, and reconciling claims asserted against the Debtors' estates.

10. Reserved to Walmart in the Confirmation Order was the right to object to the allowance of an intercompany claim (the "Intercompany Claim") asserted by Structurlam Mass Timber Corporation ("Structurlam Canada") against Structurlam U.S. until the Walmart Proofs of Claim were allowed, were resolved consensually, or were finally adjudicated by court order. [D.I. 540 at ¶32].

11. On April 17, 2025, the Trustee filed the Walmart Adversary Proceeding, asserting that Walmart had breached the TSA 2 [Adv. D.I. 1].

12. On June 30, 2025, Walmart moved to partially dismiss the Walmart Adversary Proceeding. [Adv. D.I. 16].

13. Walmart also answered the Trustee's complaint and filed counterclaims against the Trust asserting that Structurlam U.S. breached the TSA 2, and that Walmart was entitled to allowance of the Walmart Proofs of Claim in their full amount. [Adv. D.I. 18].

14. On August 28, 2025, the Trustee answered Walmart's counterclaims. [Adv. D.I. 35]. That same day, the Trustee responded to Walmart's Motion for Partial Dismissal [Adv. D.I. 34].

15. For the reasons described in its Order dated December 23, 2025, this Court dismissed certain of the Trustee's claims and requests for certain damages [Adv. D.I. 96].

16. On June 24, 2025, the Trustee separately filed the Walmart Directors Adversary Proceeding. The Walmart Directors Adversary Proceeding asserted that the Walmart Directors had breached their fiduciary duties.

17. On September 17, 2025, the Walmart Directors moved to dismiss the Walmart Directors Adversary Proceeding.

18. The Walmart Directors Adversary Proceeding was dismissed by this Court for the reasons set forth in its Order dated April 6, 2026. The Trustee had indicated that she may seek to refile the claims asserted in the Walmart Directors Adversary Proceeding.

19. Since the initiation of the Walmart Adversary Proceeding, the Trustee and Walmart have engaged in substantial document discovery and also sought and reviewed documents from numerous third parties, including parties located in Canada. Most recently, Walmart and the Trustee have exchanged letters asserting various deficiencies in their respective document productions and privilege logs which are presently unresolved.

20. With continued discovery disputes pending, numerous party and non-party fact depositions scheduled to start on July 9, 2026 and continue into September 2026, and expert discovery to follow immediately thereafter, the Parties agreed to attempt an early mediation of their disputes.

21. To that end, Walmart and the Trustee engaged Judge Sontchi to act as mediator and scheduled mediation for June 25, 2026 in New York. The Court approved the Parties' selection of Judge Sontchi on June 3, 2026 [Adv. D.I. 153]. The mediation's scope contemplated globally resolving all outstanding issues between the Parties, including issues related to the Walmart Adversary Proceeding, the Walmart Directors Adversary Proceeding, the Walmart Proofs of Claim and any issues relating to Walmart's right to object to intercompany allocations or the Intercompany Claim.[3]

22. On June 25, 2026, Walmart and its counsel, and the Trustee and her counsel, met for a mediation with Judge Sontchi and, working in good faith and at arms-length, negotiated a global resolution of the issues between them, including all issues associated with the Walmart Adversary Proceeding, the Walmart Directors Adversary Proceeding, the Walmart Proofs of Claim, and any issues relating to Walmart's right to object to the Intercompany Claim or other intercompany issues.

23. Ultimately, in order to minimize the expense of continued litigation, uncertainty about the outcome of the Walmart Adversary Proceeding, the effect of uncertainty over the Walmart Proofs of Claim on other creditors, possible refiling of and continued litigation over the

[3] The Walmart Proofs of Claim asserted claims against the two Debtors that were party to the TSA 2: the U.S.-based operating Debtor (Structurlam U.S.) and the Debtors' parent entity (SLP). Walmart did not assert a claim against the Canadian-based Debtor (Structurlam Canada). Aside from Walmart's claim, the largest asserted claim against Structurlam U.S. was asserted by Structurlam Canada. Walmart raised potential objections to the Intercompany Claim and intercompany allocations and those issues were included within the scope of the mediation.

Walmart Directors Adversary Proceeding, Walmart's potential objection to the Intercompany Claim and other intercompany allocations, and in an effort to preserve the assets of Trust for the benefit of other creditors, Walmart and the Trustee, with the assistance of Judge Sontchi at mediation, reached a settlement, and immediately executed a term sheet memorializing the general terms of the proposed resolution between Walmart, the Trustee and the Walmart Directors. The Parties subsequently entered a formal Settlement Agreement, a copy of which is attached hereto as **Exhibit B**, that, subject to approval of the Court, will resolve all issues between the Parties, which includes the following terms:[4]

a. Within five (5) business days of the Settlement Effective Date – defined as the date on which the Court enters a final, non-appealable order approving this Motion – the Trust shall pay Walmart the amount of $7,600,000.00 (the "Settlement Distribution").

b. Effective upon Walmart's receipt of the Settlement Distribution in full, the Trustee, solely as Trustee and not individually or in any other capacity, on behalf of the Trustee, the Trust, the Debtors and their estates, will release Walmart and its subsidiaries, parents, affiliates, officers, directors, employees, representatives, agents, professionals, the Walmart Directors, and their respective successors and assigns (collectively, the "Walmart Releasees") from any and all claims, interests, causes of action, demands, rights obligations, or liabilities of any kind, whether known or unknown, suspected or unsuspected, asserted or unasserted, in law or in equity, arising out of or related to the Trustee, the Trust, the Debtors, the Debtors' estates, the Bankruptcy Cases, the Supplier Agreements, the Walmart Adversary Proceeding or the Walmart Directors Adversary Proceeding. Notwithstanding the foregoing, the release does not release any rights or claims to enforce the terms of the Settlement Agreement entered into by the Parties.

c. Effective upon Walmart's receipt of the Settlement Distribution in full, Walmart and the Walmart Directors release the Trustee, the Trust, the Debtors and their respective estates, officers, directors, employees, representatives, agents, professionals, successors, and assigns (collectively, the "Estate Releasees") from any and all claims, interests (including equity interests), causes of action, demands, rights, obligations, or liabilities of any kind, whether known or unknown, suspected or unsuspected, asserted or unasserted, in law or in equity, arising out of or related

[4] This is only a summary of the terms of the Settlement Agreement between the Parties, and the terms of the Settlement Agreement are incorporated as if fully set forth herein. In the event that the terms summarized herein differ from the Settlement Agreement, the terms of the Settlement Agreement shall control.

to the Trustee, the Trust, the Debtors, the Debtors' estates, the Bankruptcy Cases, the Supplier Agreements, the Walmart Adversary Proceeding, or the Walmart Directors Adversary Proceeding; provided that Walmart further irrevocably waives and releases any right, whether reserved in the Plan, the Confirmation Order or otherwise, to object to any intercompany claim or another intercompany allocation. Notwithstanding the foregoing, the release does not release any rights or claims to enforce the terms of the Settlement Agreement entered into by the Parties.

d. Walmart shall support this Motion, shall not object to this Motion and shall oppose any objections filed to this Motion.

e. Upon Walmart's confirmation of receipt of the Settlement Distribution in full, the Walmart Adversary Proceeding shall be deemed dismissed with prejudice. If the approval order does not expressly provide for dismissal with prejudice, the Trustee shall promptly file a notice of dismissal with prejudice after such order becomes final and after Walmart has confirmed receipt of the Settlement Distribution in full.

f. The Settlement fully resolves all claims the Debtors may have against the Walmart Directors, including all claims asserted in the Walmart Directors Adversary Proceeding and any other claim, lawsuit, or proceeding the Trustee may assert against the Walmart Directors in any jurisdiction.

g. Walmart's Proofs of Claim shall be deemed disallowed and expunged following Walmart's confirmed receipt of the Settlement Distribution in full. Walmart represents and warrants that it has not transferred any portions or rights regarding its claims to any other person or entity. Following Walmart's confirmed receipt of the Settlement Distribution in full, the Trustee may inform the applicable claims agent to modify the claims register to reflect the disallowance and expungement of the Walmart Proofs of Claim.

h. Walmart and the Trustee agree to hold all case deadlines in the Walmart Adversary Proceeding in abeyance pending the Court's final adjudication of the 9019 Motion.

i. The Settlement Agreement will represent a compromise and settlement of disputed claims. Nothing shall be construed as an admission of liability by any Party.

j. The Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

k. The Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to its conflict of law principles.

l. The United States Bankruptcy Court for the District of Delaware shall have exclusive jurisdiction over all matters arising out of or related to the Settlement Agreement.

## RELIEF REQUESTED

24. By this Motion, the Trustee seeks approval of the Settlement Agreement pursuant to Sections 105 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## BASIS FOR THE RELIEF REQUESTED

25. This Court has the authority to grant the relief requested in this Motion pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provision of this title."

26. Bankruptcy Rule 9019 grants the Court authority to approve settlements of claims and controversies after notice and a hearing.[5] Under this authority, the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F. 3d 389, 393 (3d Cir. 1996) (*quoting* 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)). The Third Circuit has "explicitly recognized with approval" the "strong presumption in favor of voluntary settlement agreements" in chapter 11 cases. *Ehrheart v. Verizon* Wireless, 609 F.3d 77-79-80 (3d Cir. 1982). *See also Meyers v. Martin, (In re Martin*), 91 F.3d 389 393 (3d Cir. 1996) ("to minimize litigation and expedite the administration of the bankruptcy estates, compromises are favored in bankruptcy.") The approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. *See In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

---

[5] Bankruptcy Rule 9019 provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

27. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." *In re Marvel Enter. Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (*quoting Louise's*, 211 B.R. at 801). To reach such a determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. *Martin,* 91 F.3d at 393. In striking this balance, the court should consider the following factors:

(a) The probability of success in the litigation;
(b) The complexity, expense and likely duration of the litigation;
(c) The possibilities of collecting on any judgment which might be obtained;
(d) All other factors relevant to making a full and fair assessment of the wisdom of the proposed compromise; and
(e) Whether the proposed compromise is fair and equitable to the Debtor, his creditors, and other parties in interest.

*Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425 (1968); *see also Martin*, 91 F.3d at 393. Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry*, 390 U.S. at 425. The *TMT* rule does not require the Court to hold a full evidentiary hearing before a compromise can be approved. Rather, the Court's obligation is "to canvass the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'" 10 COLLIER ON BANKRUPTCY, ¶ 9019.2, 9019-4 (15th ed.) (*quoting In re Drexel Lambert Group, Inc.*, 134 B.R. 493 (Bankr. S.D.N.Y. 1991)); *see also Cosoff v. Rodman (In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983).

28. As set forth in the Declaration of Heather L. Barlow being filed simultaneously herewith, in connection with both the Walmart Adversary Proceeding, the Walmart Proofs of Claim and the Walmart Directors Adversary Proceeding, the Trustee considered the costs, risks

and uncertainty of this hard-fought and complex litigation in light of the limited assets of the Trust, the likelihood of appeals from any judgment, additional matters of the Intercompany Claim and intercompany allocation issues that were reserved to Walmart in the Plan, and the likely expense of seeking to refile and prosecute the Walmart Directors Adversary Proceeding in another forum. The Trustee also considered the cost of continuing litigation to the Trust, in particular the risk that limited Trust assets would continue to be eroded by Trust expenses. In addition, the Trustee considered the benefit of timing and certainty that the proposed settlement with Walmart will have on preserving Trust assets for other allowed claims of creditors. Further, the Trustee considered the effect that continued uncertainty of litigation over the Walmart Adversary Proceeding, including Walmart's disputed status as the largest creditor of both the U.S. and Canadian debtors, and the Walmart Directors Adversary Proceeding could likely have on Trust administration.

29. The settlement represents a fair compromise of the parties' litigation positions and risks. Although both Walmart and the Trust maintain that they would prevail if the claims in the Walmart Adversary Proceeding were tried, the Parties acknowledge that the plethora of open and disputed issues of fact and law and complicated issues requiring expert discovery and testimony create significant uncertainty and risk in light of the limited resources of the Trust. The settlement mitigates those risks and uncertainties, and stops additional litigation fees and expenses that would continue to diminish the Trust.

30. Additionally, with the prospect of likely appeals, any continued litigation likely could take several additional years to fully resolve. The proposed settlement, including the payment to Walmart, resolution of expensive and uncertain litigation, disallowance and expungement of the Walmart Proofs of Claim, and removal of potential disputes with Walmart over intercompany allocations and issues relating to the Intercompany Claim represents a fair and

reasonable compromise of the Parties' disputes and is likely to enhance the recovery available to other creditors.

31. Accordingly, based upon and after considering all of the foregoing, the Trustee determined, as an exercise of her business judgment, and in an appropriate exercise of her duties, that the proposed settlement negotiated with the assistance of Judge Sontchi is in the best interests of the Trust and its creditors, and falls well above the lowest range of reasonableness. Accordingly, the Trustee respectfully submits that the proposed settlement not only meets, but significantly exceeds the standards set forth in *TMT Trailer Ferry* and should be approved by the Court. Accordingly, the Trustee respectfully requests approval of the Settlement Agreement.

## NOTICE

32. The Trustee has provided notice of this Motion to: (a) the Office of the United States Trustee; (b) counsel to the Walmart and the Walmart Directors; and (c) all parties having entered their appearance in the bankruptcy cases. In light of the nature of the relief requested herein, the Trustee submits that no other or further notice is necessary.

## NO PRIOR RELIEF

33. No prior request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Trustee respectfully requests that this Court enter an Order, a copy of which is attached hereto as **Exhibit A** (i) approving the Motion, (ii) authorizing the Trustee to enter into the Settlement Agreement; (iii) approving the Settlement Agreement; and (iv) granting such other and further relief as is just and proper.

Dated: July 13, 2026
Wilmington, Delaware

**MORRIS JAMES LLP**

*/s/ Carl N. Kunz, III*
Carl N. Kunz, III (DE Bar No. 3201)
Eric J. Monzo (DE Bar No. 5214)
Tara Pakrouh (DE Bar No. 6192)
Cortlan S. Hitch (DE Bar No. 6720)
Siena B. Cerra (DE Bar No. 7290)
C. Jackson Nestor (DE Bar No. 7635)
3205 Avenue North Blvd., Suite 100
Wilmington, DE 19803
Telephone: (302) 888-6800
Email: ckunz@morrisjames.com
emonzo@morrisjames.com
tpakrouh@morrisjames.com
chitch@morrisjames.com
scerra@morrisjames.com
jnestor@morrisjames.com

*Special Counsel to Plaintiff Heather L. Barlow Solely in her Capacity as Liquidating Trustee of the Structurlam Liquidating Trust (and not in her individual capacity)*